No. 14-1112

# United States Court of Appeals
## for the Tenth Circuit

MERILYN COOK; LORREN BABB; GERTRUDE BABB; RICHARD BARTLETT;
SALLY BARTLETT; WILLIAM SCHIERKOLK, JR.; AND DELORES SCHIERKOLK,
For Themselves and on Behalf of the Prospective Damages Subclass
Of the Property Class Certified by the District Court,

*Plaintiffs-Appellants*

v.

ROCKWELL INTERNATIONAL CORPORATION AND
THE DOW CHEMICAL COMPANY,

*Defendants-Appellees*

On Appeal from the United States District Court
For the District of Colorado (Kane, J.)
Case No. 1:90-cv-00181-JLK

## PLAINTIFFS'-APPELLANTS' PRINCIPAL BRIEF

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO  80206
Telephone:  (303) 399-3000

Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Caitlin G. Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000

*Counsel for Plaintiffs-Appellants*
[*Names of additional counsel appear on the signature page.*]

**ORAL ARGUMENT REQUESTED**

June 10, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED APPEALS ................................................ x

CITATION CONVENTIONS ............................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 2

STATEMENT OF ISSUES ................................................................. 5

STATEMENT OF THE CASE .............................................................. 6

STATEMENT OF FACTS ................................................................... 9

SUMMARY OF ARGUMENT .............................................................. 24

ARGUMENT .................................................................................... 28

    A.    The District Court Has Diversity Jurisdiction over Plaintiffs'
        State Nuisance Claims .......................................................... 28

    B.    The District Court has Pendent and Ancillary Jurisdiction over
        Plaintiffs' State Nuisance Claims ......................................... 30

    C.    This Court Held that the Jury was Properly Instructed on
        Plaintiffs' Colorado Nuisance Claim ..................................... 30

    D.    The Court's Prior Decision Does Not Require or Support a
        Finding of Complete Preemption ........................................... 36

    E.    The District Court Erred in Holding That Plaintiffs' Nuisance
        Claims Were Preempted ....................................................... 38

    F.    Finding That the PAA Preempts Plaintiffs' Proven State
        Nuisance Claims, Combined with This Court's Earlier Ruling,
        Would Render the PAA Unconstitutional .............................. 42

        1.    The PAA Was Enacted to Protect the Public and Preserve
            State Law, Not Merely Protect Industry .......................... 43

        2.    The 1988 Amendments Did Not Eliminate All State
            Nuisance Law ............................................................... 45

i

3.     Preemption Would Render Portions of the PAA
Unconstitutional ..........................................................................50

CONCLUSION ......................................................................................60

REQUEST FOR ORAL ARGUMENT ..................................................62

CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE...........63

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. RULE 32(A) .........64

CERTIFICATE OF COMPLIANCE WITH 10th CIR. R. 25.5............................65

CERTIFICATE OF COMPLIANCE WITH ECF FILING.....................................66

CERTIFICATE OF SERVICE .............................................................67

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbot v. Am. Cyanamid Co.*,
   844 F.2d 1108 (4th Cir. 1988) ............................................................46

*AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*,
   552 F.3d 1233 (10th Cir. 2009) ..........................................................3

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998) ..........................................................................50

*Arkansas Game & Fish Comm'n v. United States*,
   133 S. Ct. 511 (2012)........................................................................58

*Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc.*,
   959 F.2d 158 (10th Cir. 1992), *vac'd on other grounds and rem'd*,
   506 U.S. 910 (1992) ..........................................................................42

*Armstrong v. United States*,
   364 U.S. 40 (1960) ............................................................................59

*Bair v. Peck*,
   811 P.2d 1176 (Kan. 1991)................................................................55

*Bormann v. Bd. of Supervisors*,
   584 N.W.2d 309 (Iowa 1998) ..................................................... 57, 58

*Brzonkala v. Va. Polytechnic Inst. & State Univ.*,
   169 F.3d 820 (4th Cir. 1999) ............................................................54

*California v. ARC Am. Corp.*,
   490 U.S. 93 (1989) ............................................................................47

*Cent. Fiber Corp. v. Site Servs. Ltd.*,
   962 F. Supp. 1426 (D. Kan. 1997) ....................................................29

*Church v. Rawson Drug & Sundry Co.*,
   842 P.2d 1355 (Ariz. Ct. App. 1992) ................................................55

iii

*Clark v. State Farm Mut. Auto. Ins. Co.*,
     590 F.3d 1134 (10th Cir. 2009) ............................................................................10

*Clark v. Suarez Martinez*,
     543 U.S. 371 (2005) .............................................................................................51

*ClearOne Commc'ns, Inc. v. Bowers*,
     643 F.3d 735 (10th Cir. 2011) ..............................................................................35

*Cook v. Rockwell Int'l Corp., (Cook I)*,
     755 F. Supp. 1468 (D. Colo. 1991) ..................................................................1, 28

*Cook v. Rockwell Int'l Corp., (Cook IX)*,
     273 F. Supp. 2d 1175 (D. Colo. 2003) ..................................................... 33, 42, 45

*Cook v. Rockwell Int'l Corp., (Cook XIII)*,
     580 F. Supp. 2d 1071 (D. Colo. 2006) ....................................................... 9, 10, 35

*Cook v. Rockwell Int'l Corp., (Cook XIV)*,
     564 F. Supp. 2d 1189 (D. Colo. 2008) ...............................................................6, 19

*Cook v. Rockwell Int'l Corp.*,
     618 F.3d 1127 (10th Cir. 2010) ................................................................... *passim*

*Cotroneo v. Shaw Envtl. & Infrastructure*,
     639 F.3d 186(5th Cir. 2011), ...............................................................................48

*Coyne & Delany Co. v. Selman*,
     98 F.3d 1457 (4th Cir. 1996) ................................................................................39

*Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*,
     974 P.2d 1194 (Utah 1999) ..................................................................................55

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
     509 U.S. 579 (1993) ..................................................................................... 9, 10, 35

*Devon Energy Prod. Co. v. Mosaic Potash Cardlsbad, Inc.*,
     693 F.3d 1195 (10th Cir. 2012) ....................................................................... 39, 40

*Dow Chem. Corp. v. Weevil-Cide Co.*,
     897 F.2d 481 (10th Cir. 1990) ..............................................................................40

iv

*Dueringer v. Gen. Am. Life Ins. Co.*,
  842 F.2d 127 (5th Cir. 1988) ...............................................................40

*Duke Power Co. v. Carolina Env. Study Group*,
  438 U.S. 59 (1978) .................................................................. 43, 51, 54

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
  241 F.3d 154 (2d Cir. 2001) .................................................................29

*El Paso Natural Gas Co. v. Neztsosie*,
  526 U.S. 473 (1999) .............................................................................40

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) .............................................................3

*Fein v. Permanente Med. Grp.*,
  474 U.S. 892 (1985) .............................................................................52

*Fracasse v. People's United Bank*,
  747 F.3d 141 (2d Cir. 2014) .................................................................40

*Fryer v. A.S.A.P. Fire & Safety Corp.*,
  658 F.3d 85 (1st Cir. 2011) ..................................................................40

*Gayvont v. Davol, Inc.*,
  MDL 07-1842ML, 2008 WL 2433258 (D.R.I. Feb. 26, 2008)............49

*Gilchrist v. Jim Slemons Imports, Inc.*,
  803 F.2d 1488 (9th Cir. 1986) ..............................................................40

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174 (1988) .............................................................................41

*Grupo Dataflux v. Atlas Global Group, L.P.*,
  541 U.S. 567 (2004) .............................................................................29

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009).................................................... 52, 54, 55

*In re Prempro Prods. Liab. Litig.*,
  MDL 4:03CV1507-WRW, 2007 WL 641416 (E.D. Ark. Feb. 27, 2007) ...........49

v

*In re Section 1031 Exch. Litig.*,
    716 F. Supp. 2d 415 (D.S.C. 2010) ......................................................49

*Ingraham v. Wright*,
    430 U.S. 651 (1977) ...........................................................................53

*Kerr-McGee Corp. v. Farley*,
    115 F.3d 1498 (10th Cir. 1997)............................................................41

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982) ...........................................................................58

*Martin v. Franklin Capital Corp.*,
    251 F.3d 1284 (10th Cir. 2001) .....................................................4, 29

*Martinez v. California*,
    444 U.S. 277 (1980) .................................................................... 53, 54

*McBride v. CITGO Petroleum Corp.*,
    281 F.3d 1099 (10th Cir. 2002) .............................................................3

*McKay v. U.S., et al.*,
    703 F.2d 464 (10th Cir. 1983) ...........................................................45

*NLRB v. Catholic Bishop*,
    440 U.S. 490 (1979) ...........................................................................51

*Navigato v. SJ Rests., LLC*,
    463 Fed. Appx. 770 (10th Cir. 2012) (unpublished)............................10

*New York C. R. Co. v. White*,
    243 U.S. 188 (1917) ...........................................................................53

*Penn Central Transp. Co. v. New York City*,
    438 U.S. 104 (1978) .................................................................... 58,59

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980) .............................................................................52

*Ramsey Winch, Inc. v. Henry*,
    555 F.3d 1199 (10th Cir. 2009)............................................................39

*Richards v Washington Terminal Co.*,
    233 U.S. 546 (1914) .......................................................................57

*Roddy v. Grank Trunk W. R.R. Inc.*,
    395 F.3d 318 (6th Cir. 2005) ........................................................40

*Russillo v. Scarborough*,
    935 F.2d 1167 (10th Cir. 1991) ....................................................30

*Saks v. Franklin Covey Co.*,
    316 F.3d 337 (2d Cir. 2003) ..........................................................40

*Sax v. Votteler*,
    648 S.W.2d 661 (Tex. 1983) ..........................................................56

*Sheffield v. Larsen*,
    153 F.3d 728 (10th Cir. 1998) (unpublished)...................................4

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984) ............................................................. *passim*

*Silkwood v. Kerr-McGee Corp.*,
    769 F.2d 1451 (10th Cir. 1985) ....................................................20

*Smith v. Dep't of Ins.*,
    507 So. 2d 1080 (Fla. 1987) ..........................................................55

*Snyder v. Harris*,
    394 U.S. 332 (1969) ......................................................................29

*Stibitz v. GPU*,
    746 F.2d 993 (3d Cir. 1984) ..........................................................45

*Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*,
    560 U.S. 702 (2010) ......................................................................58

*TMI Litigation Cases Consolidated II*,
    940 F.2d 832 (3d Cir. 1991) ................................................... 40, 41

*Torres v. Oakland Scavenger Co.*,
    108 S. Ct. 2405 (1988)....................................................................4

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966) ...................................................................30

*United States v. Morrison*,
    529 U.S. 598 (2000) ...................................................................54

*Urie v. Franconia Paper Corp.*,
    218 A.2d 360 (N.H. 1966) ..........................................................58

*Weston v. Harmatz*,
    335 F.3d 1247 (10th Cir. 2003) ..................................................10

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ...................................................................39

## Statutes

28 U.S.C. § 1291 ........................................................... 2, 4, 40

28 U.S.C. § 1292(b) ................................................................x

28 U.S.C. § 1331 ...............................................................2, 25

28 U.S.C. § 1332 ........................................... 2, 28, 29, 40, 49

28 U.S.C. § 1367 .................................................................30

28 U.S.C. § 1407 .................................................................49

42 U.S.C. § 2012(i) ..............................................................43

42 U.S.C. § 2014 ........................................................ 28, 36, 37

42 U.S.C. § 2210 ...................................................... 2, 45, 48, 49

## Rules

Fed. R. App. P. 3(c)(1)(B) .......................................................3

Fed. R. App. P. 32 ................................................................64

Fed. R. Civ. P. 42 ................................................................49

Fed. R. of Evid. 702 ...................................................................9

<u>Other Authorities</u>

*Nuclear Indemnity for Government Contractors under the Price-Anderson Act: 1988 Amendments,*
19 Pub. Cont. L. J. 1 (Fall 1989) .......................................................27

*Prosser & Keeton on Torts* 619 (5th ed. 1984) ......................................43

William L. Prosser, *Private Action for Public Nuisance,*
52 Va. L. Rev. 997 (1966) ...............................................................43

Restatement (Second) of Torts § 821F ...................................................33

Restatement (Second) of Torts § 930 ......................................................6

## STATEMENT OF RELATED APPEALS

In 1998, this Court denied two petitions for interlocutory review under 28 U.S.C. § 1292(b). *See Cook v. Rockwell Int'l Corp.*, Nos. 98-533 & 98-534 (10th Cir. Oct. 8, 1998) (Brorby & Murphy, JJ.). There was an earlier appeal in this litigation. *See Cook v. Rockwell Int'l Corp.*, Nos. 08-1224, 08-1226 & 08-1239, 618 F.3d 1127 (10th Cir. 2010) ("*Cook*"), *cert. denied*, 2012 U.S. LEXIS 4704 (Jun. 25, 2012). No other appeals are pending.

## CITATION CONVENTIONS

There are 15 published district court opinions in this case.  We assign roman numerals to each – abbreviating the first, for example, to "*Cook I*, 755 F. Supp. 1468."  The table of authorities includes full citations, keyed to the corresponding roman numerals.

Citations to the three paper volumes of Plaintiffs'-Appellants' ("Plaintiffs") appendix are prefixed with "A."

Volume IV of the appendix is a CD-ROM containing the trial transcript in searchable electronic form.  A separate PDF file is included for each volume of the transcript.  The file names indicate the transcript volume number and page range. An additional PDF file combines the entire trial transcript into a single electronic document.  Citations to trial transcript pages follow the format "Tr. 123."

Volumes V and VI are DVDs containing all Plaintiffs' trial exhibits admitted into evidence.  Volume VII is a DVD containing Defendants'-Appellees' ("Defendants") trial exhibits.  The PDF file names correspond to trial-court exhibit designations.  Plaintiffs' exhibit 1 would be "P-1" ("PG-1" for a graphic; "PV-1," for video); Defendants' exhibit 1, "DX-1."

Except where otherwise stated, all emphases are added.

# JURISDICTIONAL STATEMENT

From the initial complaint in 1990, Plaintiffs asserted diversity jurisdiction under 28 U.S.C. § 1332.[1]  Jurisdiction below also was predicated on the Price-Anderson Act ("PAA"), 42 U.S.C. § 2210(n)(2).  This Court previously discussed, without deciding, whether proof of a "nuclear incident" was a prerequisite to jurisdiction under § 2210(n)(2), instead finding jurisdiction under 28 U.S.C. § 1331, while noting that Plaintiffs had asserted diversity jurisdiction.  *See* 618 F.3d at 1137, 1139 & n.8.

As Plaintiffs previously explained, this Court has jurisdiction under 28 U.S.C. § 1291 to hear Plaintiffs' appeal of the January 28, 2014 Order (A1224),[2] which held that Plaintiffs' Colorado nuisance claim was preempted.  On February 27, 2014, the District Court entered an Order Approving Stipulated Dismissal with Prejudice and Entering Final Judgment, expressly intended to facilitate immediate appellate review of the January 28 Order.[3]  On February 27, 2014, the District Court made two corrections to the January 28 Order (A1271),

---

[1] *See* Complaint and Jury Demand, January 30, 1990 ("Complaint"), ¶¶ 3, 66 (A195, A208); Amended Complaint and Jury Demand, April 17, 1990, ¶¶ 3, 72 ("Amended Complaint") (A220, A234); Second Amended Class Action Complaint and Jury Demand, April 8, 1991 (Doc. 52) ("SAC"), ¶¶ 4, 96 (A247, A266).

[2] *See* Plaintiffs' Motion for Order of Jurisdiction, Doc. 01019238258 (Apr. 22, 2014).

