No. 14-1112

# United States Court of Appeals
# for the Tenth Circuit

MERILYN COOK; WILLIAM SCHIERKOLK, JR.; DELORES SCHIERKOLK;
RICHARD BARTLETT; LORREN BABB; GERTRUDE BABB; AND
SALLY BARTLETT,

*Plaintiffs-Appellants,*

MICHAEL DEAN RICE, BANK WESTERN, THOMAS L. DEIMER, RHONDA J.
DEIMER, STEPHEN SANDOVAL, AND PEGGY J. SANDOVAL,

*Plaintiffs,*

v.

ROCKWELL INTERNATIONAL CORPORATION AND
THE DOW CHEMICAL COMPANY,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Colorado (Kane, J.)
Case No. 1:90-cv-00181-JLK

## BRIEF OF DEFENDANTS-APPELLEES

Kevin T. Van Wart, P.C.
Bradley H. Weidenhammer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL   60654
(312) 862-2000

Christopher Landau, P.C.
Rebecca Taibleson
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
(202) 879-5000

*Counsel for Defendants-Appellees*

July 14, 2014

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, I hereby certify as follows:

1.    Defendant-appellee Rockwell International Corporation merged with Boeing NA, Inc., was renamed Boeing North American, Inc., and then merged into The Boeing Company ("Boeing").  Boeing has no parent corporation.  State Street Bank and Trust Company owns 10% or more of Boeing's stock and is a wholly owned subsidiary of State Street Corporation, a publicly traded company.

2.    Defendant-appellee The Dow Chemical Company has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

/s/ Christopher Landau___
Christopher Landau, P.C.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC   20005
(202) 879-5000
clandau@kirkland.com

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED APPEALS ...............................................viii

INTRODUCTION .................................................................. 1

STATEMENT OF JURISDICTION........................................... 3

STATEMENT OF THE ISSUES................................................. 5

STATEMENT OF THE CASE AND THE FACTS.................................. 5

    A.    The Price Anderson Act ............................................. 5

    B.    Factual Background................................................ 7

    C.    Prior Proceedings ................................................. 9

        1.    Plaintiffs Try Their Plutonium Contamination Claims............................................................ 9

            (a)    Pretrial Rulings ................................... 10

            (b)    The Trial On Plaintiffs' PAA Claims ................. 12

        2.    This Court Reverses And Remands. ........................... 13

        3.    The Supreme Court Denies Certiorari........................ 19

        4.    On Remand, Plaintiffs Propose To "Reinstate" The Verdict That This Court Reversed........................ 20

SUMMARY OF ARGUMENT .................................................. 24

STANDARD OF REVIEW....................................................... 26

ARGUMENT .................................................................. 26

I.    A Plaintiff Who Brings A PAA Claim Cannot Simultaneously Pursue A Freestanding State-Law Claim Based On The Same Facts........................................................... 26

A.    A "Public Liability" Action Under The PAA Is The Exclusive Cause Of Action For Harm Caused By An Alleged Nuclear Incident. .......................................................27

B.    Plaintiffs Asserted And Litigated A Public Liability Action Under The PAA Based On The Same Facts As Their Ostensible State-Law Claims. .....................................35

C.    The PAA's Preemption Scheme Is Constitutional. ...............40

II.   In Any Event, The Verdict That This Court Set Aside Does Not Support The Entry Of Judgment On A Freestanding State-Law Nuisance Claim. ...........................................................44

CONCLUSION ........................................................................................50

CERTIFICATE OF TYPE-VOLUME COMPLIANCE ...........................52

CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE ..............53

CERTIFICATE OF SERVICE..................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Boyle v. United Tech. Corp.*,
   487 U.S. 500 (1988) ........................................................... 42

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987) ........................................................... 30

*Community State Bank v. Strong*,
   651 F.3d 1241 (11th Cir. 2011) ....................................... 33

*Concrete Pipe & Prods. of Cal., Inc. v.*
   *Construction Laborers Pension Trust for S. Cal.*,
   508 U.S. 602 (1993) ........................................................... 42

*Connolly v. PBGC*,
   475 U.S. 211 (1986) ........................................................... 42

*Cook v. Rockwell Int'l Corp.*,
   132 S. Ct. 82 (2011) .......................................................... 19

*Cook v. Rockwell Int'l Corp.*,
   133 S. Ct. 22 (2012) .................................................. viii, 20

*Cook v. Rockwell Int'l Corp.*,
   151 F.R.D. 378 (D. Colo. 1993) *(Cook IV)* ...................... 10

*Cook v. Rockwell Int'l Corp.*,
   181 F.R.D. 473 (D. Colo. 1998) *(Cook VIII)* ................... 10

*Cook v. Rockwell Int'l Corp.*,
   273 F. Supp. 2d 1175 (D. Colo. 2003) *(Cook IX)* ...... 11, 37

*Cook v. Rockwell Int'l Corp.*,
   618 F.3d 1127 (10th Cir. 2010) .... viii, 3, 13-18, 20, 24, 45-46, 48-49

*Corcoran v. New York Power Auth.*,
   202 F.3d 530 (2d Cir. 1999)............................................. 30

iv

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
  639 F.3d 186 (5th Cir. 2011) ..............................................30, 31, 39

*Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*,
  693 F.3d 1195 (10th Cir. 2012) ...............................................33, 35

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
  438 U.S. 59 (1978) ................................................5, 6, 31, 33, 41, 42

*Dumontier v. Schlumberger Tech. Corp.*,
  543 F.3d 567 (9th Cir. 2008) ..............................................30, 31, 39

*El Paso Natural Gas Co. v. Neztsosie*,
  526 U.S. 473 (1999) ........................22, 28, 29, 30, 33, 34, 35, 40, 42

*English v. Gen. Elec. Co.*,
  496 U.S. 72 (1990) ........................................................................27

*Good Fund Ltd.-1972 v. Church*,
  540 F. Supp. 519 (D. Colo. 1982),
  *rev'd sub nom. McKay v. United States*,
  703 F.2d 464 (10th Cir. 1983) ............................................................8

*Ileto v. Glock*,
  565 F.3d 1126 (9th Cir. 2009) ....................................................41, 42

*In re Berg Litig.*,
  293 F.3d 1127 (9th Cir. 2002) ....................................................21, 30

*In re Hanford Nuclear Reservation Litig.*,
  534 F.3d 986 (9th Cir. 2008) ........................................30, 31, 33, 39

*In re TMI Litig. Cases Consol. II*,
  940 F.2d 832 (3d Cir. 1991)......................................................22, 30

*Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.*,
  990 F.2d 513 (9th Cir. 1993 ............................................................42

*Lujan v. Regents of Univ. of Cal.*,
  69 F.3d 1511 (10th Cir. 1995) ........................................................31

*Martin v. Franklin Capital Corp.*,
   251 F.3d 1284 (10th Cir. 2001) ....................................................... 4, 5

*Miami Tribe of Okla. v. United States*,
   656 F.3d 1129 (10th Cir. 2011) ...................................................... 4, 5

*Mutual Pharm. Co. v. Bartlett*,
   133 S. Ct. 2466 (2013) ...................................................................... 42

*Nieman v. NLO, Inc.*,
   108 F.3d 1546 (6th Cir. 1997) ................................................... 22, 30

*Norfolk So. Ry. Co. v. Shanklin*,
   529 U.S. 344 (2000) .......................................................................... 42

*O'Conner v. Commonwealth Edison Co.*,
   13 F.3d 1090 (7th Cir. 1994) ............................................... 22, 30, 31

*PG&E Co. v. State Energy Res. Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983) .......................................................................... 27

*Procter & Gamble Co. v. Haugen*,
   317 F.3d 1121 (10th Cir. 2003) ................................................. 49, 50

*PruneYard Shopping Center v. Robins*,
   447 U.S. 74 (1980) ............................................................................ 40

*Silkwood v. Kerr-McGee Corp.*,
   464 U.S. 238 (1984) .......................................................................... 27

*Steinbach v. Dillon Cos.*,
   253 F.3d 538 (10th Cir. 2001) ......................................................... 26

*Tolton v. American Biodyne, Inc.*,
   48 F.3d 937 (6th Cir. 1995) ............................................................. 42

*Wheeler v. John Deere Co.*,
   935 F.2d 1090 (10th Cir. 1991) ....................................................... 48

**Statutes and Rules**

28 U.S.C. § 1291 ................................................................................. 3

28 U.S.C. § 1331................................................................3

42 U.S.C. § 2012(a) ........................................................31

42 U.S.C. § 2012(i) .........................................................31

42 U.S.C. § 2014(aa) ..................................................6, 28

42 U.S.C. § 2014(hh)................................7, 14, 28, 29, 32, 34, 35, 38, 39

42 U.S.C. § 2014(q) .............................6, 14, 15, 18, 28, 33, 36

42 U.S.C. § 2014(w) ...............................7, 14, 28, 33, 39

42 U.S.C. § 2210.........................................................11, 28, 37

42 U.S.C. § 2210(n)(1)................................................6

42 U.S.C. § 2210(n)(2)..........................................29, 37

Fed. R. App. P. 4(a)(1)(A) .............................................4

## Other Authorities

Black's Law Dictionary (6th ed. 1990).....................................48

*Restatement (Second) of Torts* (1979)................................11, 16

## STATEMENT OF RELATED APPEALS

There is one prior appeal in this case.  *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010), *cert. denied*, 133 S. Ct. 22 (2012).