[3] The parties stipulated that: "So that Plaintiffs may immediately appeal from the January 28 Order, the parties stipulate to the dismissal of this action with prejudice and the entry of judgment in favor of Defendants."  A1269-70.

2

and entered judgment, "[s]o that Plaintiffs may immediately appeal from the

January 28 Order[.]" (A1272).

Plaintiffs timely filed a notice of appeal on March 25, 2014, stating:

> In appealing from that Final Judgment, plaintiffs appeal from any and all orders antecedent and ancillary thereto, including any and all interlocutory judgments, decrees, decisions, rulings, and opinions that merged into and became part of the Final Judgment, that shaped the Final Judgment, that are related to the Final Judgment, and upon which the Final Judgment is based. **In particular, plaintiffs appeal the Order entered in this action on January 28, 2014, ECF No. 2351.**[4]

In the Tenth Circuit, all interlocutory orders merge into the final judgment

for purposes of appeal.[5]  This Court supports a liberal approach to Fed. R. App. P.

3(c)(1)(B)'s requirement that the notice of appeal "designate the judgment, order,

or part thereof being appealed."[6]  The Supreme Court has likewise advocated for a

---

[4] A1224.  *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2359 (D. Colo. Mar. 25, 2014).

[5] *E.g.*, *AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236-37 (10th Cir. 2009) ("Under this circuit's precedent, a notice of appeal designating the final judgment necessarily confers jurisdiction over earlier interlocutory orders that merge into the final judgment."); *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (same).

[6] *McBride*, 281 F.3d at 1104.  *See also Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) ("Even though Rule 3(c) is jurisdictional, 'the requirements of the rules of procedure should be liberally construed and … mere technicalities should not stand in the way of consideration of a case on its merits.'") (internal quotation marks omitted).

liberal approach to the construction of appellate procedural rules, though a court may not waive a jurisdictional requirement.[7]

In *Martin v. Franklin Capital Corp*., 251 F.3d 1284 (10th Cir. 2001), this Court held it had jurisdiction where the appellant stipulated to dismissal with prejudice.  This Court held that the dismissal was a final order under §1291 because (1) if the appellants lost, there would be nothing left of the case, as dismissal was with prejudice, *id*. at 1288; and (2) there was a sufficient "case or controversy" because appellants stipulated to dismissal only to obtain appellate review, explaining:

> [w]hile such a dismissal may be technically voluntary, as a practical matter the Martins did not acquiesce in the judgment but rather were using dismissal to challenge the underlying ruling.  When, as here, a plaintiff believes a ruling is so prejudicial to his case he is willing to risk losing the right to litigate completely in order to challenge it, a case or controversy exists and he should be allowed to appeal.

*Id*. at 1289.[8]

The January 28 Order eliminated Plaintiffs' state law nuisance claims, and Plaintiffs stipulated they have no further PAA claims to litigate unless this Court's

---

[7] *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988).

[8] *See also Sheffield v. Larsen*, No. 96-4131, 153 F.3d 728, 1998 WL 427085, at *2 (10th Cir. 1998) (unpublished) (stipulated dismissal to facilitate appeal was a final order vesting jurisdiction in the Court: "[W]hen the court ratified the parties' stipulation by dismissing the action with prejudice, a final order was entered and its appeal is properly before us.") (citation omitted).

*Cook* decision is overturned or modified.[9]  This Court has jurisdiction over this appeal because Plaintiffs retain a personal stake in the adverse January 28 Order dismissing Plaintiffs' state law nuisance claims, and have standing to appeal it even though Plaintiffs subsequently stipulated to entry of judgment to obtain appellate review of the Order.

## STATEMENT OF ISSUES

1)     Whether the District Court erred as a matter of law in holding that the PAA preempts Plaintiffs' proven state law nuisance claims and in holding that a plaintiff who brings a PAA claim may not simultaneously pursue a state law nuisance claim on the same facts.

2)     Whether the District Court erred as a matter of law in holding that the PAA was wholly constitutional even though the PAA was held to have preempted Plaintiffs' proven Colorado nuisance claims without providing any substitute remedy for the proven substantial and unreasonable interference with use and enjoyment of property suffered by Plaintiffs.

3)     Whether the District Court erred as a matter of law in declining to recertify the class and declining to enter judgment for Plaintiffs on Plaintiffs' existing nuisance verdict.

---

[9] *See* Doc. 2355-1 at 2 (A1264).

## STATEMENT OF THE CASE

Plaintiffs asserted Colorado state law trespass, nuisance, and PAA claims against defendants The Dow Chemical Company ("Dow") and Rockwell International Corporation ("Rockwell") ("Defendants").[10]  After a four-month trial on certain of the class members' claims for damages under the Restatement (Second) of Torts § 930, the jury found for Plaintiffs and awarded $176.8 million in compensatory damages and $200.2 million in exemplary damages to the class.[11] On May 20, 2008, the District Court (Kane, J.) denied Defendants' motions for judgment as a matter of law and for a new trial.[12]  On June 2, 2008, the District Court entered judgment for $926,104,087.00, including $549,104,087.00 in prejudgment interest, "on all claims by Plaintiffs . . . pursuant to the [PAA], *Colorado law*, and *Restatement (Second) of Torts* § 930".[13]

---

[10] *See also* Principal and Response Brief of Plaintiff-Appellees-Cross-Appellants, Nos. 08-1224, 08-1226, 08-1239, Doc. No. 01018095346 (10th Cir. July 7, 2009) ("POB"), at 5-9 (Plaintiffs' opening brief in prior appeal).  The Boeing Company is successor in interest to Rockwell and has represented that it is answerable for any judgment against Rockwell. (A620).

[11] *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2117 (D. Colo. Feb. 14, 2006) (completed verdict form) (A375).

[12] *Cook XIV*, 564 F. Supp. 2d 1189.

[13] *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2264 (D. Colo. Jun. 2, 2008) (A619, A621) (second italics in original).

This Court vacated the judgment and remanded.[14]  This Court held that the trespass jury instructions were inadequate under Colorado law.  This Court also held that (1) the PAA federal claim and Colorado nuisance and trespass causes of action are not coterminous; and (2) damage to property/loss of use of property is "an essential element" that Plaintiffs additionally had to establish to prove a "nuclear incident" had occurred to prevail on their PAA claims.  This Court set aside the jury's verdict on Plaintiffs' PAA claims because the jury was not properly instructed on an essential element of the PAA claims and vacated the class certification ruling because the District Court failed to consider whether Plaintiffs could establish the elements of their PAA claims on a class-wide basis.

On remand, Plaintiffs sought reinstatement of their compensatory nuisance jury verdict and judgment because (1) the jury was properly instructed on Plaintiffs' Colorado nuisance claims, and (2) Plaintiffs' state nuisance claims were not preempted by the PAA.[15]  Plaintiffs argued that preemption of their Colorado common law nuisance claim (and jury verdict) would be unconstitutional because

---

[14] *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010).

[15] *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2344 (D. Colo. Jan 9, 2013); *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. No. 2350 (D. Colo. May 9, 2013).  A682; A1189.  Plaintiffs argued that reinstatement of the nuisance jury verdict was consistent with this Court's mandate in the previous appeal, and sought recertification of the class on this same basis. A1196-206.  Plaintiffs have not sought reinstatement of the exemplary damage award.

the PAA, as construed by this Court, requires proof of "loss of use", while Colorado law (and the law of nuisance in all 50 states) requires proof of an "interference" with use and enjoyment that is "unreasonable" and "substantial" but does *not* require proof of a complete "loss of use."  Plaintiffs explained that if the PAA were held to completely preempt Plaintiffs' state law nuisance claims, Plaintiffs would be left without any substitute remedy whatsoever *even if* they had proven a nuisance under Colorado law (as Plaintiffs did at trial).[16]

On January 28, 2014, the District Court held that the PAA preempted Plaintiffs' nuisance claims ("January 28 Order").[17]  This finding of complete preemption, combined with the Tenth Circuit's prior interpretation of the PAA, has effectively eliminated the nuisance law of Colorado (and all 50 states) by providing Plaintiffs with *no* remedy where, as here, they suffered a proven substantial and unreasonable "interference with" but no "loss of" use from plutonium contamination.  Such an interpretation of the PAA renders at least portions of the PAA unconstitutional under the Due Process and Takings clauses of the Fifth Amendment of the United States Constitution.

---

[16] *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2344, at pp. 5-6, 29-32 (D. Colo. Jan 9, 2013) (A694-95, A718-21); *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2350, at p. 25 (D. Colo. May 9, 2013) (A1220).

[17] *Cook v. Rockwell Int'l Corp.*, No. 1:90-cv-00181-JLK, Doc. 2351 (D. Colo. Jan. 28, 2014) (A1224).

8

## STATEMENT OF FACTS

Rocky Flats was located just 16 miles northwest of downtown Denver.
From 1952 until 1989, when it was shuttered after an unprecedented FBI raid,
Rocky Flats made nuclear bomb parts, handling and processing numerous
radioactive materials – primarily plutonium – and hazardous non-radioactive
substances.  P-1279 at 2-8 (Department of Energy ("DOE") report identifying
hazardous substances used at Rocky Flats); P-1609 at 2 ("Operations at the Rocky
Flats Plant are inherently dangerous because they involve using a wide variety of
toxic, hazardous, and radioactive material.") (GAO report).  The site experiences
frequent, strong winds moving south-southeast off the plant toward Denver.  P-
149A (Atomic Energy Commission ("AEC") study of plutonium contamination
from Rocky Flats).  The plant was operated from 1952-75 by Dow, and from 1975-
89 by Rockwell, under contracts with DOE.  P-1049, P-606, P-1625 (contracts).
DOE "owned [the] site," however, and conducted "regular audits and
assessments."  Tr. 7751, 7809 (Weston).

Defendants released plutonium off-site the entire time they operated the
plant.  Tr. 3629, 3678 (Goble).  The trial record contains ample scientific evidence
about the harmful effects of this plutonium contamination.[18]  Plutonium is a

---

[18] Plaintiffs presented testimony from a number of scientific experts –
evidence which satisfied all requirements of *Daubert v. Merrell Dow
Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and F.R.E. 702.  *See Cook XIII*, 580

manmade, radioactive metallic element that, as DOE has acknowledged, "can be

extremely dangerous, even in tiny quantities, if it is inhaled," and "[t]herefore,

extraordinary precautions are required when handling it."  P-1339 at ID06065, 72,

93 (DOE 1995).  Even "[a]t lower doses, radiation can damage DNA, sometimes

leading to cancer or genetic mutations."  *Id.* at ID06092; Tr. 5693 ("at low doses,

radiation can cause cancer and it can cause genetic damage") (Wing); Tr. 5309

("prevailing scientific opinion" is that radiation can cause cancer "even at very low

doses.") (Cochran).  One particle, one atom, of plutonium, if inhaled, can cause

cancer.  Tr. 3639 (Goble), 5743-44 (Wing).  Plutonium is not only "one of the most

toxic elements known to man," it can spontaneously catch fire.  P-1339 at

ID06093; P-1402 at 079789.  Plutonium has a radioactive half-life of

approximately 24,000 years, meaning that even with radioactive decay, one-half of

any amount of plutonium will remain after 24,000 years.  P-338 at US3086851.

    As Dow admitted, once plutonium contaminates soil, "*it is a physical*

*impossibility to remove it all.*"  P-1118 at 000841.  Plutonium in soil can be

resuspended into the air by wind, and can then be inhaled.  Tr. 3672-73 (Goble);

---

F. Supp. 2d 1071 (rejecting Defendants' *Daubert* challenges).  Defendants did not
appeal *Cook XIII*'s rulings regarding the admissibility and reliability of Plaintiffs'
proffered expert testimony; all such rulings are binding on remand under the law of
the case doctrine and the related waiver doctrine.  *See, e.g.*, *Navigato v. SJ Rests.,*
*LLC*, No. 11-3108, 463 Fed. Appx. 770, 777 (10th Cir. 2012) (unpublished); *Clark*
*v. State Farm Mut. Auto. Ins. Co*., 590 F.3d 1134, 1140 (10th Cir. 2009); *Weston v.*
*Harmatz*, 335 F.3d 1247, 1255 (10th Cir. 2003).

Tr. 3942 (Smallwood); Tr. 4657-58 (Biggs); P-533 at EML01005. Once inhaled, "[p]lutonium is retained in the body for a long period of time" and exposes human tissue to radiation continuously. Tr. 8364, 8448 (Defendants' expert, Till). *See also* P-1339 at ID06092 (plutonium emits alpha particle radiation and "once an alpha emitter is in living tissue, it can cause substantial damage").

The causal link between radiation exposure and cancer was known since the 1930s. Tr. 3640 (Goble). By 1950 – before Rocky Flats opened – "[s]cientists [had] discard[ed] the idea of a 'maximum permissible exposure,' recognizing that any amount of radiation may be dangerous." P-1339 at ID06091 (DOE report); Tr. 5287 (Cochran). For this reason – in 1950 – "[r]adiation protection scientists recommend[ed] that exposure be 'as low as reasonably achievable.'" P-1339 at ID06091. This is known as the "ALARA" requirement. Tr. 5287-88 (Cochran). No federal standards relating to purported "permissible" amounts of plutonium in soil have ever been promulgated. Tr. 7549-50, 7590, 7644 (Defendants' expert, Frazier).

Dow knew – when Rocky Flats opened in 1952 – that the plant site was "wholly unsuitable" for treating radioactive hazardous waste, because the site was "unreasonably small" and "the drainage and direction of the prevailing wind is toward cultivated land on which food is produced for human consumption." P-281 at 00008416 (1952 Dow letter). Dow knew that radioactive waste – if kept on-site

11

– should be placed inside "sealed containers within a waterproof reinforced concrete structure" under a roof to "prevent the leaching of the radioactivity from the waste." P-281 at 00008418.

The evidence showed that Defendants repeatedly and recklessly violated all these fundamental safety principles and responsibilities, and contaminated the entire Class Area with plutonium, as documented by AEC and Colorado scientists, and other researchers. *See* Memorandum Opinion Regarding Defendants' Theory of Plutonium Removal Through Real Estate Development (Doc. 2206) (December 7, 2006) (District Court opinion reviewing evidence at trial showing plutonium contamination "throughout the Class area and beyond") (A600, A605). Defendants repeatedly admitted that the entire Class Area was contaminated with plutonium. A601-02. Defendants' expert agrees that Defendants caused those living in the Class Area to be exposed to plutonium. Tr. 8368-71 (Till) & PG-1014.[19]

Although Defendants knew that Rocky Flats was "wholly unsuitable" for hazardous waste, a 1992 DOE study identified 178 hazardous waste sites at the

---

[19] Defense expert John Till led the allegedly "independent" re-assessment of releases and exposures from Rocky Flats by Radiological Assessments Corporation ("RAC"). RAC has been paid to evaluate several other DOE sites. Tr. 8388. As of trial, Till was RAC's sole owner, and he ran it out of his house. Tr. 8171, 8384. When Till testified, RAC's only contract was with Kirkland & Ellis, Defendants' counsel. Tr. 8401-02.

plant.  P-1279 at ES-2.  As DOE concluded, "[o]ften, releases were detected long after they had started" and Defendants had done little or nothing to record the "fates" of much of the waste.  P-1279 at 3-7 to 3-8; *see also* PG-026A (map of major waste sites); P-512 (GAO report); P-189 (transcript of plant meeting); Tr. 1185-91 (Timothy Holeman, aide to then-Governor Romer).