## INTRODUCTION

This is the second time this case has been before this Court. When it was last here, this Court corrected multiple legal errors on which plaintiffs' judgment rested and clarified the scope of the federal Price-Anderson Act (PAA or Act) and its relationship to Colorado tort law. As the Court explained, the PAA creates a federal cause of action to redress injury from an alleged "nuclear incident," and that cause of action in turn generally derives its substantive rules of decision from state law. Because the district court misinterpreted the law and improperly instructed the jury, this Court reversed class certification, set aside the verdict, remanded the case, and directed the district court to vacate the judgment. The Court stated that, on remand, "Plaintiffs will be tasked with producing additional evidence that could support a jury's finding that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under [the PAA]."

Plaintiffs did not follow those instructions. Rather than attempt to satisfy the PAA's legal standards as articulated by this Court, they sought to circumvent them. They proposed, instead, that the district court re-certify the decertified class and "reinstate" the reversed

judgment as a freestanding nuisance claim under Colorado law.  The district court correctly rejected that proposal, concluding that a plaintiff who pursues a federal action under the PAA may not simultaneously pursue a freestanding state-law claim based on the same facts.  As the district court explained, the PAA establishes an exclusive federal remedial scheme that completely preempts state-law claims arising from an alleged nuclear incident.  Thus, this Court's holding that plaintiffs failed to satisfy the PAA did not mean that they were free to pursue state-law claims outside the PAA based on the same facts.  A failed PAA claim based on an alleged nuclear incident is simply a failed claim, not a state-law claim in waiting.

Having concluded that plaintiffs could not simultaneously pursue their PAA claim as a state-law claim outside the PAA, the district court did not reach plaintiffs' contention that this Court's prior decision in this case left undisturbed a freestanding nuisance verdict in plaintiffs' favor under Colorado law.  That contention is incorrect and provides a separate and independent ground for rejecting plaintiffs' "reinstatement" theory.  This Court did not, *sub silentio*, affirm a hypothetical freestanding jury verdict on a hypothetical freestanding

state-law nuisance claim.  To the contrary, this Court expressly rejected the interpretation of Colorado nuisance law that had governed the trial, set aside the verdict, reversed and remanded the case, and directed the district court to vacate the entire judgment.  In light of that disposition, there is no jury verdict in plaintiffs' favor to be "reinstated."  This Court's decision left the parties in the same position as if the case had never been tried.

The district court correctly declined plaintiffs' invitation to flout this Court's mandate by "reinstating" a reversed jury verdict on a non-existent freestanding state-law claim.  This Court should affirm the judgment.

## STATEMENT OF JURISDICTION

As this Court previously held, the district court had subject-matter jurisdiction over this case under the general federal-question statute, 28 U.S.C. § 1331.  *See Cook*, 618 F.3d at 1137.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.  The district court entered a final judgment in defendants' favor on February 27, 2014, disposing of all claims between the parties.  *See* 2/27/14 Judgment, App. 1272.  Plaintiffs timely appealed the judgment

to this Court on March 25, 2014.  *See* Fed. R. App. P. 4(a)(1)(A); 3/25/14 Notice of Appeal, App. 1273.

On April 16, 2014, this Court ordered the parties to address "whether the February 27, 2014 judgment has the adversity required for appellate jurisdiction, and whether the plaintiffs have standing to appeal."  4/16/14 Order, at 1 (citing *Miami Tribe of Okla. v. United States*, 656 F.3d 1129, 1137 (10th Cir. 2011)).  Defendants submit that this Court has jurisdiction to adjudicate, and plaintiffs have standing to pursue, this appeal to the extent it challenges the district court's January 28 order holding that plaintiffs may not simultaneously pursue a PAA claim as a freestanding state-law claim.

While plaintiffs stipulated to the dismissal of their claims with prejudice, they did so to immediately "pursue their appeal from the January 28 Order."  2/27/14 Order at 2, App. 1269; *see generally Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1280 (10th Cir. 2001) (finding appellate jurisdiction where it was clear that "as a practical matter the [plaintiffs] did not acquiesce in the judgment but rather were using dismissal to challenge the underlying ruling").  Because plaintiffs did not stipulate that the January 28 order was correct, "the appeal

4

presents a case or controversy sufficient to support jurisdiction." *Martin*, 251 F.3d at 1289. Plaintiffs have *not* "received all [they] ha[ve] sought," 4/16/14 Order at 1—they wish to "reinstate" the reversed PAA judgment as a freestanding nuisance judgment under Colorado law— and thus have standing to challenge the district court's January 28 order. *Cf. Miami Tribe*, 656 F.3d at 1137-38 (agency appealing judgment in its favor was "aggrieved" by adverse interlocutory order that constrained the exercise of its discretion).

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly concluded that a plaintiff who brings a PAA claim cannot simultaneously pursue that claim as a freestanding state-law claim based on the same facts.

2.    Whether the verdict that this Court set aside supports the entry of judgment on a freestanding state-law nuisance claim.

## STATEMENT OF THE CASE AND THE FACTS

### A.    The Price Anderson Act

From its enactment in 1957, the PAA has sought to encourage the development of nuclear energy by eliminating the threat of crippling financial liability in the event of a nuclear accident. *See, e.g., Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 64 (1978).

To that end, the Act establishes a mandatory framework for managing claims and funding liability associated with "nuclear incidents." *Id*. at 65. The PAA defines "nuclear incident" as "any occurrence ... causing ... bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q) . The PAA includes plutonium in the definition of special nuclear material. *See id*. § 2014(aa).

The Act sets an aggregate limit on the liability of nuclear power plant operators and requires the Federal Government to indemnify, up to that limit, liability above the amount of required private insurance protection. *See*, *e.g.*, *Duke Power*, 438 U.S. at 65. The Act also authorizes the Government to require licensees or contractors entering into indemnification agreements to waive traditional tort-law defenses, 42 U.S.C. § 2210(n)(1), because Congress was concerned that "state tort law dealing with liability for nuclear incidents was generally unsettled and that some way of insuring a common standard of responsibility for all jurisdictions" was desirable, *Duke Power*, 438 U.S. at 65.

In 1988, Congress amended the PAA to establish a new federal cause of action—a "public liability action."  The Act defines "public liability action" as "any suit asserting public liability," 42 U.S.C. § 2014(hh), which the Act in turn defines as "any legal liability arising out of or resulting from a nuclear incident," *id.* § 2014(w).  The amendments provided that "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of" Section 2210.  *Id.* § 2014 (hh).

## B.    Factual Background

The United States Government established the Rocky Flats facility in the early 1950s, at the height of the Cold War, to produce nuclear weapons.  *See* Trial Tr. (10/11/05), at 430-32, 480 (Pre-Trial Jury Instruction 1.1); *id.* at 494.  Rather than operate the facility itself, the Government—first the Atomic Energy Commission (AEC), and then the Department of Energy (DOE)—contracted with private companies to handle the job.  *See id.*  Defendant The Dow Chemical Company operated the facility from 1952 to 1975, and defendant Rockwell International Corporation operated it from 1975 to 1989.  *Id.*

Beginning in the late 1960s and early 1970s, a series of studies sponsored by federal and local authorities and by private groups found plutonium above background levels on certain properties near the facility. *See* Trial Tr. (10/27/05), at 3080-85 (Budnitz). These studies were widely publicized, and led to both regulation and litigation. *See, e.g.*, *Good Fund Ltd.-1972 v. Church*, 540 F. Supp. 519 (D. Colo. 1982), *rev'd sub nom. McKay v. United States*, 703 F.2d 464 (10th Cir. 1983). Virtually all of the properties at issue in this litigation were developed *after* this publicity, with the approval of state and local governments. *See, e.g.*, Exh. DX2292.