A particularly egregious waste site was called the "903 Area," later the "903 Pad."  Dow put *thousands* of drums of plutonium-contaminated waste outdoors, unprotected, for up to *ten years*.  P-223 (Dow document stating that more than 5000 drums of waste were placed outside from 1958 to 1968); P-63 at 91180-83; P-64 at 074879-80, 074882-97, 074960-64; P-1216 (photograph), P-1309 at 000326-329; P-1316 (photograph); P-1067 & *id.* at 19-25 (photographs); P-1082.  By 1959, Dow *knew* plutonium was leaking from these drums.  P-1309 at 000327; P-64 at 074889.  By 1962, Dow knew that "50-60 per cent of these drums [were] badly corroded"; several had "already spilled out on the ground" and "[u]nless these materials are disposed of in the very near future a serious contamination problem will develop."  P-64 at 074928.  Yet Dow for *years* did virtually nothing. *E.g.*, P-338 at US3086818.

After finally removing the drums, Dow left the plutonium-saturated, outdoor site unprotected and exposed for another year, despite knowing that plutonium would be blown off-site.  P-63 at 91182-83 (Dow document stating Dow personnel

13

were "*fully aware* of the potential for materials to blow off plantsite" from the 903 Area, but upper Dow management "was not excited enough about it to at least have some gravel brought in and put down.").  As one defense witness testified: "you folks who live here understand what these winters are like, particularly when you get high winds."  Tr. 7751 (Weston).

The 903 Area represents an "egregious" and "remarkable example of an irresponsible practice."  Tr. 3025-40, 3043-57, 3060-66, 3072-76 (Budnitz) & PG-569, PG-502.  Indeed, the 903 Area is "among the worst … if not the worst" example of reckless handling of radioactive waste among all DOE nuclear sites nationwide, "because it went on for so long."  Tr. 3076 (Budnitz).  Plutonium released from the 903 Area contaminated, and remains throughout, the Class Area. *E.g.*, P-149A; Tr. 3159-63 (Budnitz) & PG-613, PG-611.  Dr. Budnitz is a respected physicist who has managed DOE and NRC facilities and research groups, and when he testified, was a senior manager at the DOE Lawrence Livermore Laboratory.  P-1202.

Rocky Flats also was plagued by plutonium fires.  *E.g.*, P-321 (31 reported plutonium fires in one three-year period).  Major plutonium fires occurred in 1957 and 1969.  P-1290 (AEC report on 1957 plutonium fire); P-23 (Dow report on 1957 fire); P-1495 at 4-7 (photographs of 1957 fire damage); P-1024 to P-1029 (multi-volume AEC report on 1969 fire); Tr. 1560-76 (Ray, discussing P-1219,

14

photographs of 1969 fire damage).  Dow's conduct – including packing too much plutonium into one building, and using flammable materials near plutonium (which can spontaneously catch fire) – contributed to the severity of the 1957 fire.  P-1290 at 17-18, 23; P-23.

The investigation of the 1957 fire led to recommended safety improvements, *see, e.g.*, P-1290 at 25-27, but Dow failed to implement most of them, and in 1969, another major plutonium fire occurred.  Tr. 3168-3209 (Budnitz); PG-503, PG-504, PG-505, PG-506, PG-507A2.  The AEC concluded that the plutonium building where the 1969 fire occurred "did not meet even the minimum AEC fire safety standards."  P-1027 at 1; Tr. 3191-92; P-1029 at 1; Tr. 3201-02.  Unbeknownst to Colorado residents, the 1969 plutonium fire was nearly a Chernobyl-like nuclear catastrophe – a result averted mostly through sheer luck and the "heroic efforts" of firefighters.  P-1027 at 2; Tr. 3192-96.

Both the 1957 and 1969 fires (like the 903 Area) resulted in off-site plutonium releases,[20] but both times, fire cut electricity to the plutonium air monitors, resulting in great uncertainties about quantities released.  Tr. 3178-79, 3204-07.

---

[20] *E.g.*, P-149A; P-338 at US3086854; P-533; P-1068 (report on 1957 fire); P-1069 (1969 fire).

Dow was fired and Rockwell took over in 1975, but little changed.

Rockwell, for example, "spray irrigated" radioactive wastewater, even during

winter when the contaminated water ran off the frozen ground, and even though a

1952 document had warned of the risk of resuspension into the air of contaminants

left by spray irrigation.  Tr. 2399, 2436-37, 2461-65, 2468-70 (Lipsky, discussing

P-1269, photographs of frozen sprinklers and overhead photograph of plant); P-25

at 071782 (1952 document).  Highly contaminated sites like the "881 Hillside," the

"Mound" and the "East trenches" were left exposed.  P-512 at US3058695-97; P-

1279 at 3-13 to 3-23; Tr. 1186-91 (Holeman); Tr. 3969-70 (Smallwood).

By 1986, DOE itself admitted that:

> Rocky Flats … is in poor condition generally in terms of
> environmental compliance.
>
> We have basically no RCRA groundwater monitoring wells,
> our permit applications are grossly deficient (some of the waste
> facilities there are potentially "illegal").  We have serious
> contamination, we have extremely limited environmental and
> waste characterization dat[a] for a site of this complexity.
>
> Much of the good press we have gotten … has taken attention
> away from *just how really bad the site is.*

P-493 at WR 01802; Tr. 1162-69 (Holeman, discussing P-493); Tr. 2253-55

(Lipsky).

On June 6, 1989, the FBI and EPA, investigating environmental crimes,

raided Rocky Flats.  Tr. 7925 (Norton).  After a controversial grand jury

investigation, Rockwell pled guilty in 1992 to five environmental felony and five

16

misdemeanor counts (each count involving multiple violations), and paid an $18.5 million fine.  Tr. 3714-43 (Lipsky, discussing PG-657 to PG-666).

Rockwell, like Dow, stored huge amounts of radioactive waste – mushy mixtures of cement and radioactive waste called "pondcrete" – outdoors in cardboard boxes, resulting in more contamination.  Tr. 1191-94, 1236-37 (Holeman); Tr. 3715-18, 3723 (Lipsky); Tr. 7741-42, 7877-86, 8047-49 (Weston); P-99; P-140; P-1341A-C (photographs); P-1609 at 16-18 (GAO report stating that Rockwell had accumulated 17,000 boxes of pondcrete by 1988); P-1622; PG-1030; PG-1032A; PG-1018B.  *See also* PV-188 (Cochran).  Like Dow, Rockwell also regularly released plutonium into the air in so-called "routine" releases.  DX-513 at 27-28.

Rockwell also engaged in wrongful "midnight burning" of plutonium waste. Rockwell secretly operated a radioactive waste incinerator, violating a DOE shut-down order.  Ronald Avery, a former foreman in charge of the incinerator, testified that Rockwell management instructed him to conduct burning at night to avoid detection, and to have workers falsify their time cards to hide their conduct.  Tr. 3780-89 (Avery); P-1090.  He testified that "a fairly large quantity of plutonium" was burned.  Tr. 3789.  *See also* Tr. 2389-91, 2396-2415 (Lipsky, discussing P-1278, FBI surveillance flight video using infrared camera, indicating thermal activity in the incinerator).

17

Hazardous wastes from Rocky Flats also contaminated the groundwater and surface waters leading off-site.  Tr. 7826-27 (Weston) & P-1610 (Rockwell letter stating that violations of EPA permit relating to water discharges had been "increasing at an alarming rate."); Tr. 7864-68 & P-1620 at 18 (groundwater contamination); P-1609 at 1 (GAO report noting "[s]ignificant problems regarding groundwater and soil contamination at the plant site"); P-512 at US3058682; Tr. 1230-42 (Holeman, discussing P-99, Colorado Department of Health order detailing violations of Colorado law); P-533; P-1080.  Rockwell's own plant president described Rocky Flats as "last" on safety issues among all DOE weapons sites nationwide.  PV-46; Tr. 7829-30.

Defendants' off-site monitoring of plutonium was poor, incomplete, and riddled with flaws.  P-97 at EML04317 (AEC scientist concluding "[a]nalytical quality control [in monitoring] … is practically non-existent."); P-533 at EML00997 (Colorado scientist concluding that "the offsite environmental monitoring program conducted by Dow personnel has been inadequate to assess the buildup of plutonium contamination" off-site); P-214 at 00003407 ("How would the public react if they knew we didn't routinely analyze our onsite air samples and offsite air samples for Pu?") (1970 Dow document); Tr. 3120-52 (Budnitz, discussing P-1306, P-412, P-193, P-1021, P-97, PG-610A); P-1062 at II-1; Tr. 3086-92 (Budnitz, discussing P-533); Tr. 3656-57, 3676-78 (Goble);

Tr. 4613-14, 4654 (Rockwell "did not know how much plutonium was coming out of their stacks" and was "not really monitoring the plutonium coming off the site") (Biggs) (member of citizen scientific committee) & P-1331 (committee report); Tr. 4655-75 (Biggs). DOE's own report on monitoring at Rocky Flats concluded that "the accuracy of measured concentrations of plutonium in ambient air are questionable." P-529 at 2-11; *see also* Tr. 8064-65 (Weston).[21]

As Defendants' own expert acknowledged, efforts to reconstruct past plutonium releases and resulting exposures have resulted in numerous, major revisions of prior estimates. *E.g.*, Tr. 8405-15 (Till, discussing P-1062, P-1068); Tr. 8444-46 (Till, discussing DX-513, RAC's report revising estimates of routine plutonium releases upward by 300%) (summary page); P-1334 at 7 ("The exact amount of plutonium released from the 1957 fire is impossible to determine accurately."); *id.* at 9 ("Depleted uranium was poorly monitored. As a result, relatively large, off-site releases of depleted uranium cannot be excluded."); *id.* at 42 ("significant gaps remain in our knowledge of uranium releases"); P-1082 at III-5 (plutonium releases from the 903 Area remain "inherently uncertain" because

---

[21] *See Cook XIV*, 564 F.Supp.2d 1189, 1213 ("The jury heard evidence from which it could have concluded . . . that the environmental monitoring that Defendants conducted was not designed or implemented in a manner that would allow Defendants' compliance with environmental standards to be determined.").

of lack of reliable, contemporaneous data); Tr. 5579-97, 5606-36 (Cochran);

Tr. 3677-78 (Goble); Tr. 3159-63 (Budnitz).

Moreover, Defendants lost track of *1191 kilograms (over 2600 pounds) of plutonium* (known to them as "Material Unaccounted For" or "MUF"), and more than *650 pounds* of uranium.  Tr. 5333-90 (Cochran); PG-27B; PG-27C; P-1132 at 108.  A 1964 MUF study (publicly released in 1994) stated: "The plutonium losses experienced during the entire history of the Rocky Flats Plant have been significant" but "[t]hese losses have never been explained or properly justified." P-10 at 4.  The study found that the 1957 plutonium fire resulted in a "fire loss" of *over six kilograms* of plutonium, far more plutonium than previously thought released.  P-10 at 8.  MUF remained a problem throughout Defendants' tenures.  P-653 (DOE reporting "five major incidents" relating to MUF since 1980); P-1143 at 4302564 (1989 DOE document noting "larger than usual" MUF losses).[22]

Because Defendants lost track of so much plutonium, off-site plutonium releases could be far larger than otherwise thought.[23]  Tr. 5387-90.  Much of the MUF likely did not escape off-site, but the amount of missing plutonium is so large that if even a fraction went off-site, it would greatly increase release estimates.

---

[22] DOE later changed "MUF" to "inventory difference" ("ID").

[23] In *Silkwood v. Kerr-McGee Corp.*, 769 F.2d 1451, 1455 (10th Cir. 1985), this Court found that defendant's failure to account for 10 kilograms of plutonium was "notable" evidence of its "endangerment of the public."  Defendants Dow and Rockwell lost track of **1191** kilograms of plutonium.

Tr. 5606-15 (Cochran); PV-188 (Cochran); *see also* P-1394 (1985 DOE document stating that large MUF amounts "represent a criticality safety and environmental protection concern").

Plutonium released by Defendants from Rocky Flats contaminated soil throughout the Class Area and remains there.  P-149A (study by AEC scientists, P.W. Krey and E.P. Hardy, "Plutonium in Soil Around the Rocky Flats Plant") ("Krey & Hardy"); P-533 at EML00997 (study by Colorado scientist Dr. Martell concluding that "independent soil measurements indicate that curies to tens of curies of plutonium from the Rocky Flats plant have been deposited in offsite areas"); Tr. 3080-93, 3109-20 (Budnitz, discussing P-149A and P-533); Tr. 3089 (a curie represents a "huge amount" of radioactivity) (Budnitz); P-303 at EML01012 (United States environmental research report concluding: "There is ample evidence to show that more than normal background amounts of Pu-239 exist in the soil environment surrounding the Rocky Flats facility."); P-1131 (aerial gamma surveys); P-1620 at 23 (GAO report noting "[e]levated levels of plutonium both on- and offsite."); DX-477 at 2 (1994 Colorado study showing plutonium contamination off-site that "is consistent with" Krey & Hardy); *see also* Tr. 8764-65 (Defendants' witness admitting that Great Western Reservoir sediment is

contaminated with plutonium from Rocky Flats);[24] Tr. 8766 (Standley Lake sediments contaminated with plutonium, requiring that Woman Creek leading from Rocky Flats be diverted to protect drinking water); Tr. 1263-65 (Holeman).

AEC scientists Krey and Hardy found a plutonium "contamination pattern" extending "about 8 miles east and southeast of the plant" although "[t]here is no question" that plutonium contamination from Rocky Flats extends farther, out to 40 miles from the plant. P-149A at 043685, 043717-18. They took soil samples "representative of the area studied," *id.* at 043686, validated by "elaborate and extensive quality control," *id.* at 043707, and developed contours mapping the plutonium off-site, *id.* at 043705. The Class Area is smaller than, and lies completely inside, the plutonium contours they developed. *See* PG-034A; PG-034; PG-051A.

Neither Defendants nor DOE did anything to remediate the plutonium contamination in the Class Area, and as Dow admitted, it is a "physical impossibility" to remove all plutonium contamination from soil. P-1118 at 000841. The same is true of plutonium-contaminated soil in the Class Area. Tr. 4121-22 (Smallwood). Moreover, even if some plutonium in the Class Area were removed, additional plutonium from the plant – including buried plutonium

---

[24] *Cf.* P-411 (1958 Dow document emphasizing that "it is imperative that no noxious or toxic chemicals find their way into" the Great Western Reservoir).

brought to the surface by plants, animals and insects – would have re-contaminated

those areas, even after weapons production stopped. Tr. 3996-4001, 4013, 4067,

4121-26 (Smallwood) & PG-561, PG-562, P-1127A, P-1294 (video), P-1352; Tr.

7056-58 (Selbin).

Plutonium releases by Dow and Rockwell violated ALARA.  Tr. 5287 ("one

of the real failures at Rocky Flats is the failure to keep exposures, off-site

exposures as low as reasonably achievable") (Cochran); Tr. 5322-28; PV-188

(Cochran).  A scientific study of cancer incidence showed significantly elevated

rates of cancer in off-site areas near Rocky Flats (including the Class Area), as

compared to areas farther away, including 29% more lung cancer among women in

certain time periods.  Tr. 4808-43, 4862 (Clapp); PG-691 (study area); PG-800;

PG-799 (results).  These results are consistent with *two* prior cancer studies.

Tr. 4800-05.  The most likely explanation is plutonium from Rocky Flats releases.

Tr. 4836, 5014. The off-site releases resulted in radiation exposures "sufficient to

cause latent diseases" – *i.e.*, disease appearing "long after the exposure that caused

it."  Tr. 3659-60 (Goble); Tr. 3681 (because of Defendants' operations, "class

members were exposed to plutonium" putting them at "some increased risk of

cancer as a result"); Tr. 3685 & P-1351 (graphics discussed by Goble)*; see also*

Tr. 8370 (other than those exposed after the 1957 fire, "the highest exposure and

resulting cancer risks were to people east and southeast of the plant" within the Class Area) (Defendants' expert, Till).