In response to a series of "whistleblower" complaints about on-site contamination, agents from the Federal Bureau of Investigation, the Department of Justice, and the Environmental Protection Agency raided the Rocky Flats facility on June 6, 1989. *See* Jury Instruction 3.22, App. 476-78; Trial Tr. (1/20/06), at 10649; Exh. P706; *see also* Trial Tr. (12/14/05), at 7925-26 (Norton). Rockwell, which operated the facility at that time, was subsequently charged with federal regulatory violations, pleaded guilty, and paid an $18.5 million fine in 1992. *See*,

8

*e.g.*, Trial Tr. (10/11/05), at 583. Those charges had nothing to do with off-site contamination. *See id.*

With the end of the Cold War, the Federal Government shut down the Rocky Flats facility in 1992. The approximately 6,500-acre plant site was extensively remediated, and is now a wildlife refuge. Following years of careful study, the federal Agency for Toxic Substances and Disease Registry issued a report in 2005 finding that "the levels of off-site surface soil contamination [around Rocky Flats] are no apparent public health hazard for past, current and future exposures." Exh. DX454 at 76; *see also id.* at 35-37.

## C.    Prior Proceedings

### 1.    Plaintiffs Try Their Plutonium Contamination Claims.

For over twenty years, plaintiffs litigated this case as a public liability action under the PAA. The named plaintiffs filed this lawsuit against Dow and Rockwell on January 30, 1990. *See* Compl., App. 194-218. The amended complaint alleged that this was a public liability action under the PAA and that the Rocky Flats facility had released large amounts of plutonium that had exposed area residents, increased their cancer risks, contaminated their properties and lowered property

values.  *See* 2d Am. Compl., App. 245-74.  The complaint detailed the alleged "nuclear incidents" that had given rise to plaintiffs' PAA claim and, tracking the language of the PAA, asserted that all of the claimed injuries "arise in whole or in part from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material which has been released or is threatened to be released into the environment from Rocky Flats."  *Id.* ¶ 96, App. 266; *see also id.* ¶¶ 1-3, 5, 20, 27-34, 53-59, App. 246-47, 249, 251-53, 257-58.  Plaintiffs sought certification of a class of property owners within a 30-square mile area.  *See id.* ¶¶ 84-95, App. 262-65.

### (a)   Pretrial Rulings

Much of the 1990s was taken up with fact discovery and summary judgment briefing.  The district court (Kane, J.) certified the proposed class in 1993, and reaffirmed that decision in 1998.  *See Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 382, 388-89 (D. Colo. 1993) *(Cook IV)* (certifying class); *see also Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 476 n.3 (D. Colo. 1998) *(Cook VIII)* (reaffirming class certification).

In July 2003, the district court issued an important ruling "clarif[ying] the scope of trial."  *Cook v. Rockwell Int'l Corp.*, 273

10

F. Supp. 2d 1175, 1179 (D. Colo. 2003) *(Cook IX)*. That opinion observed that "[n]one dispute this is a 'public liability action' arising under the Price-Anderson Act, 42 U.S.C. § 2210 ('Price-Anderson' or 'Act'), because it is an action in which Plaintiffs seek to impose liability arising out of or resulting from a 'nuclear incident.'" *Id.*

Analyzing plaintiffs' claims under the PAA, the court held that state law, not federal nuclear safety standards, provided the standard of care. *See id.* at 1179-99. With respect to the elements of plaintiffs' PAA claims provided by Colorado trespass law, the court held that plaintiffs could recover based on contamination by intangible particles at *any* level or concentration, without proving any present physical injury or damage to property. *See id.* at 1201. And with respect to the elements of plaintiffs' PAA claims provided by Colorado nuisance law, the court held that plaintiffs could recover based on an alleged increased health risk from the alleged contamination, even if that alleged increased risk was "'without scientific foundation or other support in fact.'" *Id.* at 1204 (emphasis omitted; quoting *Restatement (Second) of Torts* § 821F cmt. f (1979)).

11

### (b)    The Trial On Plaintiffs' PAA Claims

The case proceeded to a jury trial on plaintiffs' PAA claims, with the substantive rules of decision based on Colorado trespass and nuisance law.  The trial began in October 2005 and ended in January 2006.  The court instructed the jury that plaintiffs could recover on either their trespass or nuisance theory without proving any present physical injury or scientifically verified health risk to person or property.  With respect to nuisance, the court instructed the jury that plaintiffs could recover if defendants "caus[ed] Class members to be exposed to plutonium and placing them at *some increased risk* of health problems as a result of this exposure."  Jury Instruction No. 3.6, App. 449-50 (emphasis added); *see also* Jury Instruction No. 3.7, App. 451-54 ("It is enough to find … that the Class members … incurred *some increment* of increased health risk.") (emphasis added).

The jury returned a verdict on February 14, 2006.  *See* 2/14/06 Jury Verdict Form, App. 375-404.  The jury found both defendants liable under the PAA under both the nuisance and trespass theories. *See id.* at 1-13, App. 375-87.  As relief, the jury awarded the plaintiff class (1) an aggregate total of $176,850,340 in compensatory damages

12

from both defendants, (2) an aggregate total of $110,800,000 in punitive damages from defendant Dow, and (3) an aggregate total of $89,400,000 in punitive damages from defendant Rockwell. *See id.* at 15, 24, 26-27, App. 389, 398, 400-01. After awarding plaintiffs prejudgment interest dating back to 1990, the district court entered a final judgment in favor of the plaintiff class in an amount of $926,104,087. *See id.* at 1197-1200, 1216-18; Final Judgment (6/2/08) at 3-4, App. 621-22.

### 2.    This Court Reverses And Remands.

Defendants appealed, raising numerous issues including "[w]hether the district court erred by allowing plaintiffs to recover under the PAA based on Colorado nuisance law without proving any present physical injury or damage to person or property, or loss of use of property." Defs.' 10th Cir. Br. 5, Supp. App. 24. A unanimous panel of this Court reversed. *Cook*, 618 F.3d 1127.

As relevant here, the Court recognized—as has every other circuit to address the issue—that a PAA plaintiff must satisfy the substantive requirements of *both* the PAA *and* underlying state law to recover. *See id.* at 1133 n.1, 1138-42. That is so, the Court explained, because the "public liability action" created by the PAA is limited to claims arising

13

from a "nuclear incident," which in turn is defined as "'any occurrence … causing … bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.'" *Id.* at 1139 (quoting 42 U.S.C. § 2014(q), (w), (hh)).  Thus, while the Act "utiliz[es] state law to frame the 'substantive rules for decision'" for a PAA claim, Congress also "made clear its intention to limit recovery to the discrete group of injuries enumerated in § 2014(q)."  *Id.* at 1140 (quoting 42 U.S.C. § 2014(hh)).  It follows that "a plaintiff must establish an injury sufficient to constitute a nuclear incident as a threshold, substantive element of any PAA claim." *Id.*

As relevant here, this Court held that the judgment in plaintiffs' favor could not stand because they had never been required to establish the threshold federal elements of a PAA claim.  *See* 618 F.3d at 1138-1142.  In particular, they had never been required to prove that their property-damage claims involved "loss of or damage to property, or loss of use of property."  42 U.S.C. § 2014(q).  Rather, the district court had allowed them to try their claims on the theory that mere contamination

14

of their properties by even a single atom of plutonium was enough. "The statute does not indicate that the mere presence of plutonium is per se injurious to property. If mere contamination without actual damage were enough, Congress could have easily listed 'contamination' as an injury falling within 42 U.S.C. § 2014(q)'s definition of 'nuclear incident.' Instead, Congress required a showing of 'damage to property.'" 618 F.3d at 1141. And "[b]ecause the jury was not properly instructed on an essential element of Plaintiffs' PAA claims," this Court held, "the verdict must be set aside and the case remanded for further proceedings not inconsistent with this opinion." *Id.* at 1142.

This Court could have ended its analysis there, with its "ruling that Plaintiffs must establish the existence of a nuclear incident as a threshold element of their claims." *Id.* at 1142 n.15. Nonetheless, the Court proceeded to address other "questions of law raised in this appeal that are certain to arise again in the event of a retrial in order to guide the district court on remand." *Id.* Among those questions were defendants' challenges to the district court's interpretation of the state tort law underlying plaintiffs' PAA claims. *See id.* at 1145-49.