The excess cancers suggest that plutonium exposures "may have been greater" than previously estimated, "or that these exposures actually may be more carcinogenic to humans than we had thought." Tr. 4947 (Clapp).[25]

## SUMMARY OF ARGUMENT

In 1999, while temporarily presiding over this case, then-Chief Judge Richard P. Matsch remarked that "the United States Government through these contractors [Dow and Rockwell] put this plant out there and operated in a manner which has contaminated adjacent lands and *that's a nuisance by anybody's definition* . . . It's a damn nuisance."[26]

In 2006, after a four-month trial, a jury agreed, finding that Plaintiffs had proven a nuisance from plutonium contamination that had caused a substantial and unreasonable interference with the use and enjoyment of Class properties,

---

[25] DOE has dominated research into the health effects of plutonium exposure, but DOE's conflicting interests in protecting itself and its contractors from liability and promoting nuclear energy and weaponry have compromised the scientific reliability of that research. Tr. 5685-91, 5748, 5754-57, 5783-84 (Wing).

[26] A311-12.

satisfying Colorado requirements to prove a nuisance (requirements that are basically the same in all 50 states).[27]

This Court, however, accepting a new argument from Defendants on appeal, held that the 1988 PAA Amendments imposed new substantive requirements that Plaintiffs must prove a "nuclear incident" had occurred to prove a PAA claim, namely that Plaintiffs prove not (only) "interference" with use, but a "loss of use", which this Court seemed to equate with a "complete" loss of use, akin to radiation levels so high as to require an evacuation. *See Cook*, 618 F.3d at 1141-42.

On remand, Plaintiffs argued that the existing jury verdict on Plaintiffs' Colorado nuisance claim can and should be reinstated consistent with this Court's mandate in the previous appeal (and the class recertified for the same reason),[28] but the District Court held the Colorado claim completely preempted by the 1988 Amendments, and suggested that all claims "stemming from the hazardous properties of special nuclear material" are preempted regardless of whether the case involved a "nuclear incident."[29]

---

[27] *See* Jury Verdict Form (A375-404); A682, A906-41 (50-state survey of nuisance law submitted below).

[28] A1196-206.

[29] *See* A1224, 1233.  The District Court erroneously stated that "[t]he Tenth Circuit implicitly rejected" Plaintiffs' arguments that they have independent state nuisance claims (A1231). The prior brief the District Court cited was submitted in response to this Court's Order in the last appeal regarding *jurisdiction*, not preemption.  *See* Order, Appeal Nos. 08-1224, 08-1226 & 08-1229, Doc.

25

If this Court affirms, this Court (given its prior *Cook* decision) will be holding that the 1988 Amendments eliminated the nuisance law of Colorado (and impliedly all 50 states), and left no substitute remedy whatsoever. The PAA's goals of protecting the public while encouraging industry, yet minimizing interference with state law, would be transformed to: protecting industry, maximizing interference with state law, and forcing homeowners to suffer plutonium contamination and substantial and unreasonable interference with the use and enjoyment of their property without compensation.

The Court should avoid interpreting the PAA to preempt Plaintiffs' proven nuisance claims because preemption would render the PAA unconstitutional by depriving Plaintiffs of any remedy despite a proven nuisance in violation of the Due Process and Takings clauses of the Firth Amendment. Indeed, such a ruling would conflict with basic principles of federalism and representative and transparent government.

The PAA was enacted not solely to shield industry, but to ensure compensation to those harmed while minimizing interference with state law. Congress amended the PAA in 1988, and, reacting to various court decisions, created a federal "public liability" action so that cases from the same "nuclear

---

01018419329 (May 11, 2010). This Court found it had jurisdiction under § 1331, and said nothing about Plaintiffs' right to pursue independent state claims.

incident" could potentially be tried in one court (though cases could still proceed in state court). Although these amendments changed the PAA in some respects, Rockwell's own then-counsel (and former DOE assistant chief counsel) analyzed the 1988 Amendments shortly after their enactment, and did not conclude they had added new substantive elements and eliminated state nuisance claims. Instead, he concluded that *after* the 1988 Amendments, "it is still accurate to state that, 'Since its enactment in 1957, one of the cardinal attributes of the Price-Anderson Act has been its minimal interference with state law.'"[30]

And Defendants for *more than fifteen years* – through and after trial – never argued that the 1988 Amendments required proof of "loss of use" *and* preempted and prohibited state law nuisance claims – powerful evidence that the 1988 Amendments provided no notice that all state nuisance law was being eliminated and no substitute remedy was being provided. Congress cannot, under the Constitution, eliminate longstanding common law state rights without providing any substitute remedy. Congress surely cannot take such drastic action clandestinely, yet that would be the result if this Court affirmed the January 28 Order. It cannot be, and is not, constitutional for Congress to eliminate a longstanding, fundamental common law state right and claim, provide no substitute

---

[30] *See* John F. McNett, *Nuclear Indemnity for Government Contractors under the Price-Anderson Act: 1988 Amendments*, 19 PUB. CONT. L. J. 1, 7 (Fall 1989) (citation omitted) (A1276).

remedy, and not disclose this to the public in a transparent, contemporaneous fashion. The District Court's decision that the PAA preempts Plaintiffs' proven Colorado nuisance claims should be reversed, the class recertified, and the jury's verdict on Plaintiffs' Colorado nuisance claim reinstated.

## ARGUMENT

The jury's verdict supports entry of judgment on Plaintiffs' nuisance claim under Colorado law.

### A.    The District Court Has Diversity Jurisdiction over Plaintiffs' State Nuisance Claims

In their initial 1990 Complaint, Plaintiffs pled eight causes of action, the third being "Private Nuisance Under Colorado Law." Complaint, ¶¶ 81-84 (A194, 211-12). The Complaint stated that "Causes of Action numbered One through Seven describe causes of action arising under the law of the State of Colorado, which claims are properly before the District Court by virtue of the diversity jurisdiction conferred by 28 U.S.C Section 1332." *Id*. ¶ 66 (A208-09). The Complaint stated: "These same Causes of Action also constitute claims of public liability within the meaning of 42 U.S.C. Section 2014(hh), and such claims are therefore deemed to arise under the [PAA]." *Id*.[31]

---

[31] Plaintiffs' eighth cause of action was under CERCLA. Complaint, ¶¶ 108-115.

These same allegations appear in the complaint operative at trial. *See* SAC, ¶¶ 4, 96, 111-115 (A245); *Cook I*, 755 F. Supp. 1468, 1471, 1482-83 (deciding statute of limitations issues relevant under diversity jurisdiction).

Thus, Plaintiffs alleged a private nuisance, and alleged that the same facts simultaneously stated a claim under Colorado law and a PAA "public liability" claim.

The operative time when diversity jurisdiction must attach is when the case is filed,[32] and when the Complaint was filed, the class representatives were diverse from Defendants,[33] and alleged in good faith claims that met the then-existing statutory minimum of $50,000.[34] As Plaintiffs explained further in the court below, the District Court has diversity jurisdiction.[35] Defendants have never argued otherwise.

---

[32] *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).

[33] All class representatives were citizens of Colorado; Defendant Dow was a Delaware corporation with its principal place of business in Michigan; and Defendant Rockwell was a Delaware corporation with its principal place of business in California. *See* Complaint, ¶ 3. Only the named class representatives need be diverse from Defendants. *Snyder v. Harris*, 394 U.S. 332, 340 (1969).

[34] *See Cent. Fiber Corp. v. Site Servs. Ltd.*, 962 F. Supp. 1426 (D. Kan. 1997) (under time-of-filing rule, amendment to 28 U.S.C. § 1332(a) increasing amount-in-controversy requirement did not divest court of diversity jurisdiction); *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 164 (2d Cir. 2001) (same, citing *Cent. Fiber*); *Martin*, 251 F.3d at 1289 ("When a case is originally brought in federal court, the plaintiff's claimed amount is presumed to support diversity jurisdiction.") (citation omitted).

[35] *See* A682-85.

**B.      The District Court has Pendent and Ancillary Jurisdiction over Plaintiffs' State Nuisance Claims**

Plaintiffs also asserted pendent and ancillary jurisdiction.  SAC, ¶ 3.  The PAA and Colorado nuisance claims "derive from a common nucleus of operative fact" and hearing the claims together would promote "judicial economy, convenience and fairness to litigants", thus meeting requirements for pendent jurisdiction.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725-26 (1966).

The District Court can exercise jurisdiction over the pendent state law claims even though Plaintiffs have stipulated they will not re-try the federal claims (absent overturning or modification of this Court's prior ruling).  *Russillo v. Scarborough*, 935 F.2d 1167, 1172 n.5 (10th Cir. 1991).  *See also* 28 U.S.C. § 1367.

**C.      This Court Held that the Jury was Properly Instructed on Plaintiffs' Colorado Nuisance Claim**

This Court confirmed that "[t]he jury was properly instructed on the elements of a nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'"  *Cook*, 618 F.3d at 1145.

The jury instruction defining nuisance read:

> In order for the Plaintiff Class to recover from either Dow or Rockwell or both of them on their claim of nuisance, you must find Plaintiffs have proved each of the following elements by a preponderance of the evidence:

     1.    Dow or Rockwell or both of them interfered with Class members' use and enjoyment of their properties in the Class Area in one or both of these two ways:

          A.    By causing Class members to be *exposed to plutonium* and placing them at some *increased risk of health problems* as a result of this exposure (see Instruction Nos. 3.7, 3.18); and/or

          B.    By causing *objective conditions* that pose a *demonstrable risk* of future harm to the Class Area (see Instruction Nos. 3.7, 3.18);

     2.    This interference with Class members' use and enjoyment of their properties was both "unreasonable" and "substantial" (see Instruction Nos. 3.8 – 3.12)[.]

*See* Instruction No. 3.6 (Doc. 2121-1), p. 38 (A449); Jury Verdict Form (Doc. 2117), pp. 4-7 (questions regarding nuisance claim against Dow and Rockwell) (A378-81).

The jury was instructed that the "only" forms of class-wide interference with use and enjoyment it could consider were those identified in Instruction 3.6, *i.e.*, "causing Class members to be exposed to plutonium and placing them at some increased risk of health problems as result" and/or "causing objective conditions that pose a demonstrable risk of future harm to the Class Area[.]" *See* Instruction 3.7,  p. 40 ("[F]or purposes of deciding the first element of the Plaintiff Class' nuisance claim, **you may only consider** the two possible forms of interference with Class members' use and enjoyment of their property that I stated in Instruction 3.6 and will describe further here.") (A451).

Further, the jury was instructed:

> In deciding whether either or both forms of possible class-wide interference exists, **you should not consider whether individual Plaintiffs or Class members are or might be fearful, anxious or otherwise disturbed by any real or perceived risks relating to Rocky Flats** and the Defendants' activities there or the conditions they left behind. Individual reactions to these matters are not relevant to the question of whether a class-wide interference exists.
>
> You also should **not** consider in deciding this element of the nuisance claim whether Defendants' activities caused any decrease in the value of Class members' properties. The law does not consider a decrease in property value to be an interference with the use and enjoyment of property.

Instruction 3.7, p. 42 (A453). *See also* Instruction 3.8, p. 44 ("In deciding whether Plaintiffs have proven that the interference they claim is substantial and unreasonable, **you may only consider** any interference with Class members' use and enjoyment of property you find based on Instruction Nos. 3.6 and 3.7.") (A455).

As this Court previously held, the jury was properly instructed on nuisance under Colorado law.

The jury *also* was asked to consider a *third* and *separate* form of interference in a generic sense for potential use in *later* proceedings, namely whether Defendants "created a situation that is capable of causing fear, anxiety, or mental discomfort in individual Class Members (*see Instruction No. 3.28*)?" Jury Verdict Form at 29, question 5 (A403) (italics in original). Critically, the potential

future proceedings contemplated by Instruction 3.28 have not occurred and are

wholly unrelated to the class nuisance verdict awarded in 2006 (which Plaintiffs

seek to have reinstated under state law).

Jury instruction No. 3.28 included the following: "An individual Class

members' fear, anxiety or mental discomfort can also be based on concerns that

*may be without scientific foundation or other support in fact*." Instruction 3.28, p.

77 (A488). The District Court had approved the "without scientific foundation or

other support in fact" language in *Cook IX*, 273 F. Supp. 2d 1175, 1204 (quoting

Restatement (Second) of Torts § 821F, cmt. f). This Court cited *Cook IX* and the

Restatement and rejected that language. *See Cook*, 618 F.3d at 1145-46.

The erroneous "without scientific foundation or other support in fact"

instruction was contained in – but *only* in – Instruction 3.28, directed exclusively to

potential *later proceedings*, proceedings that have not occurred and are wholly

unrelated to the class nuisance verdict that is the subject of this appeal. The jury

was never instructed that it could find for Plaintiffs on either form of class-wide

interference with use and enjoyment of property, *or* find that either form was

"unreasonable" and "substantial," on the basis of "anxiety or fear of health risks"

that is "without scientific foundation or other support in fact."

To the contrary, the District Court expressly instructed the jury that (1)

Instruction 3.28 did not relate to the Class nuisance claims, and (2) in considering

33

the Class nuisance claims the jury should *not* consider evidence of "anxiety or fear

of health risks" that is "without scientific foundation or other support in fact":

> Plaintiffs assert that one of the ways Dow and Rockwell
> interfered with Class members' use and enjoyment of their land
> was by causing individual Class members to suffer fear, anxiety
> or mental discomfort because of concerns about risks created by
> Defendants' activities at Rocky Flats. **Because this is a trial of
> claims by the whole Class, I earlier instructed you <u>not</u> to
> consider whether individual Plaintiffs or Class members
> suffered this form of interference in deciding whether
> Plaintiffs had proved their class-wide nuisance claims (see
> Instruction No. 3.7). Nevertheless, to assist me and the
> parties in deciding how to proceed later in this case**, you will
> be asked to answer the following question:
>
>> Have Plaintiffs proved by a preponderance of the
>> evidence that the intentional or negligent conduct
>> of Dow or Rockwell or both of them at Rocky
>> Flats, and/or actual or threatened harms caused by
>> such conduct, created a situation that is capable of
>> causing fear, anxiety or mental discomfort in
>> individual Class members?

*See* Instruction No. 3.28, pp. 76-77 (underlining in original) (A487-88).

Thus, the jury was instructed that "an interference, in the form of anxiety or

fear of health risks" (618 F.3d at 1146) was "<u>not</u>" a form of class-wide interference

but was pertinent **only** to potential **later** proceedings (regarding emotional

distress). It is in **that** instruction (No. 3.28) – about **later** proceedings, not the

Class nuisance claims – that the District Court included the language, "[a]n

individual Class members' fear, anxiety or mental discomfort can also be based on

concerns *that may be without scientific foundation or other support in fact*" – that

34

this Court previously rejected.  Again, this jury instruction was directed exclusively at potential later proceedings that never actually occurred.  *See Cook XIII*, 580 F. Supp. 2d 1071, 1088 & n.10 (explaining that a "third form of interference with the use and enjoyment of property," namely "whether Defendants' conduct at Rocky Flats was capable of causing Class members to be fearful, anxious or otherwise disturbed by the real or perceived risks posed by the facility," would also be decided by the jury in a generic sense, "leaving to future proceedings (if necessary) the separate question of whether particular Class members in fact suffered this form of interference with the right to use and enjoy property.") (footnote omitted).