This Court concluded that the district court had "erred" with respect to Colorado nuisance law by holding that a scientifically unfounded risk of harm can "rise to the level of an unreasonable and substantial interference" with the use or enjoyment of property. *Id.* at 1145-46. The Court predicted that the Colorado Supreme Court would reject the comment to the *Restatement (Second) of Torts* on which the district court had relied, and "would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is 'substantial' and 'unreasonable' unless that anxiety is supported by some scientific evidence." *Id.* at 1146; *see also id.* at 1145 ("To the extent Plaintiffs rely on anxiety from an increased risk to their health as an interference with the use and enjoyment of their properties, that anxiety must arise from scientifically verifiable evidence regarding the risk and cannot be wholly irrational."); *id.* at 1146 ("No reasonable jury could find that irrational anxiety about a risk that cannot be scientifically verified tips this balance so as to render the interference unreasonable.").

In light of its substantive rulings under both federal and state law, the Court reversed not only the judgment but also the class

certification order. "As the district court's class certification analysis failed to consider whether [plaintiffs] could establish various elements of their PAA claims, supplied by both federal and state law, this court must reverse the district court's class certification ruling." *Id.* at 1149. "Upon remand," the Court explained, "the district court shall revisit the class certification question to determine whether Plaintiffs can establish the elements of their claims, including the PAA threshold requirements, on a class-wide basis." *Id.* Although defendants had raised other challenges to the judgment—including evidentiary rulings that affected the trial—this Court stated that it was not necessary to reach them given its conclusion that "the case must be remanded on other grounds." *See id.* at 1152.

As a result, this Court set aside the jury verdict, reversed and remanded the case, and specifically directed the district court on remand "to vacate the judgment and conduct further proceedings not inconsistent with this opinion." *Id.* at 1133, 1142, 1153. The Court further specified that "[o]n remand, Plaintiffs will be tasked with producing additional evidence that could support a jury's finding that a

nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under 42 U.S.C. § 2014(q)." *Id.* at 1142.

Plaintiffs then petitioned for rehearing *en banc*. In their petition, they did not suggest that the panel had affirmed or left intact any portion of the jury verdict or judgment in their favor. To the contrary, they stated that *en banc* review was necessary and appropriate because "*if* the full Court were to vacate and reject the panel's holding on the purported 'PAA threshold element,' judgment on the jury's award of compensatory damages on Plaintiffs' nuisance claim could be poised for reinstatement." Reply to Resp. to Pet. for Rehearing *En Banc* 1-2, Supp. App. 313-14 (emphasis added).

This Court denied the petition for rehearing *en banc*. *See* 12/9/10 Order, Supp. App. 320-24. The lone dissent, authored by Judge Lucero, did not suggest that plaintiffs could simply move to "reinstate" the jury verdict as a freestanding nuisance claim under Colorado law; to the contrary, that dissent criticized the panel for setting a "high barrier" for "its mandated retrial." *Id.* at 3, Supp. App. 322.

18

### 3.    The Supreme Court Denies Certiorari.

Plaintiffs then sought a writ of certiorari from the U.S. Supreme Court.  *See* Cert. Pet., Supp. App. 325-70.  The petition asked the Court to decide whether a PAA claim includes any substantive federal elements, and, if so, whether radioactive contamination of real property in any amount invariably satisfies those elements.  *See id.* at i, Supp. App. 327.  The petition for certiorari, like the *en banc* petition, did not suggest that this Court had affirmed or left intact any portion of the judgment or jury verdict in plaintiffs' favor.  To the contrary, the petition acknowledged that this Court had "*set aside the verdict* and remanded."  *Id.* at 14, Supp. App. 350 (emphasis added).

The Supreme Court invited the Solicitor General to present the views of the United States.  *Cook v. Rockwell Int'l Corp.*, 132 S. Ct. 82 (2011).  In response to that invitation, the Solicitor General urged the Court to deny the petition because, among other things, "the court of appeals … correctly determined that a 'nuclear incident' is a substantive element imposed by the Act, and correctly construed it pursuant to federal law."  Br. for the United States at 8, Supp. App. 386.  The Solicitor General recognized that "it will be an open question

19

on remand whether a sufficient scientific foundation exists for supporting the finding of a 'substantial' and 'unreasonable' interference" under Colorado law. *Id.* at 20, Supp. App. 398; *see also id.* ("If the district court (or jury) answers that question negatively, presumably [plaintiffs'] nuisance-based claims would fail as a matter of Colorado law."); *id.* at 21, Supp. App. 399 ("[I]t is by no means clear that the nuisance verdict is unassailable on remand notwithstanding [plaintiffs'] record-specific contentions."). The Solicitor General did not suggest that, on remand, the district court was free to "reinstate" the original jury verdict on purely state-law grounds. The Supreme Court denied the petition. *See Cook v. Rockwell Int'l Corp.*, 133 S. Ct. 22 (2012).

### 4. On Remand, Plaintiffs Propose To "Reinstate" The Verdict That This Court Reversed.

When the case returned to the district court, plaintiffs did not heed this Court's directive to "produc[e] additional evidence that could support a jury's finding that a nuclear incident occurred" within the meaning of the PAA. 618 F.3d at 1142. They sought, instead, "the reinstatement of the jury's verdict and the Court's entry of judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction," and "the recertification of the class." 8/7/12 Joint Status

20

Report at 1, Supp. App. 401. Stating that "Plaintiffs' reinstatement theory shall provide the content for the next chapter in this now two plus decades old saga," the district court ordered the parties to brief "the following two bedrock reinstatement issues: 1) Does the existing jury verdict in this case support entry of this Court's judgment on Plaintiffs' nuisance claim under Colorado law and diversity jurisdiction?; and 2) May a plaintiff who brings a Price-Anderson Act claim simultaneously pursue a freestanding state-law claim based on the same facts?" 10/16/12 Order at 1, App. 680.

After briefing, the district court answered the second question in the negative: "a plaintiff who brings a PAA claim may not pursue a freestanding state-law claim based on the same facts." 1/28/14 Order at 1-2, App. 1224-25; *see also id.* ("[T]he law ... does not permit independent Colorado state-law claims based on alleged radiation injury."). As the court explained, "every federal circuit … to consider whether the PAA preempts state causes of action for public liability arising out of or resulting from nuclear incidents has concluded that it has." *Id.* at 5-6, App. 1228-29 (citing, *inter alia*, *In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002); *Nieman v. NLO, Inc.*, 108 F.3d 1546,

21

1553 (6th Cir. 1997); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099 (7th Cir. 1994); *In re TMI Litig. Cases Consol. II* (*TMI II*), 940 F.2d 832, 855 (3d Cir. 1991)).  In addition, the court noted that the Supreme Court has recognized that "the PAA completely preempts state-law in terms of the vehicle for bringing a claim" arising from an alleged nuclear incident.  *Id.* at 5-7, App. 1228-30 (citing *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 485 n.6 (1999)).

The court observed that plaintiffs were trying to recast their PAA claim and treat it as something other than what it really was: "[t]he weight of authority is so great and crystalline on this matter that Plaintiffs voice no disagreement that the PAA preempts tort claims arising from nuclear incidents.  Instead, they argue their facts do not concern a 'nuclear incident' and therefore that the PAA does not apply at all."  *Id.* at 8, App. 1231.  As the court explained, that argument "ignores [plaintiffs'] own allegations."  *Id.*  "Plaintiffs' operative complaint includes allegations that their lawsuit is a public liability action arising from a nuclear incident."  *Id.* (citing 2d Am. Compl. ¶¶ 1, 3, 5, 96).  "[A]llowing plaintiffs simultaneously to litigate a freestanding state-law claim based on the same facts as their PAA claim would

undermine the liability-limiting purpose of the PAA." *Id.* at 9, App. 1232. "Plaintiffs have alleged a nuclear incident and the PAA is their exclusive remedy." *Id.* at 10, App. 1233. Given that holding, the district court did not reach the question whether this Court's prior decision in this case had left intact a state-law nuisance verdict amenable to "reinstatement." *See id.* at 1, App. 1224.