The jury is presumed to have limited its class-wide nuisance findings to the two forms of interference it was instructed it could consider on a class-wide basis. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 768 (10th Cir. 2011) ("'[A] jury is presumed to follow its instructions[.]'") (citation omitted).  Hence, this Court's "predict[ion]" about Colorado law regarding the third form of interference "in the form of anxiety or fear of health risks," 618 F.3d at 1146, has no bearing on the jury's class nuisance verdict or on this appeal.[36]  The issue is

---

[36] The jury carefully deliberated over 17 days and answered a lengthy set of special interrogatories.  A375-404 (Jury Verdict Form).  Moreover, as discussed above, Plaintiffs presented overwhelming scientific evidence supporting the nuisance claim.  *See also Cook XIII*, 580 F. Supp. 2d 1071 (rejecting Defendants' *Daubert* challenges).

simple: "[t]he jury was properly instructed on the elements of a nuisance claim as well as the definitions of 'substantial' and 'unreasonable,'"[37] the jury followed these instructions, and returned a nuisance verdict that can and should be reinstated.

### D.    The Court's Prior Decision Does Not Require or Support a Finding of Complete Preemption

Accepting Defendants' new argument on appeal, this Court previously held that: "the occurrence of a *nuclear incident*, and thus a sufficient injury under § 2014(q), constitutes a threshold element of any ***PAA claim***."  *Cook*, 618 F.3d at 1139.  A "nuclear incident" is "any occurrence . . . causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material[.]"  42 U.S.C. § 2014(q).

The definition of "nuclear incident" had not changed materially since the PAA's 1957 enactment, but this Court stated that through an interlocking chain of definitions in the 1988 Amendments – reasoning that Judge Lucero later called

---

[37] *Cook*, 618 F.3d at 1145.

"damaging alchemy"[38] – proof of a "nuclear incident" had become a substantive element of a PAA claim:

> [T]he 1988 Amendments to the PAA created a federal cause of action known as a "public liability action." A "public liability action … means any suit asserting public liability." 42 U.S.C. § 2014(hh). In turn, "public liability" is defined as "any legal liability arising out of or resulting from a nuclear incident." 42 U.S.C. § 2014(w).

618 F.3d at 1139. The Court held that a "threshold element" of a PAA claim was proof of an injury listed in § 2014(q) in the manner the Court discussed; the jury had not been correctly instructed on this point; and therefore the verdict on the PAA claim could not stand. *Id.* at 1142.

Regarding "damage to property," the Court held that proof of plutonium contamination alone is insufficient, absent additional "actual damage" to the property. *Id.* at 1140-41. The Court did not explain how much more "damage" from plutonium – a nuclear blast crater or something less – was required.

The Court compared "loss of use" in § 2014(q) to an evacuation because of massive radiation, stating that "a residential or business use may be lost due to an increased risk to health so high that no reasonable person would freely choose to live on or work at the property." *Id.* at 1141. The Court stated that, to prove a

---

[38] *See Cook v. Rockwell Int'l Corp.*, Appellate Case Nos. 08-1224, 08-1226 & 08-1239, Doc. 01018548139, at 5 (Dec. 9, 2010) (Lucero, J.) ("Because the en banc court ought to undo the panel's damaging alchemy, I respectfully **DISSENT**.") (dissenting from denial of *en banc* review).

PAA claim, proof of "loss of use" was required *above and beyond* proof of "interference with use" required under Colorado law to prove nuisance. *Id.* at 1145 n.20 ("On its face, the state-law 'interference with use' standard presents a lower threshold than the PAA's 'loss of use' standard."). Like "damage to property," the Court ruled that the jury had not been required to find a "loss of use" to find for Plaintiffs. *Id.* at 1142.[39]

The Court did not hold that a Colorado state nuisance claim *not* involving a "nuclear incident" was preempted. Rather, the Court held that to prevail under a **PAA claim**, a plaintiff must satisfy the PAA's "loss of use" requirement to prove a "nuclear incident." *See id.* at 1145 & n.20.[40] This Court's prior decision is limited, by its terms, to PAA claims, and does not support or imply complete preemption of *state law* claims *not* involving a "nuclear incident" simply because the state claims arise from release of nuclear materials.

### E.    The District Court Erred in Holding That Plaintiffs' Nuisance Claims Were Preempted

The Supreme Court has explained that there are

> two cornerstones of our pre-emption jurisprudence. First, the
> purpose of Congress is the ultimate touchstone in every pre-

---

[39] An "interference" causes a "loss" – if someone blocks half your view at a movie, you have suffered a "loss" in your view – but the Court apparently equated "loss of use" with **total** loss.

[40] *See* 618 F.3d at 1140 ("The presence of a *nuclear incident* is the hallmark of a public liability action.").

emption case.    Second, [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, . . . **we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress**.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations and internal quotation marks omitted).  The assumption against preemption "applies with greater force when the alleged conflict is in an area traditionally occupied by the States." *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009).  Such "traditional" areas "include[] common law tort liability." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1467 (4th Cir. 1996) (collecting cases).

There are three general forms of preemption: (1) express; (2) field; and (3) conflict.  *Devon Energy Prod. Co. L.P. v. Mosaic Potash Cardlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) ("*Devon*").  In *Devon*, the Court distinguished "complete" from "field" preemption.  *Id*.  Defendants bear the burden of demonstrating preemption.  *See Cook*, 618 F.3d at 1143.  The District Court's January 28 Order treated complete and field preemption as very similar, and declined to rule on conflict preemption. A1230.

Defendants did not advance a field or complete preemption argument in the previous appeal, *Cook*, 618 F.3d at 1142-44, and the District Court erred in not

holding that Defendants have waived such arguments.[41]  Any preemption argument here is non-jurisdictional (and therefore waivable) because the District Court has subject matter jurisdiction under § 1332 and pendent jurisdiction, and this Court has jurisdiction under § 1291.

Moreover, in *Devon* – decided after *Cook* – this Court identified three areas where the Supreme Court has recognized complete preemption, but did **not** include the PAA.  *See Devon*, 693 F.3d at 1203 n.4, 1204-05 ("'[c]omplete preemption is a rare doctrine'" that the Supreme Court has recognized in "only three areas" – but *not* including the PAA).[42]  Thus, the District Court's citation to *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473 (1999), *see* January 28 Order at 7 (A1230), is inapt.  There is no complete preemption in the PAA context under *Devon*.

The other authority cited by the District Court focuses on claims arising from a "nuclear incident," but Plaintiffs now are pursuing a *non*-nuclear incident claim.  The District Court, for example, quoted *In re TMI Litigation Cases*

---

[41] *See, e.g.*, *Dow Chem. Corp. v. Weevil-Cide Co*., 897 F.2d 481, 486 n.4 (10th Cir. 1990) ("non-jurisdictional issues waived earlier in the proceedings may not be asserted upon remand") (citations omitted); *Dueringer v. Gen. Am. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir. 1988); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349-50 (2d Cir. 2003); *Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 90 (1st Cir. 2011).

[42] *See Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (same, distinguishing PAA's removal provision from "complete preemption"); *Roddy v. Grank Trunk W. R.R.*, 395 F.3d 318, 322-23 (6th Cir. 2005) (same).

40

*Consolidated II*, 940 F.2d 832, 854 (3d Cir. 1991) stating that, "[a] claim growing out of any **nuclear incident** is compensable under the terms of the Amendments Act or *it is not compensable at all*." (italics in original). *See* January 28 Order at 6 (A1229). But a "nuclear incident," this Court has held, requires a "loss of use" while Plaintiffs pled and proved an *interference* with use. Thus, *Plaintiffs are no longer pursuing*, nor seeking reinstatement of the jury verdict on, "a claim growing out of [a] nuclear incident."[43] If Plaintiffs' nuisance claim arose from releases of non-nuclear materials from Rocky Flats, there would be no question that Plaintiffs could recover under state law for an "interference" with use. The result is no different where there is a release of nuclear materials but no "nuclear incident."[44]

---

[43] This again assumes that this Court's prior *Cook* decision is not modified or overturned. The District Court cited language in *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997), that "the 1988 Amendments, 'appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production.'" January 28 Order at 6 (A1229). This Court's *Cook* decision, however, sharply limited what a "nuclear incident" means regarding property torts. Plaintiffs' proven state nuisance claim is not a "nuclear incident" any more than a nuisance involving non-nuclear hazardous materials would be. *See Farley*, 115 F.3d at 1503 ("The 1988 Amendments expand federal jurisdiction over claims arising out of a '*nuclear incident*.'"). Plaintiffs are proceeding now under diversity and pendent/ancillary jurisdiction.

[44] *See In re TMI Litig. Cases Consol. II*, 940 at 863-64 ("a finding that a particular claim does not fall within the definition of 'public liability' **does not preclude** the plaintiff from pursuing that claim in state court under a different name."; "I believe state law remains 'an **independent source** of private rights.'") (Scirica, J. concurring) (citation omitted). Indeed, no form of preemption bars Plaintiffs' nuisance claims. Express preemption is not at issue. *See Cook*, 618 F.3d at 1143; *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 186 (1988)

**F.**   **Finding That the PAA Preempts Plaintiffs' Proven State Nuisance Claims, Combined with This Court's Earlier Ruling, Would Render the PAA Unconstitutional**

This Court's ruling that the PAA requires "loss of use of property", *Cook*, 618 F.3d at 1141, combined with the District Court's ruling that a Colorado nuisance claim for "interference with use and enjoyment" is preempted, would mean that the 1988 Amendments abolished the common and statutory law of nuisance in all 50 states and left no substitute remedy.  Such a result (1) cannot be reconciled with the PAA's history or the 1988 Amendments; and (2) would be unconstitutional.

Plaintiffs below submitted a 50-state survey of the law of nuisance in 1987 (before the 1988 Amendments) and currently.  A906-37.  **No** state requires, or required before the 1988 Amendments, a total "loss of use" to recover for a nuisance.  **All** states permit recovery for **interference** with use and enjoyment.

"The **essence** of a private nuisance is an **interference** with the use and enjoyment

---

("Congress was willing to accept regulatory consequences of application of state tort law to radiation hazards even though direct state regulation of safety aspects of nuclear energy was pre-empted"); *Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc.*, 959 F.2d 158, 163 (10th Cir. 1992) ("The Atomic Energy Act contains no preemption provision and reserves significant authority to the states. 'Further, the enactment and legislative history [of the Act] make clear Congress' explicit judgment that state common law damage actions for injuries caused by nuclear operations should be permitted to continue.'") (citation omitted), *vac'd on other grounds and rem'd*, 506 U.S. 910 (1992), *previous opinion adhered to*, 981 F.2d 1177 (10th Cir. 1993).  The District Court did not address conflict preemption, which was briefed below.  *See* A1230.  There have been no decisions that would alter *Cook IX*'s holding that field preemption does not apply.

of land." W. Page Keeton, et al., *Prosser and Keeton on Torts* 619 (5th ed. 1984) (footnote omitted). *See id*. at 617 (tracing roots of claim for nuisance).

As the late Dean Prosser explained:

> *Nuisance* is a French word which means nothing more than harm. It entered the English law at a very early date as the name of a tort against land. A nuisance, whatever the fascinating variety of orthography attached to it, was an **interference** with the use or enjoyment of land, or with a right of easement or servitude over the land.

*See* William L. Prosser, *Private Action for Public Nuisance*, 52 VA. L. REV. 997, 997 (1966) (italics in original) (footnotes omitted). *See Cook*, 618 F.3d at 1145 ("Under Colorado law, a plaintiff asserting a nuisance claim must establish an **interference** with the use and enjoyment of his property that is both 'substantial' and 'unreasonable.'") (citation omitted). Plaintiffs proved what this Court called "classic property tort claims." *Id*. at 1140 n.11.

## 1. The PAA Was Enacted to Protect the Public and Preserve State Law, Not Merely Protect Industry

Enacted in 1957, the PAA "had the dual purpose of 'protect[ing] the public and . . . encourag[ing] the development of the atomic energy industry.'" *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 64 (1978) (citing 42 U.S.C. § 2012(i)). The PAA's "primary concern," though, was protecting the public and ensuring compensation for "**any** form of damage arising from the special dangerous properties of the material used in the atomic energy program." *See* S.

Rep. 296, *reprinted in* 1957 U.S.C.C.A.N. 1803, 1817; *id*. at 1816 ("The primary

concern of the Federal Government is with the protection to the people who might

suffer damages from the new atomic energy industry.") (A776).

The PAA encouraged "development of the atomic energy industry" by

protecting industry from "unlimited liability" from *catastrophic* nuclear incidents.

*See* S. Rep. No. 296 at 1804-05 (discussing "worse imaginable case" of $7 billion

in damages (in 1957 dollars) from "contamination of land with fission products" –

equivalent to approximately $57.6 billion in 2012 dollars) (A765).  *See Duke*

*Power*, 438 U.S. at 64 (PAA intended to protect industry from "potentially vast

liability" from a "major nuclear accident").

An overriding principle of the PAA was to *minimize* interference with state

law.  *See* S. Rep. No. 1605, *reprinted in* 1966 U.S.C.C.A.N. 3201, 3206 ("Since its

enactment by Congress in 1957 one of the **cardinal attributes of the Price-**

**Anderson Act has been its minimal interference with State law**.") (A796).  In

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984), the Supreme Court held that

the PAA did not preempt: (a) "'State law,'" 464 U.S. at 252 (quoting S. Rep. No.

296, 1957 U.S.C.C.A.N., pp. 1803, 1810); (b) the right of "a state [to] . . . award

damages based on its own law of liability" including "state law of negligence or

strict liability," *id*. at 256; or (c) "traditional principles of state tort law," *id*. at 255.

*See Cook IX*, 273 F. Supp. 2d at 1181-97 (analyzing history of the PAA and the *Silkwood* decisions).

In *McKay v. U.S., et al.*, 703 F.2d 464 (10th Cir. 1983), involving some of the same Rocky Flats plutonium releases as here, this Court *rejected* the notion that a state nuisance claim had been preempted, holding that federal regulation of atomic energy did *not* evince an intent by Congress "that persons injured through negligence or wantonness are henceforth to be deprived of a remedy." *Id*. at 468.

## 2.    The 1988 Amendments Did Not Eliminate All State Nuisance Law

The 1988 Amendments responded to (1) *Stibitz v. GPU*, 746 F.2d 993 (3d Cir. 1984) by creating a way to potentially consolidate cases from the same "nuclear incident" in one federal court, given the various suits filed after Three Mile Island; *see* S. Rep. No. 100-218 (1987) (reprinted in 1988 U.S.C.C.A.N. 1476, 1488) (A877, 889); and (2) *Silkwood* by prospectively prohibiting punitive damages in PAA cases involving nuclear incidents. *See id.* at 1487 (A888); 42 U.S.C. § 2210(s) (relating to punitive damages).

In *McKay*, this Court held that Congress had *not* intended the PAA to deprive "persons injured through negligence or wantonness . . . of a remedy." 703 F.2d at 468. The jury here found that Dow and Rockwell had created a substantial and unreasonable interference from class-wide plutonium contamination through *intentional* or *negligent* conduct. A379-80. According to Defendants and the

District Court's erroneous holding, however, Plaintiffs have no remedy.  Yet not a word in the 1988 Amendments' legislative history states that Congress intended to simply eliminate longstanding, "classic" nuisance law providing for recovery for a substantial and unreasonable "interference" with use and enjoyment of property, and force property owners to suffer such an interference without any compensation.  A holding that the PAA's "**loss** of use" language preempts all state law permitting recovery for "**interference** with use" simply because the interference stems from release of nuclear materials has no basis in the PAA's statutory text or legislative history and would essentially eliminate the common and statutory nuisance law of all 50 states.  Plaintiffs' supposed lack of any remedy, despite suffering proven harms, weighs strongly against preemption.  *See generally Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1112 (4th Cir. 1988) ("The presumption against preemption is even stronger against preemption of state remedies, like tort recoveries, when no federal remedy exists.") (internal quotation, citations, and footnote omitted); *Cf.* H.R. Rep. No. 104(I) at 20 (1987) (the "policy of only interfering with state law to the minimum extent necessary . . . has been embodied in the Price-Anderson Act for the last 30 years.") (A840).