The district court's decision rejecting plaintiffs' "reinstatement" theory did not end the litigation. The district court simply held that plaintiffs could not simultaneously pursue a PAA claim and independent state-law claims based on the same facts. Plaintiffs remained free to pursue their PAA claim under the standards this Court set out in the first appeal. Plaintiffs, however, declined to do so. Rather, to allow for immediate appeal of the order rejecting their "reinstatement" theory, plaintiffs stipulated to dismissal with prejudice of their claims. *See* 2/27/14 Order, App. 1268-70. Without even trying to meet their PAA burden of proof, they agreed, as part of that stipulation, that they "will not pursue any claims under the PAA" unless this Court's prior decision in this case is overturned or modified, and, further, that in light of the district court's ruling on their

23

reinstatement theory, they "have no further claims to litigate" unless that ruling is overturned or this Court's prior decision is overturned or modified. *Id*.

Pursuant to that stipulation, the district court entered a final judgment in defendants' favor dismissing all of plaintiffs' claims with prejudice. *See* 2/27/14 Judgment, App. 1272. This appeal follows.

## SUMMARY OF ARGUMENT

This Court reversed the original judgment and remanded this case almost four years ago for plaintiffs to "produc[e] additional evidence that could support a jury's finding that a nuclear incident occurred, in the form of 'loss of or damage to property, or loss of use of property' under [the PAA]." *Cook*, 618 F.3d at 1142. Rather than attempting to do so, plaintiffs invited the district court to "reinstate" the reversed jury verdict, recertify the decertified class, and enter judgment in their favor based on an alleged freestanding nuisance claim under Colorado law. The district court correctly declined that invitation.

As the district court explained, plaintiffs' "reinstatement" theory fails because plaintiffs themselves allege a nuclear incident within the meaning of the PAA, and, having failed to establish one, they are not

24

free to pursue freestanding claims under state law based on the same facts on which they based their PAA claim.  By its plain terms, the PAA provides the *exclusive* remedy for claims based on an asserted nuclear incident.  Were the law otherwise, as the district court observed, the PAA would be a nullity: plaintiffs would never bother to satisfy the *additional* requirements of the PAA if they could bring freestanding claims under state law alleging nuclear-related injuries.  Plaintiffs' various constitutional challenges to the PAA's preemptive force are insubstantial: the statute does not extinguish any common-law claims, but simply transforms them into federal claims subject to the PAA.  Having chosen not to pursue their federal claims under the PAA, plaintiffs cannot argue that the statute unconstitutionally deprived them of any claims.

The "reinstatement" theory that plaintiffs urge upon this Court also fails for a second, independent reason: in light of this Court's prior decision, there is no freestanding jury verdict under Colorado nuisance law to "reinstate."  This Court specifically rejected the district court's interpretation of Colorado nuisance law, which allowed plaintiffs to argue that the entire class had suffered an unreasonable and

substantial interference with the use or enjoyment of property based solely on an alleged increased risk of injury that was not scientifically verifiable. And this Court reversed the judgment *in toto*, which meant that the parties were in the same position as if the case had never been tried. For the district court to have "reinstated" a verdict that this Court had set aside would have been a clear violation of this Court's mandate.

## STANDARD OF REVIEW

Whether a plaintiff who brings a PAA claim can simultaneously pursue a freestanding state-law claim based on the same facts, and whether this Court's prior decision left intact a freestanding state-law nuisance verdict, are both questions of law subject to *de novo* review. *See, e.g.*, *Steinbach v. Dillon Cos.*, 253 F.3d 538, 539 (10th Cir. 2001).

## ARGUMENT

**I.    A Plaintiff Who Brings A PAA Claim Cannot Simultaneously Pursue A Freestanding State-Law Claim Based On The Same Facts.**

Based on a careful review of the relevant cases and statutes, the district court correctly concluded that a plaintiff who brings a PAA claim cannot simultaneously pursue a freestanding state-law claim based on the same facts that form the basis of the PAA claim. *See*

1/28/14 Order, App. 1224-36.   Plaintiffs here asserted a PAA claim, which they litigated for more than twenty years until they stipulated to its dismissal with prejudice earlier this year.   They have no freestanding nuisance claim under Colorado law based on the same facts underlying their dismissed PAA claim.   That straightforward point resolves this appeal and, at long last, this entire litigation.

A.    **A "Public Liability" Action Under The PAA Is The Exclusive Cause Of Action For Harm Caused By An Alleged Nuclear Incident.**

From its inception, nuclear power has been subject to a comprehensive federal regulatory framework.   Given the paramount national-security and safety issues surrounding nuclear technology, "the federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states." *PG&E Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 (1983); *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 82 (1990); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 249 (1984).

The PAA is an important part of this comprehensive regulatory scheme.   As relevant here, the PAA's "public liability" provisions create a federal cause of action for "any suit asserting public liability," 42

27

U.S.C. § 2014(hh), which in turn is defined as "any legal liability arising out of or resulting from a nuclear incident," *id.* § 2014(w). The Act specifies that a public liability action "shall be deemed to be an action arising under [the PAA]," and provides that the substantive law governing such actions is to be "derived" from the law of the state in which the nuclear incident occurred unless such state law is inconsistent with Section 2210 of the Act. 42 U.S.C. § 2014(hh).

The upshot of these various provisions is that "*any* suit" asserting "*any* legal liability" resulting from "loss of or damage to property, or loss of use of property" caused by the "radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material" (which includes plutonium) "shall be *deemed* to be" a federal suit under the PAA. 42 U.S.C. §§ 2014(q), 2014(w), 2014(aa), 2014(hh) (emphasis added). Accordingly, there is no such thing as a state-law suit asserting liability for such injury; the PAA converts any such suit into a federal suit.

As the district court recognized, that is the lesson of the Supreme Court's decision in *El Paso Natural Gas Co. v. Neztsosie*, 256 U.S. 473 (1999). The plaintiffs there, members of the Navajo Nation, alleged

that the defendants, which had conducted uranium mining operations on the Navajo Nation Reservation, exposed them and their decedents to radioactive and other hazardous materials. *See* 526 U.S. at 477-78. The plaintiffs filed suit in tribal court, seeking compensatory and punitive damages under Navajo tort law. *See id.* The defendants filed suit in federal court to enjoin the claims, arguing that—regardless of how the claims were labeled by plaintiffs—they were necessarily federal claims that should be adjudicated in federal court. *See id.* at 478-79.

The Supreme Court agreed. As the Court explained, "the [PAA] transforms into a federal action 'any public liability action arising out of or relating to a nuclear incident.'" *Id.* at 484 (quoting 42 U.S.C. § 2210(n)(2)). By the statute's plain terms, any state-law claim asserting a nuclear incident is "deemed to" arise under federal law. 42 U.S.C. § 2014(hh). "This structure, in which a public liability action becomes a federal action ... resembles what we have spoken of as '"complete pre-emption" doctrine,' ... under which 'the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Neztsosie*, 526 U.S. at 484 n.6

29

(quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Because the PAA expressly provides for the "conversion of state law claims to federal ones," it is one of the "rare" statutes that allows a defendant to remove a case to federal court even when the plaintiff purports not to bring a federal claim. *Id.* at 485 n.7.

Not surprisingly, both before and after *Neztsosie*, every court of appeals to address the issue concluded that the PAA preempts ostensible non-federal claims asserting injury from the radioactive effects of the substances covered by the Act: a plaintiff asserting such injury "can sue under the Price-Anderson Act, as amended, or not at all." *Nieman*, 108 F.3d at 1553; *see also Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567, 570-71 (9th Cir. 2008); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008); *Berg*, 293 F.3d at 1132; *Corcoran v. New York Power Auth.*, 202 F.3d 530, 537 (2d Cir. 1999); *O'Conner*, 13 F.3d at 1099; *TMI II*, 940 F.2d at 854-55. "Thus, [under the PAA] a state cause of action is not merely transferred to federal court; instead, a new federal cause of action

supplants the prior state cause of action." *O'Conner*, 13 F.3d at 1099-1100.

That exclusive federal remedial scheme, which limits nuclear-incident plaintiffs to bringing federal public-liability claims, makes sense. The PAA strikes a balance between, on the one hand, compensating the victims of nuclear incidents for their losses and, on the other, fostering the development of nuclear energy and technology by "limit[ing] the liability of those persons liable for such losses." 42 U.S.C. § 2012(a) & (i); *see also Duke Power*, 438 U.S. at 64; *Lujan v. Regents of Univ. of Cal.*, 69 F.3d 1511, 1514 (10th Cir. 1995). If States were free to impose nuclear-related liability at will, they could upset this careful balance. Thus, plaintiffs who cannot satisfy the PAA's injury requirements cannot circumvent those requirements by simply purporting to sue under state law. *See, e.g.*, *Cotroneo*, 639 F.3d at 195-200; *Dumontier*, 543 F.3d at 570-71; *Hanford*, 534 F.3d at 1009-10.