A finding that Congress, in passing the 1988 Amendments, intended to require proof of "loss of use" *and* preempt and prohibit *any* recovery under state law for substantial and unreasonable "interference" with use, would mean that,

46

despite decades of "minimal interference" with state law, Congress in 1988

intended to eliminate all state nuisance law (both common and statutory) through

some definitional subsections and provide no substitute remedy, without expressly

saying so and without leaving any trace of such an extreme and draconian intent in

the legislative history.  That is not credible.  *Cf. Silkwood*, 464 U.S. at 251 ("It is

difficult to believe that Congress would, without comment, remove all means of

judicial recourse for those injured by illegal conduct.").[45]

By contrast, holding that Plaintiffs' Colorado nuisance claim is not

preempted would not disturb the PAA's limitations on liability for *nuclear*

*incidents* (and therefore conflict preemption does not apply, *see Cook*, 618 F.3d at

1143, discussing conflict preemption).  The nuclear industry would remain

protected from "unlimited liability" for all severe radioactive releases, because

severe releases – causing evacuations ("loss of use"), or physical deformity to the

land like blast craters ("damage to property"), or "bodily injury, sickness, disease,

or death" – would all remain "nuclear incidents" (as interpreted by this Court).

It is only lesser releases – causing lesser harms *below* the "nuclear incident"

threshold – that would be at issue.  By definition, non-"nuclear incident" releases

are *not* catastrophic and do not result in "unlimited liability."  The jury's

---

[45] *See California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) ("Ordinarily,
state causes of action are not pre-empted solely because they impose liability over
and above that authorized by federal law[.]") (citing *Silkwood*, 464 U.S. at 257-58).

compensatory award here, for example, of $177 million (A398)[46] is about 1.3% of

the current PAA liability cap for nuclear incidents of approximately $13.6 billion[47],

and a tiny fraction of the $57 billion (in 2012 dollars) "worse case" damage

Congress wanted to protect the nuclear industry against when it enacted the PAA.

Section 2210 of the PAA "is focused on providing nuclear licensees and

contractors with protection from public liability arising from *nuclear incidents*, but

it does not exclude or bar other types of harms from reparation by state or federal

courts." *Cotroneo v. Shaw Envtl. & Infrastructure*, *Inc.*, 639 F.3d 186, 204 (5th

Cir. 2011) (Dennis, J., concurring in part, dissenting in part), *cert. denied*, 133 S.

Ct. 22 (U.S. June 25, 2012).  As Judge Dennis stated: "Nothing in § 2210

immunizes licensees and contractors from liability for other kinds of harms or

prevents them from providing their own self-insurance or private insurance against

such liability."  *Id*. at 201.[48]

---

[46] This is exclusive of prejudgment interest from the two-decade delay in recovery.

[47] *See* Nuclear Energy Institute, *Insurance: Price-Anderson Act Provides Effective Liability Insurance at No Cost to the Public*, available at http://www.nei.org/resourcesandstats/documentlibrary/safetyandsecurity/factsheet/priceandersonact/.  *See also* A939 (in 2012, the PAA liability cap was $12.6 billion).

[48] Plaintiffs disagree with Judge Dennis' view of "complete preemption" (at least when paired with this Court's ruling on "loss of use").  It is the *combination* of the prior *Cook* ruling *with* complete preemption of any state claim stemming from release of nuclear materials that would render the PAA unconstitutional.

48

Regarding consolidation, even for nuclear incidents, the PAA does not *require* consolidation in federal court. *See* 42 U.S.C. § 2210(n)(2) (concurrent state court jurisdiction). Furthermore, there are other means for consolidating actions. Most notably, the Class Action Fairness Act ("CAFA"), passed after the 1988 PAA amendments, asserts jurisdiction over any class action seeking over $5 million in damages, if there is minimal diversity, 28 U.S.C. § 1332(d)(2); allows for consolidation of "mass actions" involving common questions of law or fact and 100 or more plaintiffs, § 1332(d)(11); and provides for removal of class actions filed in state courts, § 1453. Other consolidation tools exist, including under 28 U.S.C. § 1407, consolidation within a district under Fed. R. Civ. P. 42, and plaintiff- or defendant-initiated motions to certify a class under Rule 23 or its state equivalents. *See In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 420 (D.S.C. 2010) (actions removed under CAFA, then consolidated); *Gayvont v. Davol, Inc.*, MDL 07-1842ML, 2008 WL 2433258, at *1 (D.R.I. Feb. 26, 2008) (same); *In re Prempro Prods. Liab. Litig.*, MDL 4:03CV1507-WRW, 2007 WL 641416, at *1 (E.D. Ark. Feb. 27, 2007) (same).

Reinstatement of Plaintiffs' proven state-law nuisance claim best serves and harmonizes the multiple objectives of Congress in enacting and amending the PAA. As Justice Blackmun wrote in *Silkwood* – in a dissent *agreeing* with the majority that a compensatory damage award under state law was not preempted –

"[I]t is **inconceivable that Congress intended to leave victims with no remedy at all.**" *Silkwood*, 464 U.S. at 263 (Blackmun, J., dissenting) (footnote omitted). The majority agreed: "Congress . . . disclaimed any interest in promoting the development and utilization of atomic energy by means that fail to provide adequate remedies for those who are injured by exposure to hazardous nuclear materials." *Id.* at 257.

### 3.    Preemption Would Render Portions of the PAA Unconstitutional

In every state, nuisance law protects property owners' rights to be free from substantial, unreasonable interferences with use and enjoyment of their property. The District Court's ruling, combined with this Court's earlier ruling, would eliminate all longstanding, "classic" nuisance law without providing a substitute remedy, rendering the PAA unconstitutional under the Due Process and Takings clauses of the Fifth Amendment.

Such a ruling would, at least, raise serious questions about whether the PAA is constitutional, and the doctrine of constitutional avoidance counsels that this Court should avoid interpretations raising serious constitutional concerns. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237-38 (1998) ("…a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.") (citation omitted). The doctrine is "a tool for choosing between competing plausible interpretations of a

statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Suarez Martinez*, 543 U.S. 371, 381 (2005). The Court should not embark on the constitutional analysis absent a "clear expression of an affirmative intention of Congress" to create the constitutionally questionable result. *NLRB v. Catholic Bishop*, 440 U.S. 490, 504 (1979). This Court should avoid the constitutional problem by holding that the PAA does not preempt Plaintiffs' proven nuisance claims.

In *Duke Power*, the Court upheld the PAA liability cap but (1) did so *before* the 1988 Amendments; and (2) left open whether a "legislatively enacted compensation scheme" must "provide a reasonable substitute remedy" if the scheme abrogates common law rights. 438 U.S. at 88.

*Duke Power* discusses extensively the adequacy of the PAA's (pre-1988) substitute remedy, indicating that its availability was critical to the Court's decision. *See id*. at 88-93 (summarizing PAA's remedial provisions: "This panoply of remedies and guarantees is at the least a reasonably just substitute for the common-law rights replaced by the Price-Anderson Act. Nothing more is required by the Due Process Clause." *Id*. at 93.).

Here, however, (1) this Court held that the 1988 Amendments require "loss of use" while "interference" with use is insufficient; and (2) the District Court held

51

that Plaintiffs' Colorado nuisance claims are completely preempted, even though *not* involving a "nuclear incident" *per Cook.* In short, there would be no substitute remedy for what this Court itself termed a "classic" property tort claim. None.

Justice White, in dissenting from the dismissal of certiorari in a case concerning caps on medical malpractice damages, wrote:

> Whether due process requires a legislatively enacted compensation scheme to be a quid pro quo for the common-law or state-law remedy it replaces, and if so, how adequate it must be, ... appears to be an issue unresolved by this Court, and one which is dividing the appellate and highest courts of several States.

*Fein v. Permanente Med. Grp.*, 474 U.S. 892, 894-95 (1985) (White, J., dissenting). *See also PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 93-94 (1980) ("Quite serious constitutional questions might be raised if a legislature attempted to abolish certain categories of common-law rights in some general way. Indeed, our cases demonstrate that there are limits on governmental authority to abolish 'core' common-law rights, including rights against trespass, at least without a compelling showing of necessity or a provision for a reasonable alternative remedy.") (Marshall, J., concurring); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1150 (9th Cir. 2009) ("To date, the Supreme Court has never decided what level of constitutional scrutiny applies to a statute that abrogates a common-law cause of action and leaves no alternative remedy available.") (Berzon, J., concurring in part and dissenting in part).

52

In *New York C. R. Co. v. White*, 243 U.S. 188 (1917), the Court considered a state workmen's compensation law providing the exclusive remedy for certain employment-related injuries, requiring employers to compensate for workplace accidents without regard to fault, and establishing a schedule for compensation. The Court found it unnecessary to decide whether "a State might, without violence to the constitutional guaranty of 'due process of law,' suddenly set aside all common-law rules respecting liability as between employer and employee, without providing a reasonably just substitute", because the law there provided a substitute remedial scheme. *Id*. at 201 (employees were "entitled to moderate compensation in **all** cases of injury."). *See also Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977) ("The Due Process Clause of the Fifth Amendment . . . was intended to give Americans at least the protection against governmental power that they had enjoyed as Englishmen against the power of the Crown. The liberty preserved from deprivation without due process included the right 'generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.'") (citations omitted).

The concern that Congress might seek to nullify traditional state common law has repeatedly been invoked by courts warning of federal over-reaching into traditional state domains. In *Martinez v. California*, 444 U.S. 277, 282 (1980), the Court observed that "the State's interest in fashioning its own rules of tort law is

paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *See also Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 888 (4th Cir. 1999) (holding Violence Against Women Act was not a constitutional exercise of Congress' power because otherwise, "then presumably the federal government could adopt and enforce a federal divorce and domestic relations code.  And federal preemption, or even occupation, of other substantive fields of law, such as tort and contract law, would soon follow."), *aff'd sub nom. United States v. Morrison*, 529 U.S. 598 (2000).

      While a given common-law remedy may not necessarily be a *fundamental* right, neither is that right illusory.  *See Martinez*, 444 U.S. at 281-82 ("Arguably, the cause of action for wrongful death that the State has created is a species of 'property' protected by the Due Process Clause."); *Ileto*, 565 F.3d at 1153 ("[A]n individual does have a weighty property interest in having *some* legal means available to redress an injury that would have been compensable at common law.") (Berzon, J., concurring in part and dissenting in part) (emphasis in original).

      Given the important interests at stake, there is authority for a "heightened" rational basis standard of review looking to whether the legislature has provided an alternate remedy.  For example, Judge Berzon read *Duke Power* as applying such a

standard given the Court's extensive discussion of the adequacy of the PAA remedies. *Id.* at 1152 (Berzon, J, concurring in part and dissenting in part).

Numerous state courts consider the availability of substitute remedies when assessing statutes that weaken or eliminate common-law rights. *See, e.g.*, *Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 974 P.2d 1194, 1198, 1217 (Utah 1999) (statute that limits a remedy must "provide[ ] an injured person an effective and reasonable alternative remedy", or else the court will apply a heightened standard of review); *Church v. Rawson Drug & Sundry Co.*, 842 P.2d 1355, 1365 (Ariz. Ct. App. 1992) (in considering a federal due process challenge to a state law abolishing joint and several liability, noting that, "in weighing whether a statute which abrogates rights is constitutional, it is appropriate to consider the extent to which the litigant's right to redress is affected", *id.* at 1365, but finding the statute in question "neither deprives litigants of access to the courts nor sets a ceiling on how much they can recover", *id.*); *Bair v. Peck*, 811 P.2d 1176, 1188 (Kan. 1991) (striking down statute that eliminated vicarious liability of employer health care providers: "[E]ven if a statute is consistent with public policy, there still must be an adequate substitute remedy conferred on those individuals whose rights are adversely impacted."); *Smith v. Dep't of Ins.*, 507 So. 2d 1080, 1088 (Fla. 1987) (striking cap on noneconomic damages in medical malpractice cases: "[W]here a right of access to the courts for redress for a particular injury ... has

55

become a part of the common law of the State ... the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.") (citation and internal quotation marks omitted); *Sax v. Votteler*, 648 S.W.2d 661, 665-66 (Tex. 1983) (striking down law that eliminated earlier rule tolling statute of limitations for medical malpractice claims involving children until after child reached age of majority: "[T]he right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress.").

Whether this Court applies normal or heightened rational basis review, any interpretation of the PAA as abolishing liability for a substantial and unreasonable interference with use and enjoyment of property without providing a substitute remedy of any kind cannot stand. Such a rule plainly would undermine the "public compensation" goal of the PAA. The PAA was designed to protect industry from

*catastrophic* "unlimited liability" the industry claimed it could ill afford, not common law nuisance claims it easily can.[49]

The Supreme Court and other courts also have recognized that a nuisance can constitute a taking.  In *Richards v Washington Terminal Co.*, 233 U.S. 546 (1914), the Court held that acts of Congress directing the location of a railroad tunnel and tracks, and immunizing a railroad from suit for gas and smoke emitted from a railroad tunnel that affected plaintiff's property, accomplished an unconstitutional taking: "We deem the true rule, under the 5th Amendment, as under state constitutions containing a similar prohibition, to be that while the legislature may legalize what otherwise would be a public nuisance, it may not confer immunity from action for a private nuisance of such a character as to amount in effect to a taking of private property for public use."  *Id*. at 553.  *See Bormann v. Bd. of Supervisors*, 584 N.W.2d 309, 319-20 (Iowa 1998) ("[T]he state cannot regulate property so as to insulate the users from potential private nuisance claims without providing just compensation to persons injured by the nuisance.");

---

[49] The Boeing Company (Rockwell's parent company) reported revenues of $86.62 billion in 2013.  The Boeing Company 2013 10-K (Feb. 14, 2014), http://services.corporate-ir.net/SEC.Enhanced/SecCapsule.aspx?c=85482&fid=9266199, pp. 17, 18, 19, 43, 49, 54, 106, 108.  The Dow Chemical Company reported net sales of $57.08 billion in 2013.  The Dow Chemical Company 2013 10-K (Feb. 14, 2014), http://www.dow.com/investors/reports/index.htm, pp. 29, 30, 32, 69, 138.  *See also* A716 n.23 (same information for 2011).

*id.* at 321 (legislature violated Fifth Amendment by authorizing the "creation of a nuisance without the payment of just compensation"); *Urie v. Franconia Paper Corp.*, 218 A.2d 360, 362 (N.H. 1966) ("It seems doubtful if the Legislature has constitutional power to permit the defendant to continue to commit private nuisances ..., since such legislation would constitute taking private property for a non-public purpose.").

The proven plutonium contamination of Plaintiffs' property renders the nuisance here a taking under the *ad hoc* "situation-specific factual inquiries" required in most takings cases.[50]  *See Arkansas Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 522 (2012).[51]  If *Cook* is not modified or overturned, and Plaintiffs' proven state nuisance claim is preempted, the PAA is unconstitutional because Plaintiffs will have suffered a taking without *any* compensation.  The *ad hoc* analysis under *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978) includes considering the economic impact of the regulation on the

---

[50] It is irrelevant whether the taking is considered accomplished by the PAA or courts interpreting it.  *See Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 715 (2010) (plurality opinion) ("If a legislature *or a court* declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it or destroyed its value by regulation.") (emphasis in original).