Confronted by this solid wall of authority, plaintiffs offer three rejoinders. None has merit.

***First***, plaintiffs devote the first two subsections of their argument to insisting that the district court has subject-matter jurisdiction over

31

freestanding state-law claims in this case.  *See* Pls.' Br. 28-30.  That argument, however, proves nothing.  The question here is whether such ostensible state-law claims exist in the first place, or whether they are completely preempted by the PAA.  Whether the district court would have subject-matter jurisdiction over the claims *if* they exist has no bearing on the complete preemption analysis.

*Second*, plaintiffs assert that "[d]efendants did not advance a field or complete preemption argument in the previous appeal, and the District Court erred in not holding that Defendants have waived such arguments."  Pls.' Br. 39-40.  But, as the district court observed, that argument "confuses" the preemption issue presented here ("whether the PAA permits or preempts freestanding state-law claims based on the same facts as the PAA claim") with the preemption issued previously addressed by this Court ("whether PAA § 2014(hh) preempts state tort law standards of care").  1/28/14 Order at 11, App. 1234.  With respect to the former preemption issue, the district court explained, defendants have consistently advanced a complete preemption argument.[1]

---

[1] As the district court stated, "The record shows that Defendants argued on appeal that '[t]he 1988 PAA amendments completely federalized this area of the law by making a "public liability action"

Plaintiffs' waiver argument, the district court noted, is based on "selectively quoting" this Court's prior opinion in this case, which did not address the complete preemption issue presented here. 2/25/14 Pls.' Mot. for Judgment at 11, App. 1234.

And *third*, plaintiffs assert that in *Devon Energy Prod. Co., v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4, 1204-05 (10th Cir. 2012), "this Court identified three areas where the Supreme Court has recognized complete preemption, but did *not* include the PAA." Pls.' Br. 40 (emphasis in original). Thus, plaintiffs conclude, "[t]here is no complete preemption in the PAA context under *Devon*," and "the District Court's citation to ... *Neztsosie* ... is inapt." *Id.*

That conclusion is baseless. In *Devon*, this Court made the unremarkable observation that "'[c]omplete preemption is a rare doctrine,'" 693 F.3d at 1204 (quoting *Community State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011))—"so rare in fact that the Supreme Court has recognized complete preemption in only three

---

under the PAA, 42 U.S.C. § 2014(w), "the exclusive means of compensating victims for any and all claims arising out of nuclear incidents.'" *Id.* (quoting Defs.' 10th Cir. Br. 25, Supp. App. 44 (in turn quoting *Hanford*, 534 F.3d at 1009)).

areas," (1) "§ 301 of the Labor Management Relations Act of 1947 ('LMRA')," (2) "§ 502 of the Employee Retirement Income Security Act of 1974 ('ERISA')," and (3) "actions for usury against national banks under the National Bank Act," *id.* While that observation does not mention the PAA—which was not relevant to the Court's analysis—it does not contradict the conclusion reached by the district court.

The district court properly relied on the Supreme Court's observation in *Neztsosie* that the PAA's preemption provision "*resembles what we have spoken of as complete preemption….*" *Neztsosie*, 526 U.S. at 484 n.6 (emphasis added; internal quotation omitted). The PAA differs from other "complete preemption" statutes because it adopts "the substantive rules of decision" from state law except insofar as inconsistent with the PAA. *See* 1/28/14 Order at 7; App. 1230. But, in practical effect, the PAA achieves complete preemption—as the Supreme Court recognized in *Neztsosie*—by "deem[ing]" actions asserting nuclear-related injuries to arise under the PAA, regardless of whether the plaintiff purports to bring those actions under some other law. 42 U.S.C. § 2014(hh); *see also* 526 U.S. at 484-85 & nn.6, 7.

34

In contrast, in *Devon* this Court was presented with the question of whether to *imply* complete preemption. This Court explained, however, that "the Supreme Court has warned that complete preemption should not be lightly *implied*," *id.* at 1205 (emphasis added; internal quotation omitted), and cited the only three areas in which the Supreme Court has implied complete preemption. Nothing in that discussion addresses statutes, like the PAA, in which Congress has *expressly* specified that certain ostensible state-law claims "shall be deemed to be" federal-law claims. 42 U.S.C. § 2014(hh). Certainly, *Devon* is not a license for courts to ignore the PAA's plain language or the Supreme Court's discussion of that language in *Neztsosie*.

**B.    Plaintiffs Asserted And Litigated A Public Liability Action Under The PAA Based On The Same Facts As Their Ostensible State-Law Claims.**

Despite having litigated this case as a public liability action under the PAA for more than twenty years, plaintiffs now insist that this is not a public liability action after all because they "*now* are pursuing a non-nuclear incident claim." Pls.' Br. 40 (emphasis modified); *see also id.* at 41 ("*Plaintiffs are no longer pursuing ...* a claim growing out of a nuclear incident.") (emphasis in original; internal quotation omitted).

35

This argument, however, is based on a change in labels, not substance, and the district court properly rejected it.

The starting point is plaintiffs' own complaint. As plaintiffs themselves acknowledged in the previous appeal, "[d]etermining whether the plaintiffs asserted [public] liability entails examining the complaint. A determination that they did endures for the life of the suit, regardless of the ultimate merits of their claims." 5/26/10 Pls.' Supp. Br. at 6, Supp. App. 295. Here, plaintiffs do not, and cannot, dispute that they asserted from the outset that this lawsuit involves a "nuclear incident" and is a "public liability action" under the PAA. Using language taken directly from the PAA's definition of "nuclear incident," 42 U.S.C. § 2014(q), the original complaint alleged that all of plaintiffs' various state-law causes of action (including nuisance) "arise out of the radioactive, toxic, explosive or other hazardous properties of source, special nuclear or by-product materials which has been released or is threatened to be released into the environment from Rocky Flats," Compl. ¶ 66, App. 208. Although plaintiffs try to characterize these as independent state-law claims, they alleged from the outset that these claims "*also* constitute claims of public liability within the meaning of

36

[the PAA], and such claims are therefore deemed to arise under the [PAA.]"  Compl. ¶ 66, App. 209 (emphasis added).  Plaintiffs' amended complaints are to the same effect.  *See* Am. Compl. ¶¶ 1, 2, 4, 72, App. 220-21, 234; 2d Am. Compl. ¶¶ 1, 3, 5, 96, App. 246-47, 266.

Plaintiffs litigated this case on the same basis—as a PAA case. That is why, after overseeing this action for more than a decade, the district court noted, without contradiction, that "[n]one dispute this is a 'public liability action' arising under the Price-Anderson Act, 42 U.S.C. § 2210 ('Price-Anderson' or 'Act'), because it is an action in which Plaintiffs seek to impose liability arising out of or resulting from a 'nuclear incident.'"  *Cook IX*, 273 F. Supp. 2d at 1179.

And even in prior appellate proceedings in this case, plaintiffs emphasized that this case is a "public liability action" under the PAA:

- "The operative complaint expressly asserts public liability …." Cert. Pet. at 8, Supp. App. 344.

- "The Act likewise deems 'suit[s] asserting public liability' to arise under federal law.  Plaintiffs' complaint undeniably 'assert[ed]' public liability."  Cert. Pet. at 23, Supp. App. 359 (emphasis and internal citation omitted).

- The allegations of the complaint "render this a 'suit asserting public liability' and fully satisfy section 2210(n)(2)'s jurisdictional requirements."  5/26/10 Pls.' Supp. Br. at 9, Supp. App. 298.

- "In short, the 'suit asserting' language in section 2014(hh)—which defines a 'public liability action' over which federal courts have jurisdiction—requires only that plaintiffs have *asserted* claims arising out of a nuclear incident."  5/26/10 Pls.' Supp. Br. at 7, Supp. App. 296.

Plaintiffs' decision (following the district court's ruling rejecting their reinstatement proposal) to stipulate to the dismissal with prejudice of their PAA claims, *see* 2/27/14 Order, App. 1268-70, changes nothing: their ostensible state-law claims are still based on the same facts underlying their now-dismissed PAA-claims, and those assertions clearly *allege* (even if plaintiffs ultimately failed to *prove*) a "nuclear incident."