[51] The proven contamination also satisfies the *per se* taking standard because such "a permanent physical occupation of property authorized by government is a taking." *Arkansas Game*, 133 S. Ct. at 518 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982)).

landowner, its interference with reasonable investment-backed expectations, and the character of the governmental action – meaning, whether it touches the land or is simply "some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* at 124. There is no "'set formula,'" but the "'Fifth Amendment's guarantee . . . [is] designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id.* at 123 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

Immunizing Defendants from all liability for a proven nuisance would force Plaintiffs and the Class alone "to bear public burdens which, in all fairness and justice, should be borne by" Dow and Rockwell, but if not them, then by "the public as a whole."

In short, "it is **inconceivable that Congress intended to leave victims with no remedy at all.**" *Silkwood*, 464 U.S. at 263 (Blackmun, J., dissenting) (footnote omitted). It is even more inconceivable that Congress would do so without telling anyone.

## CONCLUSION

The case should be remanded again to the District Court so that it may recertify the Class and enter judgment in favor of Plaintiffs on Plaintiffs' proven Colorado nuisance claims.

Dated:  June 10, 2014

Respectfully submitted,

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Caitlin G. Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania  19103
(215) 875-3000
mdavidoff@bm.net
dsorensen@bm.net
ccoslett@bm.net

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, Colorado  80206
(303) 399-3000
blumg@s-d.com
skelly@s-d.com

Louise M. Roselle
Paul M. DeMarco
Markovits, Stock & De Marco, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700
lroselle@msdlegal.com
pdemarco@msdlegal.com

*Attorneys for Plaintiffs-Appellants*

## REQUEST FOR ORAL ARGUMENT

In light of the complex and voluminous record, oral argument is respectfully

requested.

> */s/ Merrill G. Davidoff*
> Merrill G. Davidoff
> BERGER & MONTAGUE, P.C.
> 1622 Locust Street
> Philadelphia, PA 19103
> (215) 875-3000
> mdavidoff@bm.net

**CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE**

The undersigned hereby certifies that this ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Symantec Endpoint Protection, version 12.1.3001.165.105, updated 1/13/14) and, according to the program, is free of viruses.

Date:  June 10, 2014

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 13,869 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

version 14.0.7116.5000 (32-bit) in Times New Roman size 14-point.

Date:  June 10, 2014

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

## CERTIFICATE OF COMPLIANCE WITH 10th CIR. R. 25.5

This brief complies with the privacy and redaction requirements of 10th Cir.

R. 25.5.

Date:  June 10, 2014

/s/ Merrill G. Davidoff
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

65

**CERTIFICATE OF COMPLIANCE WITH ECF FILING**

This brief complies with the *ECF User Manual*, Section II, Policies and

Procedures for Filing Via ECF, Part I(b), that the electronic copy filed and the hard

copies submitted to the Clerk are exactly the same.

Date:  June 10, 2014

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

## CERTIFICATE OF SERVICE

I hereby certify that today, this 10th day of June 2014, I caused a copy of the foregoing Plaintiffs'-Appellants' Principal Brief to be served via ECF Notification on the following counsel and a copy of the Appendix of Plaintiffs'-Appellants' to be served on the Clerk of the United States Court of Appeals for the Tenth Circuit and on the following counsel for Defendants-Appellees by overnight delivery via Federal Express on the following counsel for Defendants-Appellees:

Christopher Landau
Rebecca Taibleson
Kirkland & Ellis LLP
655 15th St. NW
Washington, D.C. 20005
202-879-5000

Kevin T. Van Wart
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

## INDEX OF ATTACHMENTS TO
## PLAINTIFFS'-APPELLANTS' PRINCIPAL BRIEF

1. 10/16/12 District Court Order Re Briefing Schedule on Remand
   (Case No. 1:90-cv-00181-JLK, Doc. 2334)

2. 1/28/14 District Court Order Regarding Briefing at ECF. Docs. 2344, 2345,
   & 2350 (Case No. 1:90-cv-00181-JLK, Doc. 2351)

3. 2/27/14 District Court Order Approving Stipulated Dismissal with Prejudice
   and Entry of Final Judgment (Case No. 1:90-cv-00181-JLK, Doc. 2356)

4. 2/27/14 District Court Order Regarding Clarification (Case No. 1:90-cv-
   00181-JLK, Doc. 2357)

5. 2/27/14 Judgment (Case No. 1:90-cv-00181-JLK, Doc. 2358)

ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **90-CV-181**-JLK

**MERILYN COOK, et al.,**

      Plaintiffs,

v.

**ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL COMPANY,**

      Defendants.

_____

### ORDER RE BRIEFING SCHEDULE ON REMAND
_____

Kane, J.

      Plaintiffs' reinstatement theory shall provide the content for the next chapter in this now two plus decades old saga.  Specifically, Plaintiffs shall open remand proceedings by briefing the following two bedrock reinstatement issues: 1) Does the existing jury verdict in this case support entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction?; and 2) May a plaintiff who brings a Prince-Anderson Act claim simultaneously pursue a freestanding state-law claim based on the same facts?

      Plaintiffs' opening brief shall be due on or before December 12, 2012.  Defendants' answer brief shall be due 60 days from the filing of Plaintiffs' opening brief.  Plaintiffs' reply brief shall be due 45 days from filing of Defendants' response brief.

      The remaining issues (class re-certification, preemption, etc.) shall be treated if and as appropriate in light of my resolution concerning the reinstatement theory.

Dated this 16th day of October, 2012, at Denver, Colorado.

**<u>s/John L. Kane</u>**

**US SENIOR DISTRICT JUDGE**

ATTACHMENT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, *et al*.,

Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION AND THE DOW CHEMICAL
COMPANY,

Defendants.

ORDER REGARDING BRIEFING at ECF. DOCS. 2344, 2345, & 2350

Kane, J.

## A. Introduction

After holding a Status Conference to determine the contours of remand, I directed

the parties to brief the following two issues: "1) May a plaintiff who brings a Price-

Anderson Act claim simultaneously pursue a freestanding state-law claim based on the

same facts?"; and "2) Does the existing jury verdict in this case support entry of this

Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity

jurisdiction?"

The answer to the first question is "no" and consequently I do not reach the second

question.  I arrive at my conclusion with reluctance and sympathy for Plaintiffs.  I remain

convinced that the Colorado jurors in this case correctly found Plaintiffs to have suffered

a nuisance under Colorado state-law based on the nuclear contamination for which

Defendants are responsible, but I have come to terms with the fact that the law, which I

am bound to uphold, does not permit independent Colorado state-law claims based on alleged radiation injury.[1]

Simply put, the Price-Anderson Act ("PAA" or "Act") preempts state-law tort claims arising from atomic energy production and establishes an exclusive federal remedial scheme for such claims. Accordingly, a plaintiff who brings a PAA claim may not pursue a freestanding state-law claim based on the same facts. The Tenth Circuit's conclusion that Plaintiffs' proof was insufficient to satisfy the PAA's injury requirement does not mean that Plaintiffs are now free to pursue, outside the PAA, the same claims

---

[1] The Tenth Circuit did not find that a nuisance was established under state-law.  Rejecting Restatement (Second) of Torts § 821F cmt. f (1965), it held that  "[t]he Colorado Supreme Court would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is 'substantial' and 'unreasonable' unless that anxiety is supported by some scientific evidence."  *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1132 (10th Cir. 2010*).* "To the extent Plaintiffs rely on anxiety from an increased risk to their health as an interference with the use and enjoyment of their properties, that anxiety must arise from scientifically verifiable evidence regarding the risk and cannot be wholly irrational."  *Id.*  Why I nonetheless think the jurors properly found a nuisance, however, is because there *was* evidence scientifically verifying an increased health risk, and I believe that evidence informed the jurors' decision to find the claimed anxiety an unreasonable and substantial harm.  The problem is that the Tenth Circuit Opinion requires more than that the risk be scientifically *verified*; it also requires that the risk be *quantified*:

> Plaintiffs' experts merely testified that *any* exposure to plutonium whatsoever increases the risk of health problems to some degree. Without an accompanying estimate or calculation of the increased risk, however, this evidence is insufficient to establish a loss of use under 42 U.S.C. § 2014(q). Plaintiffs must instead prove that the *particular level of risk* created by Defendants' conduct had the effect of actually depriving them of a specific use.

*Id.* at 1142 (first emphasis in the original; second emphasis added).  I disagree and would not penalize Plaintiffs for the fact that nuclear science is not yet advanced enough to assign a specific numeric value to an increased health risk.  I would not impose an arbitrary bright-line "particular level of risk" standard for anxiety-based nuisance recovery, and I especially would not announce that there was to be a particular level of risk standard and then not specify what that level is. Plaintiffs' experts, whose testimony was not challenged by Defendants on appeal, testified that, if inhaled, even one atom of plutonium could cause cancer.  Tr. 3639 (Goble); 5743-44 (Wing).  Indeed, recognizing that plutonium can be extremely dangerous, even in tiny quantities, the federal government has never promulgated any rules relating to purported "permissible" amounts of plutonium in soil.  Tr. 7549-50, 7590, 7644 (Defendants' expert, Frazier).  For dozens of other similar facts about the dangerousness of plutonium, facts that were testified to by both Plaintiffs' *and* Defendants' experts, I refer to ECF Doc. 2344, Ex. 1.  These facts are sufficient scientific verification for general acceptance in the scientific community and clearly enough to make anxiety about exposure to plutonium contamination both predictable and reasonable.

based on the same alleged radioactive releases. A failed PAA claim based on an alleged nuclear incident is simply a failed claim, not a state-law claim in waiting.

## B.  Statutory Background

From its inception, nuclear power has been subject to a comprehensive federal regulatory framework. The first piece of the framework was laid when Congress passed the Atomic Energy Act of 1946, Act of Aug. 1, 1946, ch. 724, 60 Stat. 755, which established a federal monopoly over the development of nuclear power. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 63 (1978) ("When Congress passed the Atomic Energy Act of 1946, it contemplated that the development of nuclear power would be a government monopoly.").  About a decade later Congress permitted private sector involvement with passage of the Atomic Energy Act of 1954, Act of Aug. 30, 1954, ch. 1073, 68 Stat. 919 (the "1954 Act").

The 1954 Act provided for "licensing of private construction, ownership, and operation of commercial nuclear power reactors for energy production," *id.*, and "grew out of Congress' determination that the national interest would be best served if the Government encouraged the private sector to become involved in the development of atomic energy for peaceful purposes under a program of federal regulation and licensing." *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 207 (1983) (citing *H.R.Rep. No. 2181*, 83d Cong., 2d Sess., 1–11 (1954)).  Despite the 1954 Act authorizing private nuclear energy participation, private utilities were reluctant to enter the field, primarily because of "the risk of potentially vast liability in the event of a nuclear accident." *See Duke Power,* 438 U.S. at 64 (discussing

that enormous potential liability is associated with nuclear accidents.) To address that concern, Congress enacted the Price–Anderson Act of 1957("PAA" or "Act") "to protect the public and to encourage the development of the atomic energy industry." Pub. L. No. 85–256, § 1, 71 Stat. 576 (1957).

The Act restricted the civil liability of nuclear plant operators and provided federal subvention to help pay damages caused by nuclear accidents. *Id*. The PAA has been amended three times, most notably in 1988. The 1988 Amendments created federal jurisdiction for public liability actions arising from nuclear incidents. 42 U.S.C. § 2014(hh). A "public liability action" is defined as "any suit asserting public liability" based upon alleged exposure to "source, special nuclear, or byproduct material." 42 U.S.C. § 2014(hh), (q). "Public liability" is defined, in part, as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation ..." 42 U.S.C. § 2014(w).

A "nuclear incident" is "any occurrence, ... within the United States causing, within or without the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, ... arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material ...." 42 U.S.C. § 2014(q). Section 2014(hh) provides that "the substantive rules for decision of [a public liability] action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of section [2210]." 42 U.S.C. § 2014(hh).

### C.  A "Public Liability Action" Under The PAA Is The Exclusive Cause Of Action For Harm Allegedly Caused By Radioactive Releases From Rocky Flats.

Defendants argue that Plaintiffs may not pursue a freestanding Colorado state-law claim based on harm allegedly caused by radioactive releases from Rocky Flats because the PAA completely preempts any such state-law claim.[2]  Plaintiffs make two primary objections to this position, asserting first that Defendants have waived the argument and second that finding the PAA to preempt state-law tort claims would violate due process. I reject both arguments.

The PAA itself does not explicitly address the issue of claim preemption.  But every federal circuit, including the Tenth Circuit, to consider whether the PAA preempts state causes of action for public liability arising out of or resulting from nuclear incidents has concluded that it has.  For example, in *Nieman v. NLO*, 108 F.3d 1546, 1547 (6th Cir.1997), the plaintiff asserted various state-law claims based on allegations that a discharge of uranium from a nuclear processing facility in Fernald, Ohio had damaged his property. The Sixth Circuit affirmed the district court's dismissal of plaintiff's state-law

---

[2] Although the Tenth Circuit recognizes four distinct types of preemption doctrines, *see Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012), Defendants focus their energies on the application of so-called "complete" preemption.  Because I ultimately conclude that complete preemption does apply, I refrain from passing comment on the parties' remarks surrounding conflict preemption.  For purposes of answering the question presented, the definitive query is whether state-law claims are preempted; once preemption is found to apply, the type of preemption applicable does no further work upon the answer. I also note that while it is the Tenth Circuit's practice to distinguish "field" preemption from "complete" preemption, *see id.*, at least one circuit court has suggested that the doctrines of field preemption and complete preemption are coterminous. *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 864 n. 4 (11th Cir. 2008) (noting that "complete preemption" is "also called 'field preemption' "). Similarly, secondary sources often treat the terms as substitutes. *See, e.g.*, 15 Moore's Federal Practice § 103.45[2] ("[I]n complete preemption cases, federal law *so occupies the field* that any complaint alleging facts that come within the statute's scope necessarily 'arise under' federal law, even if the plaintiff pleads a state law claim only." (Emphasis added)).  This memorandum adopts the Tenth Circuit's distinction of the terms for its own prose, but occasionally will make use of case law citations that refer to "field" preemption.  Unless otherwise specified, "field" preemption in a citation refers to what the Tenth Circuit considers "complete" preemption.

trespass action, noting that the PAA had not merely created a new federal cause of action, *i.e.* a public liability action, but that "a new federal cause of action supplants the prior state cause of action." *Id*. at 1549 (quoting *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1100 (7th Cir.), *cert. denied*, 512 U.S. 1222 (1994)). "[t]he state law claims *cannot stand as separate causes of action*. Nieman can sue under the Price–Anderson Act, as amended, or not at all." *Id*. at 1553 (emphasis added). The Tenth Circuit similarly used bold language in *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir.1997) to describe the preemptive effects of the PAA, calling the Act's provisions "sweeping" and stating that the 1988 Amendments "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production."

The Ninth, Eleventh, Seventh, and Third Circuits agree. *See In re Berg Litig*., 293 F.3d 1127, 1132 (9th Cir.2002) (public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir.1998) ("Congress passed the Price–Anderson Amendments Act of 1988 ... creating an exclusive federal cause of action for radiation injury."); *O'Conner*, 13 F.3d at 1100, 1105 ("a new federal cause of action supplants the prior state cause of action.... [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3d Cir.1991) (TMI II ) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or it *is not compensable at all*.") (emphasis in original).