Removing all doubt, the (largely irrelevant) Statement of Facts in plaintiffs' opening brief confirms that this case continues to be about the "hazardous properties of source, special nuclear, or byproduct material" and alleged injuries resulting from the release of such material.  *See, e.g.*, Pls.' Br. 9 ("Defendants released plutonium off-site the entire time they operated the plant."); *id.* at 9-10 ("Plutonium is a manmade, radioactive metallic element that, as DOE has acknowledged, 'can be extremely dangerous ….'"); *id.* at 21 ("Plutonium released by Defendants from Rocky Flats contaminated soil throughout

the Class Area ….").   Plaintiffs continue to argue that exposure to plutonium contamination increased their risk of cancer and other latent diseases.  *See id.* at 10-11, 23-24.  While they seek to drop the label, plaintiffs have not dropped the factual assertions that made and continue to make this case a "public liability action" under the PAA.

Finally, plaintiffs are mistaken in their theory that the preemptive scope of the PAA is limited to plaintiffs who *prove* a "nuclear incident"; rather, the PAA governs claims that *assert* a "nuclear incident."  The PAA defines "public liability action" as "any suit *asserting* public liability," *i.e.*, "any legal liability arising out of or resulting from a nuclear incident."  42 U.S.C. §§ 2014(w), (hh) (emphasis added).  Any such suit, regardless of the label placed on it by the plaintiff, "shall be deemed to be" a federal suit arising under the PAA.  42 U.S.C. § 2014(hh).  Plaintiffs who assert, but fail to prove, a PAA claim may not thereafter pursue that claim under state law.  *See, e.g.*, *Cotroneo*, 639 F.3d at 198-200; *Dumontier*, 543 F.3d at 570-71; *Hanford*, 534 F.3d at 1009.

### C.    The PAA's Preemption Scheme Is Constitutional.

Unable to seriously dispute that this is a public liability action under the PAA, plaintiffs devote the bulk of their argument to insisting that the PAA is unconstitutional to the extent it "abolished the common and statutory law of nuisance in all 50 states and left no substitute remedy."  Pls.' Br. 42; *see generally id.* at 26-27, 42-59.  That argument is meritless.

As explained above, the PAA did not "abolish" any law while leaving "no substitute remedy."  To the contrary, as the Supreme Court explained in *Neztsosie*, the PAA "transforms" actions that seek to impose "public liability"—however those actions are denominated by the plaintiff—into federal actions.  526 U.S. at 484.  Thus, a plaintiff seeking redress for an alleged nuclear-related injury is not left "with no substitute remedy"; rather, the plaintiff has the substitute remedy provided by the federal scheme.  Accordingly, the PAA does not present the hypothetical situation posited by plaintiffs where federal law "eliminate[s] all longstanding, 'classic' [state tort] law without providing a substitute remedy."  Pls.' Br. 50; *see also PruneYard Shopping Center v. Robins*, 447 U.S. 74, 93-94 (1980) (Marshall, J., concurring) ("[T]here

are limits on governmental authority to abolish 'core' common-law rights, ... at least without a compelling showing of necessity *or a provision for a reasonable alternative remedy*.") (emphasis added); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1150 (9th Cir. 2009) (Berzon, J., concurring in part and dissenting in part) (focusing on statutes "that abrogate[] common-law remedies *without providing or leaving open a substitute remedial scheme*," and expressly distinguishing the PAA on this score) (emphasis in original).

Plaintiffs' real complaint is that, despite having alleged a nuclear incident, they are unable to prove that they have suffered any of the types of injuries compensable under the PAA. But there is nothing remotely unconstitutional about that. Many federal schemes create the possibility that some plaintiffs might not be able to recover under federal law where they might have been able to recover under state law. As the Supreme Court explained in rejecting a previous constitutional challenge to the PAA, "a person has no property, no vested interest, in any rule of the common law." *Duke Power*, 438 U.S. at 88 n.32 (internal quotation omitted). Thus, "[t]he Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the

41

common law, to attain a permissible legislative object, despite the fact that otherwise settled expectations may be upset thereby." *Id.* (internal quotation omitted). It is not uncommon—and certainly not unconstitutional—for federal law to preempt otherwise cognizable state-law tort claims. *See, e.g.*, *Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2480 (2013); *Norfolk So. Ry. Co. v. Shanklin*, 529 U.S. 344, 351, 359 (2000); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 503, 512-13 (1988); *Ileto*, 565 F.3d at 1140-41; *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 943 (6th Cir. 1995); *Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.*, 990 F.2d 513, 519 (9th Cir. 1993).[2]

But this case does not even present that scenario, because plaintiffs did not even try to prove their PAA claims under the

---

[2] Plaintiffs' constitutional argument is no stronger when framed as a violation of the Takings Clause as opposed to the Due Process Clause. *See Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 641 (1993) ("Given that [the plaintiff's] due process arguments are unavailing, 'it would be surprising indeed to discover' the challenged statute nonetheless violating the Takings Clause.") (quoting *Connolly v. PBGC*, 475 U.S. 211, 223 (1986)); *see also Ileto*, 565 F.3d at 1141. The Takings Clause, like the Due Process Clause, does not prevent Congress from "transform[ing]" a state-law claim into a federal claim, *Neztsosie*, 526 U.S. at 484, and the Supreme Court expressed no constitutional concerns whatsoever in describing the PAA regime in *Neztsosie*.

standards articulated by this Court. To the contrary, on remand, plaintiffs devoted their efforts entirely to their "reinstatement" theory, insisting that they can simultaneously pursue a PAA claim and a state law claim based on the same facts. Then, after the district court ruled against them on that theory, they voluntarily stipulated to the dismissal of their PAA claims with prejudice in order to immediately appeal that ruling. *See* 2/27/14 Order, App. 1268-70. Given that plaintiffs did not even *try* to litigate their PAA claims under the correct legal standards, they can hardly complain now that the PAA left them with no remedy for their alleged injuries. This Court left plaintiffs free to pursue their PAA claims on remand, and it was plaintiffs' own decision to abandon them.

And despite their repeated rhetoric to the contrary, plaintiffs have never prevailed on a freestanding nuisance claim under Colorado law. The prior trial involved a PAA claim, not a freestanding state-law nuisance claim. Thus, as discussed further below, this Court did not affirm a non-existent freestanding nuisance judgment under Colorado law. Because plaintiffs chose to pursue a "reinstatement" theory on remand rather than a new trial, they have never proven a freestanding

nuisance claim under Colorado law.  Plaintiffs' repeated assertion that this case involves a "proven" state-law nuisance claim, *see* Pls.' Br. 5, 8, 24, 26, 28, 41 n.43, 42, 46, 49, 51, 58, 59, 60 (emphasis added), does not make it so.

## II.  In Any Event, The Verdict That This Court Set Aside Does Not Support The Entry Of Judgment On A Freestanding State-Law Nuisance Claim.

While the points made in the foregoing section are dispositive, plaintiffs' "reinstatement" theory fails for a second, independent reason: there is no freestanding state-law nuisance verdict to "reinstate."  The prior jury verdict in this case involved claims under the PAA, not freestanding Colorado tort-law claims.  Those PAA claims turned, in part, on substantive Colorado nuisance law, and this Court explicitly disapproved of the nuisance theory presented at trial under Colorado law.  And this Court reversed the judgment in its entirety, leaving no verdict in place.  Accordingly, on remand, there was no verdict left to "reinstate."

In particular, the jury instructions in this case allowed the jury to impose nuisance liability based on "*some* increased risk of health problems" as a result of plutonium exposure.  Jury Instruction 3.6, App.

449; *see also* Jury Instruction No. 3.7, App. 451-54 ("It is enough to find
… that the Class members … incurred *some increment* of increased
health risk.") (emphasis added).     Defendants challenged those
instructions in the prior appeal, arguing that "not just *any* increased
risk gives rise to a nuisance claim under Colorado law," and that "[a]s a
matter of law, an interference cannot be 'substantial' and 'unreasonable'
if it is based on a scientifically unfounded risk."  Defs.' 10th Cir. Br. 49,
Supp. App. 68 (emphasis in original); *see also* Defs.' 10th Cir. Reply Br.
38-39, Supp. App. 57-58.  This Court agreed, and held that the district
court had "erred" in concluding otherwise.  *Cook*, 618 F.3d at 1146.  It
follows that the verdict based on a nuisance theory was infirm because,
as this Court observed, "[p]laintiffs' experts merely testified that *any*
exposure to plutonium whatsoever increases the risk of health problems
to some degree," *id.* at 1142 (emphasis in original), so that the jury
might have imposed nuisance liability on the legally erroneous premise
that even a scientifically unverifiable risk of injury can give rise to a
nuisance.