Most defeatingly for Plaintiffs' position, the Supreme Court has also held that the PAA preempts state causes of action for public liability arising out of or resulting from nuclear incidents. In *El Paso Natural Gas Co. v. Neztsosie*, the Supreme Court explained that the exclusive remedial structure of the PAA was one:

> in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act, resembles what we have spoken of as complete pre-emption doctrine, under which the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.

*Neztsosie*, 526 U.S. at 484 n.6 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987))(internal quotation marks and citation omitted). I interpret the Supreme Court's choosing to describe the PAA's structure as "resembling" complete preemption (as opposed to "presenting" or some other word more directly expressing that the PAA is an example of the complete preemption doctrine) as simply an acknowledgment that the complete preemption of the PAA is unique for applying substantive state-law rules of decision where they are not in conflict with the PAA. The typical complete preemption framework applies only federal law. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 1 (2003)(explaining that complete preemption exists under the Labor Management Relations Act, 1947 and the Employee Retirement Income Security Act of 1974 and that these statutes provide the "exclusive cause[s] of action" and set forth the procedures and remedies for the claims). In other words, in my view, *Neztsosie* stands for the proposition that the PAA completely preempts state-law in terms of the vehicle for bringing a claim, but does not necessarily preempt state substantive law in terms of the rules of decision.

7

The weight of authority is so great and crystalline on this matter that Plaintiffs voice no disagreement that the PAA preempts tort claims arising from nuclear incidents. Instead, they argue their facts do not concern a "nuclear incident" and therefore that the PAA does not apply at all.[3]  I am not persuaded.  First, Plaintiffs' argument ignores their own allegations.  Plaintiffs' operative complaint includes allegations that their lawsuit is a public liability action arising from a nuclear incident.  Second Amended Complaint ¶¶ 1, 3, 5, 96.  Second, Plaintiffs already made this argument to the Tenth Circuit, contending, as they do here, that they "also assert[] diversity jurisdiction," and, therefore, "[i]f plaintiffs' trespass and nuisance claims do not arise out of a nuclear incident, they must be independent state law tort claims" pursuable 28 U.S.C. § 1332. Pls.' Supp. 10th Cir. Br. at 10. The Tenth Circuit implicitly rejected this argument, never once hinting that the claims could stand as independent state-law claims and instead giving this clear instruction: "On remand, Plaintiffs will be tasked with producing additional evidence that could support a jury's finding that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under 42 U.S.C. § 2014(q)."  *Cook*, 618 F.3d at 1142.

As a district court judge, I am "bound to carry the mandate of the upper court into execution" and may "not consider the questions which the mandate laid at rest." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) (citations omitted).  I simply not pass upon any issue that was "expressly *or impliedly*" disposed of on appeal.  *Procter &*

---

[3] Despite this premise serving as the building block of Plaintiffs' argument, Plaintiffs do not cite any authority holding that a plaintiff simultaneously may pursue a PAA claim and a state-law claim based on the same facts.

*Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003)(emphasis added).  Because

the Tenth Circuit expressly directed Plaintiffs to present evidence of a nuclear incident

and did not authorize their proposed alternative method of pursuing their claims as

independent state-law tort claims under 28 U.S.C. § 1332, I may not here endorse their

renewed pursuit of independent state-law tort claims.

In any event, I agree that allowing Plaintiffs simultaneously to litigate a

freestanding state-law claim based on the same facts as their PAA claim would

undermine the liability-limiting purpose of the PAA. *See, e.g., Cook*, 618 F.3d at 1145

n.20 (noting that "the state-law 'interference with use' [nuisance] standard presents a

lower threshold than the PAA's 'loss of use' standard"); *id*. at 1140 (noting that one

purpose of the PAA amendments was "to limit recovery to the discrete group of injuries

enumerated in § 2014(q)").  Through the PAA, Congress struck a balance between

compensating the victims of nuclear incidents and fostering the development of nuclear

energy and technology. That balance is explicit in the PAA itself, where Congress found

that "[t]he development, utilization, and control of atomic energy for military and for all

other purposes are vital to the common defense and security," and that the PAA was

necessary "[1] to protect the public and [2] to encourage the development of the atomic

energy industry." 42 U.S.C. § 2012(a) & (i). *See also Duke Power*, 438 U.S. at 64

(quoting § 2012(i) in noting the "dual purpose" of the PAA).  The PAA's twin goals

express the intention that nuclear operators should not face the risk of crippling liability

without any of the protections of the PAA with regard to plaintiffs who claim injuries

stemming from the hazardous properties of special nuclear material but allege those injuries as state-law claims instead of as PAA claims.

The Ninth Circuit in *In re Hanford* rejected an argument similar to the one Plaintiffs advance here. It held that, even though claims for medical monitoring were not compensable under the PAA absent a present bodily injury, plaintiffs who claimed only increased risk from an alleged nuclear incident could not pursue medical monitoring claims in state court under a state-law theory:

> The PAA is the exclusive means of compensating victims for any and all claims arising out of nuclear incidents. *Berg*, 293 F.3d at 1132; *In re TMI Litig.*, 940 F.2d at 854; *see also* 42 U.S.C. § 2014(hh), (w) (federal courts have jurisdiction over public liability actions, defined as "*any* suit asserting . . . *any* legal liability arising out of or resulting from a nuclear accident") (emphasis added). This result is consistent with Congress's explicit intent in enacting the 1988 Amendments and avoiding piecemeal litigation arising from nuclear incidents. We therefore affirm the district court's exercise of jurisdiction over Plaintiffs' medical monitoring claims and its conclusion pursuant to our decision in *Berg* that they were not compensable under the Act. The district court properly denied Plaintiffs' request for a remand to state court.

*In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008).

That same reasoning applies in this case. Plaintiffs have alleged a nuclear incident and the PAA is their exclusive remedy. Plaintiffs may or may not be able ultimately to prove that they are among the persons who suffered bodily injury, property damage or loss of use of property as a result of plutonium releases from Rocky Flats. If they cannot prove one or more of these, however, it means they cannot meet their burden of proving that they have suffered a form of damage compensable under the PAA, not that their claim arises outside of the PAA. A failed PAA claim is a failed claim *in toto*; the failure

of proof does not transform a PAA claim into a state-law claim that may be pursued independent of the PAA.

### 1.   Defendants Have Not Waived a Complete Preemption Argument

Plaintiffs assert Defendants "[n]ever raised a complete preemption argument," and thus have waived it. Pls.' Br. at 18.  This is incorrect.  The record shows that Defendants argued on appeal that "[t]he 1988 PAA amendments completely federalized this area of the law by making a 'public liability action' under the PAA, 42 U.S.C. § 2014(w), 'the *exclusive* means of compensating victims for any and all claims arising out of nuclear incidents.'" Defs.' 10th Cir. Br. at 25 (quoting *Hanford*, 534 F.3d at 1009).

Plaintiffs next push for waiver by selectively quoting the Tenth Circuit as stating that this action "does not involve complete preemption of state tort law," *Cook IX*, 273 F. Supp.2d at 1192 n. 12.  Similarly, Plaintiffs quote the Tenth Circuit as "agree[ing] with the district court that § 2014(hh) does not expressly preempt state law," Pls.' Br. at 18 (quoting *Cook*, 618 F.3d at 1143).  These quotations come, however, from sections in which the Tenth Circuit dealt only with the issue of whether "federal nuclear safety standards . . . preempt state tort standards of care under the PAA," *Cook*, 618 F.3d at 1142, not whether the PAA provides the exclusive remedy for claims arising, as alleged here, from a nuclear incident and asserting public liability. The argument premised on these quotes is irrelevant and confuses the question I posed—whether the PAA permits or preempts freestanding state-law claims based on the same facts as the PAA claim—with the entirely different question of whether PAA § 2014(hh) preempts state tort law standards of care. The fact that PAA § 2014(hh) does not expressly preempt state tort

law—and in fact uses state-law as the substantive rules for decision in PAA cases—is not germane to the question of whether the PAA preempts freestanding state-law claims based on the same facts as the PAA claim.

Plaintiffs similarly miss the mark in arguing that "[t]he Court of Appeals expressly noted that Defendants did not advance a field preemption argument on appeal," Pls.' Br. at 18 (citing *Cook*, 618 F.3d at 1143 n.16, 1144 n.19).  They are again confusing two distinct preemption issues. In the footnotes Plaintiffs cite, the Tenth Circuit was again referring to preemption of state tort law duty of care by federal safety standards, whereas the question here is whether the PAA completely preempts state claims arising out of nuclear incidents.  I hold that waiver is no bar to Defendants complete preemption argument.

## 2.   The PAA's Exclusive Remedial Scheme Does Not Violate Due Process

Plaintiffs argue in their Opening Brief that the PAA violates their right of due process to the extent it does not allow them to recover based on a scientifically unfounded risk of harm. To begin, "it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power* at 88.  Even if it *were* clear, the law has never suggested that an *identical* substitute remedy be afforded.  What is required is a "reasonable" substitute remedy, and the Supreme Court has straightforwardly opined that the PAA "provide[s] a reasonably just substitute for the common-law or state tort law

Appellate Case: 14-1112   Document: 01019262216   Date Filed: 06/10/2014   Page: 96

remedies it replaces." *Id.* I find no merit in Plaintiffs' due process arguments against preemption and note that Plaintiffs do not renew this line of argument in their Reply.

### D.  Conclusion

For the reasons stated above, Plaintiffs may not litigate this case outside the PAA. Parties shall prepare a Joint Status Report discussing the most effective way to proceed that is consistent with this Order and the Tenth Circuit's mandate. The Joint Status Report is due on or before February 25, 2014.[4]

DATED:          January 28, 2014

BY THE COURT:

*s/John L. Kane*
John L. Kane, U.S. Senior District Judge

---

[4] Because of the extraordinary length of this litigation, I suggest that both parties give serious consideration to requesting a F.Civ.P. Rule 54 (b) certification of this Order.

# ATTACHMENT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

    Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

    Defendants.

## ORDER APPROVING STIPULATED DISMISSAL WITH PREJUDICE AND ENTRY OF FINAL JUDGMENT

Kane, J.

    To advance the resolution of this long-running litigation, Plaintiffs and Defendants,

through their counsel, agree and stipulate as follows:

### **Recitals**

A.      The Tenth Circuit reversed the judgment in this case and remanded to me for "further

proceedings not inconsistent with this opinion." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127,

1133, 1153 (10th Cir. 2010), *cert. denied*, No. 10-1377, 2012 WL 2368857 (U.S. June 25, 2012)

(the "Tenth Circuit Decision").

B.      On remand, the parties disagreed about the nature and scope of further proceedings.

Plaintiffs proposed that I reinstate the jury verdict, recertify the class, and enter judgment on

their nuisance claim under Colorado law. Defendants opposed that proposal on the ground,

among others, that the PAA preempts state-law claims arising from a nuclear incident and, as a

result, a plaintiff who brings a PAA claim may not pursue a state-law claim based on the same

facts.

C.      On January 28, 2014, following briefing by the parties, I issued an Order (ECF No. 2351) (the "January 28 Order") ruling, among other things, that a plaintiff who brings a PAA claim may not simultaneously pursue a state-law claim based on the same facts and, as a result, "Plaintiffs may not litigate this case outside the PAA." (*Id*. at 13). In light of that ruling, I declined to address Plaintiffs' proposal to reinstate the jury verdict, re-certify the class, and enter judgment on Plaintiffs' nuisance claim under Colorado law.

D.      In that same Order, I suggested that, "[b]ecause of the extraordinary length of this litigation" the parties "give serious consideration" to an appeal from the Order. (*Id*. at 13, n. 4).

E.      Plaintiffs disagree with the January 28 Order and have indicated they expect to appeal it.

F.      Defendants oppose any appeal from the January 28 Order unless such appeal would potentially lead to final resolution of this action.

G.      To enable Plaintiffs to pursue their appeal from the  January 28 Order and to address Defendants' concern that such an appeal is inappropriate unless it could potentially lead to final resolution of this action, the parties stipulate as follows:

### Stipulation

1.      In light of the Tenth Circuit Decision, Plaintiffs will not pursue any claims under the PAA unless the Tenth Circuit Decision is overturned or modified.

2.      Accordingly, my ruling on remand that "Plaintiffs may not litigate this case outside the PAA," (January 28, 2014 Order at 13), means that Plaintiffs have no further claims to litigate in the district court unless that ruling is overturned on appeal or unless the Tenth Circuit Decision is overturned or modified.

3.      So that Plaintiffs may immediately appeal from the January 28 Order, the parties stipulate to the dismissal of this action with prejudice and the entry of judgment in favor of

Appellate Case: 14-1112     Document: 01019262216     Date Filed: 06/10/2014     Page: 100

Defendants. Each side is to bear its own costs.

4.      The parties agree that the judgment entered pursuant to their Stipulated Order constitutes

a final appealable order.

5.      The parties agree that nothing in this Stipulation waives Plaintiffs' right to appeal the

January 28, 2014 Order.

6.      The parties agree that nothing in this Stipulation affects or waives Plaintiffs' right

to seek relief under Fed. R. Civ. P. 59 to modify or clarify the January 28 Order.

Accordingly, this action is DISMISSED WITH PREJUDICE, each side to bear its own

costs, and final judgment in favor of Defendants is entered.


DATED:        February 27, 2014                    BY THE COURT:

                                                   **_s/John L. Kane_**
                                                   John L. Kane, U.S. Senior District Judge

ATTACHMENT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

      Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION
and THE DOW CHEMICAL COMPANY,

      Defendants.

---

## ORDER REGARDING CLARIFICATION

Kane, J.

      The Order Regarding Briefing, ECF No. 2351, is hereby modified in the following manner:

    (a) Page 12, line 13: Insert a period at the end of the line following the word "process," strike the remainder of the sentence, and insert the following citation: (Pl. Opening Br., Doc. 2344, at 29-32).

    (b) Page 13, line 2: insert a period after the word "preemption" and strike the remainder of the sentence.


As modified, the Order reads as follows:

    (a) Page 12, line 13: Plaintiffs argue in their Opening Brief that the PAA violates their right of due process. Pls.' Br. at 29-32.

    (b) Page 13, line 2: I find no merit in Plaintiffs' due process arguments against preemption.

DATED:      February 27, 2014      BY THE COURT:

          ***s/John L. Kane***
          John L. Kane, U.S. Senior District Judge

# ATTACHMENT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 90-cv-00181-JLK

MERILYN COOK, et al.,

     Plaintiffs,

v.

ROCKWELL INTERNATIONAL CORPORATION and
THE DOW CHEMICAL COMPANY,

     Defendants.

---

## JUDGMENT

---

On February 27, 2014, Judge Kane issued an Order APPROVING the parties' Stipulation for Dismissal and directing the Entry of Judgment (Doc. 2356). Accordingly, Judgment is hereby entered in favor of Defendants and against Plaintiffs as follows:

1.    In light of the Tenth Circuit Decision on appeal from the jury's verdict in this case, Plaintiffs will not pursue any claims under the PAA unless the Tenth Circuit Decision is overturned or modified.

2.    Accordingly, the Court's ruling on remand that "Plaintiffs may not litigate this case outside the PAA," (January 28, 2014 Order at 13), means that Plaintiffs have no further claims to litigate in the district court unless that ruling is overturned on appeal or unless the Tenth Circuit Decision is overturned or modified.

3.    So that Plaintiffs may immediately appeal from the January 28 Order, this action is DISMISSED with prejudice. Each side is to bear its own costs.

Dated at Denver, Colorado this  27th  day of February, 2014.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK


By: s/ Edward P. Butler
Edward P. Butler, Deputy Clerk