Plaintiffs respond that this Court also stated that "'[t]he jury was
properly instructed on the elements of a nuisance claim as well as the

45

definitions of "substantial" and "unreasonable."'" Pls.' Br. 30, 36 (quoting *Cook*, 618 F.3d at 1145). That response is a *non sequitur*. In the first appeal, defendants never raised any challenge to the jury instructions on "the elements of a nuisance claim" or "the definitions of 'substantial' and 'unreasonable.'" *Cook*, 618 F.3d at 1145. Rather, as noted above, defendants challenged the jury instructions to the extent that they allowed plaintiffs to recover based on "some increased risk of health problems," and this Court agreed with defendants on this score. *See id.* at 1145-46; *see also id.* at 1145 ("While the resolution of these issues typically involves questions of fact, a scientifically unfounded risk cannot rise to the level of an unreasonable and substantial interference.").

Plaintiffs insist, however, that this Court's discussion of Colorado nuisance law in the prior appeal "has no bearing on the jury's class nuisance verdict or on this appeal." Pls.' Br. 35. In their view, that discussion did not relate to the classwide nuisance instructions at issue in the first appeal, but solely to Instruction 3.28, a "*separate* form of interference in a generic sense for potential use in *later* proceedings" regarding "'[a]n individual Class members' [*sic*] fear, anxiety or mental

discomfort.'"  Pls.' Br. 32-33 (emphasis in original; quoting Jury Instruction 3.28, App. 488).  That argument is unavailing.

Precisely because, as plaintiffs put it, Jury Instruction 3.28 "was directed exclusively at potential later proceedings that never actually occurred," Pls.' Br. 35, it was never at issue in the previous appeal.  Defendants never once quoted or cited that Jury Instruction in their voluminous briefing before this Court, and similarly this Court never quoted or cited that Jury Instruction in its opinion.  It is implausible, to say the least, that this Court directed a section of its opinion solely to addressing a Jury Instruction that was not at issue in the appeal.

 In any event, plaintiffs' "reinstatement" theory plainly contradicts this Court's mandate.  Contrary to plaintiffs' suggestion, this Court did not *affirm* a freestanding state-law nuisance judgment in their favor.  Rather, this Court "set aside" the verdict, "reverse[d] and remand[ed] the case to the district court," and "direct[ed] the district court to vacate the judgment and conduct further proceedings not inconsistent with this opinion."  *Cook*, 618 F.3d at 1133, 1142, 1153 (emphasis and capitalization modified).  This Court addressed Colorado nuisance law only to provide guidance on "questions of law raised in this appeal that

47

are certain to arise again in the event of a re-trial in order to guide the district court on remand." *See id.* at 1142 n.15.  This Court certainly did not, and could not, affirm a hypothetical freestanding nuisance claim under Colorado law that was not before it.

This Court's mandate left the district court no discretion to "reinstate" any part of the original judgment.  "To 'reverse' a judgment means to 'overthrow, vacate, set aside, make void, annul, repeal, or revoke it.'" *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (quoting Black's Law Dictionary 1319 (6th ed. 1990)).  Thus, a judgment that has been reversed is "null and void in its entirety," and is "without any validity, force or effect, and ought never to have existed." *Id*. (internal quotation marks omitted).  The same goes for the underlying jury verdict on which the reversed judgment was based: "Reversal of a judgment and remand for a new trial places the parties in the same position, insofar as relief is concerned, as if the case had never been tried." *Id*.  Thus, for the district court to have accepted plaintiffs'

"reinstatement" theory would have been a clear violation of this Court's mandate.[3]

All of this is crystal clear from this Court's opinion, which forms part of the mandate.  *See*, *e.g.*, *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003).  That opinion did not affirm any part of the original judgment in plaintiffs' favor.  To the contrary, the opinion unconditionally reversed the case, directed the district court to vacate the judgment in its entirety, and contemplated a retrial under the proper legal standards articulated by the Court.  Indeed, this Court declined to address several of defendants' other challenges to the judgment, including evidentiary challenges, on the ground that those

---

[3] Similarly, it would have been a violation of this Court's mandate for the district court to accept plaintiffs' invitation to summarily "recertify the Class based on the existing record" without undertaking any inquiry into whether the putative class could establish a state-law nuisance claim on a classwide basis.  1/19/13 Pls.' Opening Br. on Remand  at 12 n.10, App. 701 n.10.  This Court directed the district court on remand to "revisit the class certification question to determine whether Plaintiffs can establish the elements of their [PAA] claims ... on a class-wide basis," specifically including the "elements ... supplied ... by ... state law."  *Cook*, 618 F.3d at 1149.  Because the district court has never inquired whether plaintiffs could prove the elements of a state-law nuisance claim on a classwide basis, there is no basis for plaintiffs' request that this Court direct the district court to "recertify" the class that this Court previously decertified.  Pls.' Br. 5, 28, 60.

issues "may not arise during a new trial." *Cook*, 618 F.3d at 1152. That reasoning would make no sense if, as plaintiffs now insist, this Court *sub silentio* affirmed a hypothetical freestanding state-law nuisance judgment in their favor. In light of this Court's disposition of the case in the prior appeal, there was simply nothing left to "reinstate" on remand—with the judgment reversed and the class decertified, the litigants were essentially back to square one.

The bottom line here is that, wholly apart from the fact that the PAA completely preempts freestanding state-law claims arising from an alleged nuclear incident, in this case there is no verdict or judgment on any such freestanding state-law nuisance claim, and hence nothing for the district court to "reinstate." Accordingly, the district court properly rejected plaintiffs' "reinstatement" theory, and (after plaintiffs voluntarily stipulated to the dismissal of their PAA claims) dismissed this entire action with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment.

July 14, 2014                          Respectfully submitted,


                                       */s/ Christopher Landau*
                                       _____

Kevin Van Wart, P.C.                   Christopher Landau, P.C.
Bradley H. Weidenhammer                Rebecca Taibleson
KIRKLAND & ELLIS LLP                   KIRKLAND & ELLIS LLP
300 North LaSalle                      655 Fifteenth Street, N.W.
Chicago, IL   60654                    Washington, DC   20005
(312) 862-2000                         (202) 879-5000
                                       *clandau@kirkland.com*


            *Counsel for Defendants-Appellees*




                                    51

# CERTIFICATE OF TYPE-VOLUME COMPLIANCE

The undersigned certifies that the foregoing brief is proportionately spaced, has a typeface of 14 points or larger, and contains 10,061 words according to the word-processing software used to prepare the brief, in compliance with Federal Rule of Appellate Procedure 32 and 10th Circuit Local Rule 32.

*/s/ Christopher Landau*

Christopher Landau, P.C.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC   20005
(202) 879-5000
*clandau@kirkland.com*

## CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE

The undersigned hereby certifies that all required privacy redactions, if any, have been made and every document submitted herewith, as submitted in digital form via the Court's ECF system, is an exact copy of the written document filed with the Clerk, if any; and the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program (Microsoft Forefront Endpoint Protection Version 4.2, updated as of July 14, 2014) and, according to the program, are free of viruses.

*/s/ Christopher Landau*

Christopher Landau, P.C.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC   20005
(202) 879-5000
*clandau@kirkland.com*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 14th day of July 2014, he caused the foregoing Brief of Defendants-Appellees to be served upon the following attorneys via ECF notification:

Merrill G. Davidoff, Esq.
David F. Sorensen, Esq.
Caitlin G. Coslett, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
*mdavidoff@bm.net*
*dsorensen@bm.net*
*ccoslett@bm.net*

Louise M. Roselle, Esq.
Paul M. DeMarco, Esq.
MARKOVITS, STOCK &
  DE MARCO, LLC.
119 E. Court Street
Suite 530
Cincinnati, OH   45202
(513) 651-3700
*lroselle@msdlegal.com*
*pdemarco@msdlegal.com*

Gary B. Blum, Esq.
Steven W. Kelly, Esq.
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO   80206
(303) 399-3000
*blumg@s-d.com*
*skelly@s-d.com*

*/s/ Christopher Landau*
Christopher Landau, P.C.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC   20005
(202) 879-5000
*clandau@kirkland.com*