No. 14-1112

---

# United States Court of Appeals
# for the Tenth Circuit

---

MERILYN COOK; LORREN BABB; GERTRUDE BABB; RICHARD BARTLETT;
SALLY BARTLETT; WILLIAM SCHIERKOLK, JR.; AND DELORES SCHIERKOLK,
For Themselves and on Behalf of the Prospective Damages Subclass
Of the Property Class Certified by the District Court,

*Plaintiffs-Appellants*

v.

ROCKWELL INTERNATIONAL CORPORATION AND
THE DOW CHEMICAL COMPANY,

*Defendants-Appellees*

---

On Appeal from the United States District Court
For the District of Colorado (Kane, J.)
Case No. 1:90-cv-00181-JLK

---

## PLAINTIFFS'-APPELLANTS' REPLY BRIEF

---

Gary B. Blum
Steven W. Kelly
SILVER & DEBOSKEY, P.C.
1801 York Street
Denver, CO  80206
Telephone:  (303) 399-3000

Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Caitlin G. Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000

*Counsel for Plaintiffs-Appellants*
[*Names of additional counsel appear on the signature page.*]

## ORAL ARGUMENT REQUESTED

August 1, 2014

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

CITATION CONVENTIONS .............................................................. vi

I.    Plaintiffs Have Always Alleged Colorado Nuisance Claims ...........................1

II.   Plaintiffs Proved Nuisance with Scientific Evidence ........................................2

III.  This Court Held That the Jury Was Properly Instructed on Plaintiffs' Class-Wide Nuisance Claim ................................................................5

IV.   Defendants' Preemption Arguments Fail........................................................12

V.    Defendants Fail to Rebut Plaintiffs' Argument That a Finding of Preemption Would Render at Least Parts of the PAA Unconstitutional..............................22

VI.   The "Mandate Rule" Does Not Bar Entry or Reinstatement of Judgment on Plaintiffs' Colorado Nuisance Claim ................................................25

VII.  Conclusion.....................................................................................28

REQUEST FOR ORAL ARGUMENT .................................................30

CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE...........................31

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. RULE 32(A) .........32

CERTIFICATE OF COMPLIANCE WITH 10th CIR. R. 25.5.............................33

CERTIFICATE OF COMPLIANCE WITH ECF FILING.....................................34

CERTIFICATE OF SERVICE ..............................................................35

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE(S)**

*Beneficial National Bank v. Anderson*,
   539 U.S. 1 (2003) ...................................................15

*Bigelow v. RKO Radio Pictures*,
   327 U.S. 251 (1946) .................................................11

*Bonner v. Guccione*,
   178 F.3d 581 (2d Cir. 1999) ......................................13

*Bowdry v. United Airlines*,
   58 F.3d 1483 (10th Cir. 1995) ....................................7

*Boyle v. United Technologies Corp.*,
   487 U.S. 500 (1988) .................................................22

*ClearOne Commc'ns, Inc. v. Bowers*,
   643 F.3d 735 (10th Cir. 2011) ...................................12

*Coleman v. B-G Maint. Mgmt. of Colorado, Inc.*,
   108 F.3d 1199 (10th Cir. 1997) ........................... 11, 12

*Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers
Pension Trust for S. Cal.*,
   508 U.S. 602 (1993) ........................................ 23, 24

*Connolly v. PBGC*,
   475 U.S. 211 (1986) .................................................23

*Cook v. Rockwell Int'l Corp.*,
   618 F. 3d 1127 (10th Cir. 2010).............................. *passim*

*Cook IX*,
   273 F. Supp. 2d 1175 (D. Colo. 2003) ..........................6, 8

*Cook XIII*,
   580 F. Supp. 2d 1071 (D. Colo. 2006) ...................... 2, 5, 9

*Cook XIV*,
    564 F. Supp. 2d 1189 (D. Colo. 2008) ...............................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ............................................................................................2, 5

*Devon Energy Prod. Co. v. Mosaic Potash Cardisbad, Inc.*,
    693 F.3d 1195 (10th Cir. 2012) ............................................................... 13, 14, 15

*El Paso Natural Gas Co. v. Neztsosie*,
    526 U.S. 473 (1999) .............................................................................. 14, 15, 24

*Erie R.R. v. Tompkins*,
    304 U.S. 64 (1938) .............................................................................................13

*Guidry v. Sheet Metal Workers Int'l Ass'n*,
    10 F.3d 700 (10th Cir. 1993) ..............................................................................25

*Headley v. Bacon*,
    828 F.2d 1272 (8th Cir. 1987) ............................................................................12

*Hicks v. Gates Rubber Co.*,
    928 F.2d 966 (10th Cir. 1991) ............................................................................26

*Ileto v. Glock*,
    565 F.3d 1126 (9th Cir. 2009) ............................................................................24

*McKay v. U.S.*,
    703 F.2d 464 (10th Cir. 1983) ............................................................................21

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ...................................................................................... 20, 21

*Mutual Pharm. Co. v. Bartlett*,
    133 S.Ct. 2466 (2013) .........................................................................................22

*Norfolk Southern Railway Co. v. Shanklin*,
    529 U.S. 344 (2000) ............................................................................................22

*Ponte v. Real*,
    471 U.S. 491 (1985) ............................................................................................27

iii

*Procter & Gamble Co. v. Haugen*,
   317 F.3d 1121 (10th Cir. 2003) ........................................................................25

*Sherouse v. Ratchner*,
   573 F.3d 1055 (10th Cir. 2009) ........................................................................12

*Silkwood v. Kerr–McGee Corp.*,
   464 U.S. 238 (1984) ................................................................................... 21, 22

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) ........................................................................................25

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966) ........................................................................................12

*United States v. Haslip*,
   160 F. 3d 649 (10th Cir. 1998) ........................................................................11

*United States v. Hicks*,
   146 F.3d 1198 (10th Cir. 1998) ................................................................. 26, 27

*United States v. Lang*,
   405 F.3d 1060 (10th Cir. 2005) ........................................................................26

*United States v. Shipp*,
   644 F.3d 1126 (10th Cir. 2011) ........................................................................26

*United States v. Smith*,
   116 F.3d 857 (10th Cir. 1997) ..........................................................................26

*United States v. West*,
   646 F.3d 745 (10th Cir. 2011) ..........................................................................26

*Wheeler v. John Deere Co.*,
   935 F.2d 1090 (10th Cir. 1991) ........................................................................25

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ........................................................................................15

## Statutes

18 U.S.C. § 924(c)(1) ............................................................................................26

18 U.S.C. § 3742(f)(2)(B)................................................................26

29 U.S.C. § 1144(a) ......................................................................14

42 U.S.C. § 2014(hh) ............................................................. 13, 15

42 U.S.C. § 2014w)................................................................. 14, 17

**Rules**

Fed. R. App. P. 32 ........................................................................32

Fed. R. Civ. P. 8(d)(2), (d)(3) ......................................................12

Fed. R. Civ. P. 18(a)......................................................................12

 Fed. R. Evid. 702 .......................................................................2, 3

**Other Authorities**

Restatement (Second) of Torts § 821...........................................6, 8

Page Keeton, et al., *Prosser and Keeton on Torts* (5th ed. 1984) ...........19

*Webster's New Collegiate Dictionary* (1979)..........................................10

## CITATION CONVENTIONS

We use the same citation conventions here as in Plaintiffs'-Appellants'

Principal Brief, Doc. No. 01019262216 (June 10, 2014) ("PPB").

The Brief of Defendants-Appellees, Doc. No. 01019278418 (July 14, 2014)

is cited "DB".  Defendants' Supplement Appendix is cited "S__".

Except where otherwise stated, all emphases are added.

I.    **Plaintiffs Have Always Alleged Colorado Nuisance Claims**

Plaintiffs' 1990 complaint and the complaint operative at trial both included Colorado nuisance claims.  *See* A195, ¶ 3; A208, ¶ 66; A220, ¶ 3; A234, ¶ 72; PPB at 28-29.  Defendants cannot dispute this, but say that Plaintiffs litigated, and the District Court treated, this case as a PAA case.  DB at 9-20.  But until this Court accepted Defendants' new argument on appeal, all parties – Defendants, Plaintiffs, and the District Court – regarded a Colorado nuisance claim and a PAA claim as identical regarding the requirement of pleading and proving a substantial and unreasonable *interference* with use and enjoyment of property.  That was the very issue with the jury's PAA verdict that this Court (accepting Defendants' new argument) identified – a Colorado nuisance claim requires proof of "interference" with use and enjoyment of property, but according to this Court, the PAA (post-1988 Amendments) demands proof of "loss of use" to prove a "nuclear incident" had occurred.  And this Court equated "loss of use" with radiation high enough to require an evacuation.  *See Cook v. Rockwell Int'l Corp.*, 618 F. 3d 1127, 1141-42 (10th Cir. 2010) ("*Cook*").

Defendants' argument that Plaintiffs long litigated this case as a PAA case simply underscores the radical and unexpected change in the law wrought by *Cook*, but it says nothing about whether the PAA completely preempts Plaintiffs' proven Colorado nuisance claim, nor whether the PAA is constitutional (or effects a taking

of Plaintiffs' property) if it is held to do so – issues neither litigated nor decided in the previous appeal.

## II.    Plaintiffs Proved Nuisance with Scientific Evidence

Plaintiffs proved their nuisance claims with overwhelming scientific evidence.[1]  Defendants did not appeal any ruling in *Cook XIII* that Plaintiffs' extensive scientific evidence, including by Plaintiffs' experts Drs. Goble, Clapp, Wing, Smallwood, Budnitz, and Cochran, is reliable and satisfied all requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and F.R.E. 702.  *See Cook XIII*, 580 F. Supp. 2d 1071.[2]

In rejecting Defendants' *Daubert* challenges, the District Court held *inter alia* that:

(1)    Dr. Robert Goble, a professor with a Ph.D. in physics,[3] was qualified to testify regarding class-wide exposure to plutonium, *Cook XIII*, 580 F. Supp. 2d at 1089; and there was "no merit" to Defendants' challenges to the relevance and scientific reliability of his testimony. *Id.* at 1095.

(2)    Dr. Richard Clapp, a professor and epidemiologist with a Master of Public Health Degree and a Doctor of Science, was qualified to testify

---

[1] *See* PPB at 9-24, 35 n.36.

[2] *See* PPB at 9-10 n.18.

[3] All descriptions are as of trial.

2

regarding his epidemiological study showing an increased incidence of cancer in off-site areas near Rocky Flats including the Class Area (and Defendants did not argue otherwise), *id.* at 1096; and Dr. Clapp "in conducting his study and reporting its conclusion, employed scientifically sound methods and based his conclusions on facts that satisfy Rule 702's reliability requirements." *Id*. at 1103.

(3)     Dr. Steven Wing, a professor in epidemiology specializing in the health effects of radiation, has extensive experience in evaluating radiation health effects among workers at Department of Energy ("DOE") nuclear facilities, was qualified to testify about the health effects plutonium exposure and the effect of DOE's role in research on that subject (and Defendants did not contend otherwise), *id.* at 1106; and his scientific methodology was reliable. *Id*. at 1106-07.

(4)     Dr. Shawn Smallwood, a specialist in ecosystems ecology with a Ph.D. in ecology, was qualified to testify regarding, *inter alia*, his study of bioturbation (*i.e.*, soil turnover due to biological activity of plants, insects and animals) as a mechanism to expose underground contaminants, including plutonium, to winds that have and will continuously transport them off-site, *id*. at 1107-09; and his scientific methodology was reliable. *Id*. at 1109-10.

3

(5)   Dr. Robert Budnitz, a former senior officer with the United States

Nuclear Regulatory Commission ("NRC"), and a frequent consultant

to the NRC, DOE, and other U.S. and foreign government agencies on

nuclear reactor safety, was "thoroughly qualified" to testify regarding

Dow's failures to keep plutonium releases "As Low as Reasonably

Achievable" and prevent off-site releases of plutonium through, *inter*

*alia*, plutonium fires and years-long outdoor storage of thousands of

corroding barrels containing plutonium-contaminated waste; and his

scientific testimony was reliable.  *Id*. at 1149-50.

(6)   Dr. Robert Cochran, a senior scientist and director of the nuclear

program at the Natural Resources Defense Council, Inc. with a

master's degree and Ph.D. in physics, has published extensively on

nuclear facilities and safety, plutonium toxicity, and radiation

protection standards, and was qualified to testify regarding, *inter alia*,

the major known off-site releases of plutonium from Rocky Flats,

Defendants' repeated violations of proper waste management and

safety practices, the health effects of plutonium, and Defendants'

failure to account for more than one ton of plutonium (known as

"Material Unaccounted For" or "MUF") and the doubt such massive

amounts of MUF casts on "official estimates" of off-site plutonium

4

contamination, *id*. at 1151, and his scientific methodology was reliable. *Id*.

Defendants **did not appeal** any of these *Daubert* rulings (nor any other ruling in *Cook XIII* regarding the admissibility and reliability of Plaintiffs' expert testimony), and so cannot challenge these rulings now, *see* PPB at 9 n.18, nor have Defendants done so.[4]  Defendants thus have waived any argument that Plaintiffs' proven nuisance verdict lacks scientific foundation.

## III.   <u>This Court Held That the Jury Was Properly Instructed on Plaintiffs' Class-Wide Nuisance Claim</u>

This Court confirmed that "[t]he jury was properly instructed on the elements of a nuisance claim as well as the definitions of 'substantial' and 'unreasonable.'"  *Cook*, 618 F.3d at 1145.  As Plaintiffs explained previously, this Court's "predict[ion]" that Colorado "would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is

---

[4] Defendants cite an ATSDR report (DB at 9), but as Dr. Wing testified, the report was plagued by conflict of interest problems because it was funded by the DOE, which is Defendants' indemnitor and "has been more interested in producing nuclear weapons, promoting nuclear energy, protecting its public image and guarding against litigation than in vigorously pursuing research into radiation health effects in general and plutonium health effects in particular."  Tr. 5756-5757. *See also* Tr. 5766 ("Several important commissions have clearly stated that the DOE's work has . . . represented a conflict of interest . . . [which] has affected first the kind of information we have to study health effects of plutonium as well as the way other information from epidemiology has been used . . . to represent the health effects of ionizing radiation generally.").  The jury was free to reject this report.

'substantial' and 'unreasonable' unless that anxiety is supported by *some* scientific evidence," 618 F.3d at 1146, has no bearing on the jury's conclusions on the class-wide nuisance claim that Plaintiffs proved with *abundant* scientific evidence, pursuant to jury instructions that this Court approved.[5]  The jury was expressly instructed that "an interference, in the form of anxiety or fear of health risks" was "<u>not</u>" a form of class-wide interference recoverable by the Class, but was pertinent **only** to potential later proceedings.[6]

Defendants repeatedly have used the "red herring" tactic of citing to *Cook IX*'s general discussion of nuisance.  *See* DB at 11; Defendants' opening brief in the prior appeal, *Cook v. Rockwell Int'l Corp.*, No. 08-1224, Doc. 01017648899, at 52 (10th Cir. Mar. 9, 2009) (S71).

In *Cook IX*, in 2003, the District Court stated that "'fears . . . even though they may be without scientific foundation or other support in fact'" could support a nuisance claim.  *Cook IX*, 273 F. Supp. 2d 1175, 1204 (quoting Restatement (Second) of Torts § 821F, cmt. f) (emphasis omitted).  By *trial* in 2005, however, more than two years later, this statement in *Cook IX* applied *solely* to the jury instruction regarding potential later, individual proceedings, namely Instruction 3.28.  It is in **that** instruction – about **later** proceedings – that the District Court

---

[5] *See* PPB at 30-36.

[6] PPB at 34 (quoting Instruction 3.28) (emphasis in instruction).

instructed the jury that, "[a]n individual Class members' fear, anxiety or mental discomfort can also be based on concerns that may be without scientific foundation or other support in fact."  Instruction 3.28 (A487-488).  *See also* Jury Verdict Form (A403); PPB at 34-35.

Defendants say they "never once quoted or cited" Instruction 3.28 "in their voluminous briefing before this Court, and similarly, this Court never quoted or cited that Jury Instruction in its opinion."  DB at 47.  But in their opening brief in the prior appeal, Defendants ***failed to identify any*** jury instruction that allegedly told the jury it could find for Plaintiffs based on "unfounded" fears.

Defendants claim they "challenged" Instructions 3.6 and 3.7 "in the prior appeal" and cite page 49 of their prior opening brief.  DB at 44-45.  The cited page (*see* S68) cites *no* jury instruction.  Defendants (*see* DB at 45) also cite pages 38-39 of their prior *reply* brief (S57-58), but that was too late.[7]  Moreover, the cited pages identified only Instruction 3.6, which, *unlike* Instruction 3.28, did *not* advise the jury that Plaintiffs' nuisance claim "may be without scientific foundation or other support in fact".  *Compare* Instruction 3.28 (A487-88) *with* 3.6 (A449-50).

---

[7] *See Bowdry v. United Airlines*, 58 F.3d 1483, 1490 (10th Cir. 1995) ("[T]he employees failed to raise this argument in their opening brief on appeal. Therefore, they abandoned or waived the argument, and we will not address it on the merits.") (citing cases).

Nor did anything in Instruction 3.7 tell the jury it could find for the Plaintiffs based on "unfounded" fears.  *See* A451-54.

This Court did not identify any jury instruction that allegedly told the jury it could find for Plaintiffs on their class-wide nuisance claim based on "unfounded" fears.  This Court (apparently) quoted Instruction 3.6, but then cited *Cook IX*.  *See Cook*, 618 F.3d at 1145-46.  Based on Defendants' inapposite discussion of *Cook IX*, this Court stated that:

> To the extent Plaintiffs rely on anxiety from an increased risk to their health as an interference with the use and enjoyment of their property, that anxiety must arise from scientifically verifiable evidence and cannot be wholly irrational.  The district court [in *Cook IX*] concluded otherwise in light of its review of Restatement (Second) of Torts § 821 F, cmt. F. . . .
>
> [We] predict that the Colorado Supreme Court would not permit recovery premised on a finding that an interference, in the form of anxiety or fear of health risks, is "substantial" and "unreasonable" unless that anxiety is supported by some scientific evidence.  The district court erred in concluding otherwise.

618 F.3d at 1145-46.

*Cook IX* was issued more than two years before trial, and by trial, its discussion of "unfounded" fears was *strictly cabined* to Instruction 3.28.  The jury was repeatedly instructed that "an interference, in the form of anxiety or fear of health risks" was *not* a form of *class-wide* interference that Plaintiffs alleged or on which they sought recovery.  *See* PPB at 31-35.  And Plaintiffs' class-wide

nuisance claim *was* supported not merely by "some" but by *abundant* scientific

evidence.  *See* PPB 9-24; *Cook XIII*.

Not only was the jury *not* told it could equate an "irrational" or

"scientifically unfounded" fear with a "substantial" class-wide interference, the

jury was repeatedly instructed that such "irrational" "fears" of Class members were

*irrelevant* to the *class-wide* nuisance claims.  *See* Instructions 3.6, 3.7, 3.28.

Furthermore, Instruction 3.9 stated that:

> An interference with a person's right to use and enjoy their land is "substantial" if the interference is significant enough that a normal person in the community would find it offensive, annoying or inconvenient.  In this case, that means you must determine whether a **reasonable** landowner of normal sensibilities would find the proven interference caused by Dow or Rockwell to be offensive, annoying or inconvenient.  "Normal sensibilities" for these purposes means a person who is neither unusually sensitive nor unusually insensitive to the interference you are considering.
>
> In deciding whether any interference proven by Plaintiffs is substantial under this test, you must consider **only** the magnitude or level of interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some Class members but not others.

Instruction 3.9 (A457).

This instruction expressly instructed the jury to decide whether the "proven

interference" – *i.e.* "causing Class members to be exposed to plutonium and

placing them at some increased risk of health problems as result" and/or "causing objective conditions that pose a demonstrable risk of future harm to the Class Area", *see* Instruction 3.6 – would be "offensive, annoying or inconvenient" to a "reasonable landowner of normal sensibilities."  The ordinary meanings of "offensive", "annoying" and "inconvenient" are, respectively, "causing displeasure or resentment", "irritating" and "giving trouble or annoyance."[8]  None of these words means or is a synonym for "irrational", "fear" or "unfounded."  And Instruction 3.9 directed the jury to use as a reference a "**reasonable** landowner of normal sensibilities" – the *opposite* of permitting the jury to base its verdict on "irrational[ity]."  The jury also was told "you must consider **only** the magnitude or level of interference that is common to the Class as a whole, and not any more severe level of interference that may have been suffered by some Class members but not others" (Instruction 3.9 (A457)), further ensuring that the jury would *not* rely on extreme potential reactions of any kind in finding the "proven interference" to be "substantial."

Plaintiffs proved, *inter alia*, that plutonium is extremely carcinogenic; that Defendants caused Class properties to be contaminated with, and Class members to be exposed to, plutonium; that plutonium released from Rocky Flats has resulted in

---

[8] *Webster's New Collegiate Dictionary*, 790, 46, 577 (1979).

an increased incidence and risk of cancer; and that Class properties will continue to be contaminated with plutonium in the future.[9]

Defendants do not contest that Plaintiffs submitted abundant scientific evidence, but Defendants speculate that "the jury *might* have imposed nuisance liability on the legally erroneous premise that even a scientifically unverifiable risk of injury can give rise to a nuisance." DB at 45. Conjecture about potential jury confusion cannot invalidate otherwise correct and adequate jury instructions. *See United States v. Haslip*, 160 F. 3d 649, 655 (10th Cir. 1998) ("Mr. Haslip's concern the jury is 'possibly' misled . . . is pure conjecture and fails to demonstrate prejudice."). Moreover, each juror here had a written copy of the instructions throughout 17 days of deliberations, and the jury completed a detailed 30-page verdict form. A375-404.

The instructions on Plaintiffs' class-wide nuisance claim when viewed "in their entirety" and "based on a review of the record as a whole", as they must be,

---

[9] Plaintiffs also submitted substantial evidence that Defendants' monitoring of plutonium releases was inadequate. *See* PPB at 18-20; *Cook XIV*, 564 F. Supp. 2d 1189, 1211 ("Defendants' misconduct was not the result of a single incident but rather a series of incidents and also routine practices over decades of operating Rocky Flats, some of which were attended by circumstances of dishonesty, subterfuge and deceit"); and at 1213 (jury heard evidence that Defendants' monitoring was inadequate). *See also Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-65 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.").

were proper.  *See Coleman v. B-G Maint. Mgmt. of Colorado, Inc.*, 108 F.3d 1199, 1202 (10th Cir. 1997) (citation omitted); *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009).  And jurors are presumed to follow a court's instructions. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 768 (10th Cir. 2011).

The District Court declined to consider the merits of Plaintiffs' reinstatement argument, however, because it held the Colorado nuisance claim preempted and foreclosed by this Court's prior mandate.  *See* A1224.  Given the District Court's familiarity with this long and complex case, including multi-year development of jury instructions and a four-month trial, if the Court finds Plaintiffs' nuisance claims not preempted, the Court should remand the reinstatement issue to the District Court.

## IV.    **Defendants' Preemption Arguments Fail**

A plaintiff may bring both federal and state claims based on the same nucleus of operative facts,[10] and if the federal claim fails, a jury may render a verdict on the state claim.  *See, e.g.*, *United Mine Workers v. Gibbs*, 383 U.S. 715, 721-29 (1966) (approving district court's exercise of pendent jurisdiction over state claims that were derived from same common nucleus of operative facts as

---

[10] Plaintiffs can assert multiple claims even if alternative, hypothetical, or contradictory.  *See* Fed. R. Civ. P. 8(d)(2), (d)(3).  *See also* Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."); *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) ("a party may join as many claims as he or she has against an opposing party.").

plaintiffs' claims under federal Labor Management Relations Act).[11]  Under

diversity (and pendent) jurisdiction, state law controls.  *Erie R.R. v. Tompkins*, 304

U.S. 64 (1938).

Because the existing jury verdict supports entry of judgment on Plaintiffs'

nuisance claim under Colorado law and diversity jurisdiction (and/or pendent

jurisdiction), the nuisance judgment can be reinstated pursuant to *Erie* unless the

nuisance claim has been preempted.  But there is no preemption here.

First, the preemption argument was waived.  *See* PPB at 39-40; *Cook*, 618

F.3d at 1144 n.19.

Second, two years after *Cook*, this Court in *Devon Energy Prod. Co. v.*

*Mosaic Potash Cardisbad, Inc.*, 693 F.3d 1195, 1204-05 (10th Cir. 2012), stated

that "the Supreme Court has recognized complete preemption in **only three areas**"

– none of which was the PAA.

Defendants suggest that the "three areas" listed in *Devon* were only areas

where complete preemption was held to be "*implied*," while Defendants are relying

on the "express" preemption provision of 42 U.S.C. § 2014(hh).  DB at 34-35.  All

"three areas" of complete preemption have a statutory basis, however, and the

---

[11] *Cf. Bonner v. Guccione*, 178 F.3d 581, 601 (2d Cir. 1999) (affirming jury verdict on plaintiff's state claim where the plaintiff was not a prevailing party on any of her analogous federal Title VII claims arising out of the same challenged conduct).

13

assertion that *Devon* simply "overlooked" other, additional areas of complete preemption is baseless.  One of the three areas of complete preemption the Supreme Court has recognized, for example, is ERISA, which includes an express preemption provision.  *See* 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.").[12]  There is no express preemption provision remotely like this in the PAA.

Nothing in 2014(hh) expressly preempts all state law relating in any way to "things nuclear" or "any tort claim relating to nuclear materials."  Instead, 2014(hh) states that a "'public liability action' . . . means any suit asserting public liability", but "public liability" means "any legal liability arising out of or arising from a *nuclear incident*[.]"  *See* § 2014(w).  Defendants want this Court to hold that, combining these provisions *implies* preemption of all state law relating to anything "nuclear" – not just "nuclear incidents."

Defendants quote *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473 (1999), as stating that the PAA "resembles what we have spoken of as complete

---

[12] Moreover, Defendants have not identified <u>any</u> areas in which the Supreme Court or this Court has recognized complete preemption, whether express or implied, outside of the three listed in *Devon*.

14

pre-emption." *See* DB at 29-30, 34. But in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), four years after *Neztsosie*, the Supreme Court discussed the "unusual pre-emption provision, 42 U.S.C. § 2014(hh)" of the PAA, before discussing "the **two categories** of cases where this Court has found *complete* pre-emption-certain causes of action under the LMRA and ERISA.…" 539 U.S. at 8. As *Devon* recognized, the Supreme Court in *Beneficial* then added a third area of complete preemption (the National Bank Act). 693 F.3d at 1204-05. *Devon* did not list a fourth (nor did *Beneficial* or *Neztsosie*). In short, neither the Supreme Court nor this Court has held that the PAA *completely* preempts state law.[13]

This Court explained in *Devon* that:

> mirror-like symmetry between the federal and state remedies is not required to support a determination of complete preemption. **However, we believe that the federal remedy at issue must vindicate the same basic right or interest that would otherwise be vindicated under state law.** Mosaic seeks to assert state-law claims that relate to a distinct interest—namely, an interest in being free from harm from parties drilling without first obtaining the BLM's approval. In our view, this interest is too far removed from the interest that would be vindicated by an APA proceeding—*viz.,* an interest in ensuring (insofar as it impacts Mosaic's potash mining)

---

[13] This Court must start with the assumption that Colorado's nuisance law is not preempted. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("in a field which the States have traditionally occupied, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (citations and internal quotation marks omitted).

> that the BLM properly manages the Potash Area,
> including well sites.

693 F.3d at 1207-08 (citations omitted).

Here, the "federal remedy at issue" – the PAA – does not "vindicate the same basic right or interest that would otherwise be vindicated under state law" because Colorado law, like that of all 50 states, vindicates the right of homeowners to be free from a substantial and unreasonable *interference* with the use and enjoyment of their property (*i.e.*, a nuisance), while the PAA (per *Cook*) does *not* protect this right, but only the right to be free from a complete "loss of use" if, say, radiation forces an evacuation. *Cook*, 618 F.3d at 1141-42.

Plaintiffs presented the District Court with a comprehensive 50-state survey of state nuisance law. *See* A906-41. *Every state* provides homeowners and other property owners with protection from an unreasonable and substantial *interference* with the use and enjoyment of their property, and *no state* requires a homeowner to prove "loss of use" to recover on a nuisance claim. Defendants dispute none of this.

Defendants focus on the "liability-limiting" aspect of the PAA, *see* DB at 6, 14, 23, 31, but ignore that: (1) the "primary concern" of the PAA is to protect the public; (2) a "cardinal attribute[]" of the PAA is to *minimize* interference with state law; (3) operators of nuclear plants will *still* obtain the "liability-limiting" protections of the PAA for liability from "nuclear incidents" even if a plaintiff can

16

proceed outside of the PAA for non-nuclear incidents; and (4) to hold that the

PAA's requirement of proving "loss of use" (per *Cook*) preempts state nuisance

law would mean that Plaintiffs here – and plaintiffs anywhere – who suffer a

proven substantial and unreasonable *interference* with their use and enjoyment of

property are deprived of any remedy whatsoever.  *See* PPB at 43-50.

Defendants argue that "A 'Public Liability' Action Under The PAA Is The

Exclusive Cause Of Action For Harm Caused By An Alleged Nuclear Incident."

DB at 27.  But per *Cook*, there is no "nuclear incident" here, and therefore no

"public liability" (defined as "any legal liability arising out of or resulting from a

nuclear incident", 42 U.S.C. § 2014(w)), because Plaintiffs proved an *interference*

with use but not *loss* of use, and Plaintiffs have stipulated that, unless *Cook* is

overturned or modified, Plaintiffs have no PAA claim to litigate because Plaintiffs

do not contend they can prove "loss of use" as set forth in *Cook*.[14]

There were many non-radioactive hazardous substances used at Rocky Flats,

including asbestos, benzene and mercury.  *See* P-1279 at 2-8 (DOE "Rocky Flats

Plant Hazardous Substance List").  Had Plaintiffs alleged a nuisance from mercury

---

[14] Plaintiffs stipulated that: "In light of the Tenth Circuit Decision, Plaintiffs
will not pursue any claims under the PAA unless the Tenth Circuit Decision is
overturned or modified."  A1265; A1269.  Defendants criticize Plaintiffs for not
"even trying to meet their PAA burden of proof."  DB at 23.  Plaintiffs have
concluded that the evidence does not prove "loss of use" per *Cook*.  Thus,
Plaintiffs have no PAA claims to litigate unless this Court *en banc*, or the Supreme
Court, modifies or overturns *Cook*.

releases, for example, even Defendants presumably would agree such a claim would not be preempted.  The same outcome should apply here because Plaintiffs have a (proven) nuisance claim based on something that is *not* a "nuclear incident" (per *Cook*).

Defendants say that the PAA was intended to "eliminat[e] the threat of *crippling* financial liability in the event of a *nuclear incident*."  DB at 5.  Plaintiffs agree that the PAA was intended to protect (though, notably, not completely immunize) industry against *catastrophic* nuclear incidents on the order of $7 billion in 1957 dollars (more than $57 billion today).  *See* PPB at 44.  A "nuclear incident" causing a "loss of use" per *Cook* conceivably might reach such figures, and *would remain* subject to all the liability-limitations of the PAA.  But nothing in the PAA, or its legislative history, states or suggests that the nuclear industry was supposed to be *completely immunized* from all liability whatsoever from lesser releases of radionuclides that neither threaten nor result in "crippling" liability.

The jury's compensatory nuisance award here, $177 million[15], is hardly "crippling": it is but 0.31% of the $57 billion (in 2012 dollars) "worse case" damage Congress envisioned when it enacted the PAA, and an even tinier

---

[15] This is exclusive of prejudgment interest from the two-decade delay in recovery.

percentage of Defendants' combined revenues of more than $143 billion in just *one year* (2013). *See* PPB at 47-48; 57 n.49.

Defendants stress that the PAA is limited to "nuclear incidents," which necessarily means that claims not involving "nuclear incidents" are by definition outside the PAA. *See, e.g.*, DB at 6 ("the Act establishes a mandatory framework for managing claims and funding liability associated with 'nuclear incidents.'"). As this Court held, proving the "loss of use" required to prove a "nuclear incident" requires something *more* than proving an "interference with use." But Colorado and the other 49 states do *not* require proof of "*loss* of use" but instead provide homeowners and other property owners a right to compensation for "*interference with use.*" Indeed, "[t]he **essence** of a private nuisance is an **interference** with the use and enjoyment of land." W. Page Keeton, et al., *Prosser and Keeton on Torts* 619 (5th ed. 1984); *id*. at 617 (tracing roots of nuisance law). Thus, if the PAA preempts a state law nuisance claim, property owners who prove an "*interference with use*" that is "substantial" and "unreasonable" but not a "*loss* of use" have been deprived of *any* right to compensation. That outcome – complete abrogation of state law rights – is what Defendants advocate, and why acceptance of their

19

argument would render at least parts of the PAA unconstitutional.[16]  *See* PPB at 50-59.

A finding that Congress, in passing the 1988 Amendments to the PAA, intended to completely preempt state nuisance claims would mean that, despite decades of "minimal interference" with state law, Congress did a complete about-face in 1988 and intended to wipe out the entire corpus of state nuisance law through a few definitional subsections but *without* expressly saying so, *without* leaving any trace of such an intent in the legislative history, and *without* any statutory language that would support that interpretation.  This is simply not credible.

In *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996), for example, the Supreme Court rejected a preemption defense as "unpersuasive" and "implausible" where defendants' "construction of § 360k would therefore have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation in order to provide for the safety and effectiveness of medical devices intended for

---

[16] Defendants cite various cases from other circuits in arguing for complete preemption.  DB at 30-31.  But none of those courts found complete preemption after holding, as this Court has, that PAA plaintiffs must establish "loss of use", that plutonium contamination does not constitute "loss of use", and that proof of a substantial and unreasonable interference with use and enjoyment of property is insufficient to prove "loss of use" under the PAA.

human use." (citation omitted). The Court explained that "[i]t is, to say the least, 'difficult to believe that Congress would, **without comment**, remove all means of judicial recourse for those injured by illegal conduct,' and it would take language much plainer than the text of § 360k to convince us that Congress intended that result." *Id.* (quoting *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251 (1984)). *See also Silkwood*, 464 U.S. at 268 ("Congress has **never** expressed an intention to allow a nuclear licensee to avoid paying for **any** injury it causes."); *McKay v. U.S.*, 703 F.2d 464, 468 (10th Cir. 1983) (federal regulation of atomic energy did not demonstrate intent by Congress "that persons injured through negligence or wantonness are henceforth to be deprived of a remedy.").

Defendants disingenuously claim that the "PAA did not 'abolish' any law while leaving 'no substitute remedy.'" DB at 40. But under the PAA per *Cook*, if combined with a finding of complete preemption, there is no "substitute" for a traditional nuisance claim of substantial and unreasonable interference with use and enjoyment. The claim is gone. Saying a claim for "loss of use" (per *Cook*) is a "substitute" for "interference with use" is like saying a wrongful death claim is a "substitute" for a personal injury claim – sure it is, if the personal injury was death.

In sum, reinstatement of Plaintiffs' state-law nuisance verdict and judgment would best serve and harmonize the multiple objectives of Congress in enacting and amending the PAA. As noted by Justice Blackmun in *Silkwood* – in a dissent

21

agreeing with the majority that awarding compensatory damages under state law was not preempted – "it is **inconceivable that Congress intended to leave victims with no remedy at all.**"  *Silkwood*, 464 U.S. at 263 (Blackmun, J., dissenting) (footnote omitted).  The majority agreed: "Congress . . . disclaimed any interest in promoting the development and utilization of atomic energy by means that fail to provide adequate remedies for those who are injured by exposure to hazardous nuclear materials."  *Id.* at 257.

## V. Defendants Fail to Rebut Plaintiffs' Argument That a Finding of Preemption Would Render at Least Parts of the PAA Unconstitutional

Defendants fail to engage the merits of Plaintiffs' due process argument, instead citing inapposite cases not addressing due process.  *See* DB at 42.[17] Defendants ignore the Supreme Court authority cited by Plaintiffs holding that there is a threshold beyond which preemption of common-law remedies would violate Due Process (even if the Supreme Court has not yet determined exactly where that threshold lies).  *See* PPB at 51-53.  And Defendants do not dispute that the 1988 Amendments did not provide fair notice (or any notice) that Congress had eliminated the nuisance law of all 50 states, nor could Defendants contest this, as

---

[17] Defendants, for example, cite *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), relating to the government contractor defense, but Defendants have not pressed any such defense (and so the defense would be waived if they tried).  *Mutual Pharm. Co. v. Bartlett*, 133 S.Ct. 2466 (2013) involved a party that could not comply with state law without violating federal law regarding drug labels, and so is irrelevant.  And *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344 (2000), involved railroad crossing warnings and is similarly inapposite.

22

Defendants themselves did not even make the argument until after trial. *See* PPB at 26-28.

As Plaintiffs previously explained, combining *Cook* with a holding that Plaintiffs' common-law nuisance claim is preempted – in other words, giving Defendants *carte blanche* to contaminate Plaintiffs' property with plutonium up to the "nuclear incident" threshold – would accomplish a taking of their property in violation of the Fifth Amendment. *See* PPB at 57-59.

Defendants dismiss Plaintiffs' extensive discussion in a footnote, leaving unrefuted both the law and the facts Plaintiffs cite. Defendants argue that Plaintiffs' Takings Clause argument just re-states their Due Process argument. DB at 42 n.2. Defendants are wrong, and none of the cases Defendants cite holds that a takings claim and a due process claim are co-extensive.[18] Indeed, those two claims arise under different provisions of the Fifth Amendment and have generated separate, extensive bodies of precedent and legal scholarship.

_____

[18] Defendants principally rely upon a quotation from *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602 (1993), that does not have the meaning that Defendants ascribe to it. *See* DB at 42 n.2 ("Given that [the plaintiff's] due process arguments are unavailing, 'it would be surprising indeed to discover' the challenged statute nonetheless violating the Takings Clause.") (quoting *Concrete Pipe*, 508 U.S. at 641, in turn quoting *Connolly v. PBGC*, 475 U.S. 211, 223 (1986)). In *Concrete Pipe*, the plaintiff challenged a statute that had been previously upheld on nearly identical due process and takings challenges in *Connolly*. In neither *Concrete Pipe* nor *Connolly* did the Court hold that a takings and a due process claim are coextensive; rather, the Court rejected those claims on their facts.

Defendants' citations of *Neztsosie* and *Ileto v. Glock*, 565 F.3d 1126 (9th

Cir. 2009), demonstrate that Defendants wholly misunderstand Plaintiffs' takings

challenge.  Unlike plaintiffs in *Ileto*, Plaintiffs here do not allege that the

"property" taken is solely their *common-law claims*.[19]  Rather, Plaintiffs allege that

if the PAA is held to completely preempt state tort claims for anything relating to

"nuclear material" (*cf.* A1232-33), then their *real property* has been taken because

Defendants have contaminated it with plutonium, and the PAA (if so interpreted)

would give Defendants complete immunity from all liability for that injury

(including from nuisance) to Plaintiffs' property.[20]

---

[19] In *Ileto*, the "property" plaintiffs allege was taken was not *real property*, as here, but their *common-law cause of action*.  565 F.3d at 1141.  The Ninth Circuit rejected the takings claim on the ground that the plaintiffs had no "vested property rights" in their *legal claims* until they obtained a final judgment.  *Id*. at 1141.  Here, Plaintiffs have unchallenged, vested rights in their own real property.

Nowhere in *Neztsosie* did the Court discuss a takings claim.  The opinion dealt solely with whether the PAA preempted tribal court jurisdiction over claims arising from a nuclear incident.  526 U.S. at 484-85.  The opinion briefly summarized petitioners' claims as dealing with personal injury and wrongful death, with no mention of damage to or loss of property.  As in *Ileto*, the only "property" that could have been "taken" (assuming the petitioners had even raised such an argument) would have been the plaintiffs' claims under tribal law.  Thus, it is not surprising that the Supreme Court "expressed no constitutional concerns", DB at 42 n.2, about a potential taking there.

[20] The other case Defendants cite, *Concrete Pipe*, is inapposite.  *Concrete Pipe* involved neither federal preemption nor an invasion of real property, but rather, an employer's challenge to a statute requiring it to pay a penalty for withdrawing from a multi-employer pension plan.  The Court found none of the indicia of a taking present there (*id.* at 643-46), but that says nothing about the plutonium contamination proven here.

## VI.   The "Mandate Rule" Does Not Bar Entry or Reinstatement of Judgment on Plaintiffs' Colorado Nuisance Claim

Under the mandate rule, a district court on remand "is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) (quotations and citations omitted). *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("[w]hile a mandate is controlling as to matters within its compass, on the remand *a lower court is free as to other issues*.") (citation omitted).[21]

*Cook* forecloses reinstating the jury verdict on Plaintiffs' PAA claims. But the mandate does not preclude entering or reinstating the verdict and judgment on Plaintiffs' proven Colorado nuisance claim because that issue was neither presented in nor decided by *Cook*.

Defendants distort the relevance of *Wheeler v. John Deere Co.*, 935 F.2d 1090 (10th Cir. 1991). *See* DB at 48. *Wheeler* supports the noncontroversial proposition that Plaintiffs have no **PAA** verdict left to reinstate, but *Wheeler* recognizes that appellate courts may reverse or vacate judgments or verdicts to varying degrees. *Id.* at 1097. This Court upheld the Colorado nuisance instructions, and therefore the jury's verdict on that claim may be entered or reinstated consistent with the Court's general mandate in *Cook*, which did not

---

[21] *See also Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 706 (10th Cir. 1993).

25

impose any particular limitations on the District Court's discretion on remand.  *See also* A1200-01.

District courts retain a great deal of discretion on remand, absent express limiting instructions from the appellate court.  *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011).  Express limitations on the district court's discretion on remand must be clear.  *United States v. Hicks*, 146 F.3d 1198, 1201 (10th Cir. 1998); *United States v. Lang*, 405 F.3d 1060, 1064 (10th Cir. 2005) (holding that a mandate "we **REVERSE** the district court's downward departures for both Langs, remanding both cases for resentencing pursuant to 18 U.S.C. § 3742(f)(2)(B), and **AFFIRM** the decision of the district court on the remaining issues" was a "general mandate" that did "not contain the type of specificity necessary to limit a district court's authority to resentence on remand.") (emphases in original).

This Court has repeatedly approved district courts' consideration of issues not specifically foreclosed by its mandates.  *See, e.g.*, *United States v. Shipp*, 644 F.3d 1126, 1130 (10th Cir. 2011) (affirming the district court's reinstatement on remand of a previously vacated sentence consistent with the mandate rule).[22]

---

[22] *See also United States v. Smith*, 116 F.3d 857 (10th Cir. 1997) (holding that the mandate did not bar the district court from reconsidering the entire sentencing package after this Court vacated one count of conviction with this mandate: "we **reverse** Smith's conviction under 18 U.S.C. § 924(c)(1) on Count III, and **remand** with directions that the conviction and sentence thereon be set aside."); *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 969 (10th Cir. 1991) ("The

Even if, as Defendants speculate, the *Cook* panel did not contemplate the possibility that the District Court would reinstate Plaintiffs' nuisance verdict and judgment under state law (which Plaintiffs do not concede),[23] this would not mean that such reinstatement is precluded by this Court's general mandate vacating the PAA judgment. *See Hicks*, 146 F.3d at 1202 ("Our silence on the issue of enhancement on remand should not be construed as 'a tacit prohibition to such action.' . . . Simple commands such as 'vacate,' 'set aside,' and 'affirm' are not sufficiently specific to limit that power.") (citations omitted).[24]

*Cook* held that Plaintiffs have no PAA claim absent a showing of damage to property or loss of use of property (as this Court interpreted those requirements). *Cook*, 618 F. 3d at 1138-42. The Court did not reverse or vacate the jury verdict based on independent state nuisance law grounds, and the District Court should be

---

plain language of the mandate neither requires nor prohibits further hearings."); A1202-03 n.15 (citing cases).

[23] Although Defendants argue *Cook* foreclosed the possibility of resolution of this case without a new trial, the contingent language the Court actually used in reference to a new trial – "in the event of a re-trial" – evince none of the certitude that Defendants now ascribe to the Court. *Cook*, 618 F.3d at 1143 n.15. Moreover, the Court's decision not to address other evidentiary issues is not equivalent to an affirmative ruling barring reinstatement on state law grounds.

[24] Reinstatement under independent state-law grounds following reversal on federal grounds is not uncommon. *See, e.g.*, *Ponte v. Real*, 471 U.S. 491, 503 n.4 (1985) (Stevens, J., concurring) ("In a series of recent cases, this Court has reversed a state-court decision grounded on a provision in the Federal Bill of Rights only to have the state court reinstate its judgment, on remand, under a comparable guarantee contained in the State Constitution.") (citations omitted); A1204 & n.9 (citing cases).

allowed to consider whether reinstatement of the class verdict and judgment is appropriate.

## VII.  <u>Conclusion</u>

Plaintiffs respectfully request that this Court reverse the District Court's January 28, 2014 Order, hold that the PAA does not preempt Plaintiffs' nuisance claims, and remand the case to the District Court for determination of whether the nuisance verdict can be reinstated and the Class recertified.

Dated:  August 1, 2014

Respectfully submitted,

*/s/ Merrill G. Davidoff*

Merrill G. Davidoff
David F. Sorensen
Jennifer MacNaughton
Caitlin G. Coslett
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000

Gary B. Blum
Steven W. Kelly
SILVER & DeBOSKEY, P.C.
1801 York Street
Denver, CO 80206
(303) 399-3000

Louise M. Roselle
Paul M. DeMarco
Markovits, Stock & De Marco, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(513) 651-3700

Attorneys for Plaintiffs and the Class

## REQUEST FOR ORAL ARGUMENT

In light of the complex and voluminous record, oral argument is respectfully
requested.

*/s/ Merrill G. Davidoff*

Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

**CERTIFICATE OF DIGITAL-SUBMISSION COMPLIANCE**

The undersigned hereby certifies that this ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program (Symantec Endpoint Protection, version 12.1.3001.165.105, updated 1/13/14) and, according to the program, is free of viruses.

Date:  August 1, 2014

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,894 words according to the word-processing software used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 14.0.7116.5000 (32-bit) in Times New Roman size 14-point.

Date:  August 1, 2014

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

## CERTIFICATE OF COMPLIANCE WITH 10th CIR. R. 25.5

This brief complies with the privacy and redaction requirements of 10th Cir.

R. 25.5.


Date:  August 1, 2014


*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net

**CERTIFICATE OF COMPLIANCE WITH ECF FILING**

This brief complies with the *ECF User Manual*, Section II, Policies and

Procedures for Filing Via ECF, Part I(b), that the electronic copy filed and the hard

copies submitted to the Clerk are exactly the same.

Date:  August 1, 2014

> */s/ Merrill G. Davidoff*
> Merrill G. Davidoff
> BERGER & MONTAGUE, P.C.
> 1622 Locust Street
> Philadelphia, PA 19103
> (215) 875-3000
> mdavidoff@bm.net

## CERTIFICATE OF SERVICE

I hereby certify that today, this 1st day of August 2014, I caused a copy of

the foregoing Plaintiffs'-Appellants' Reply Brief to be served via ECF Notification

on the following counsel for Defendants-Appellees:

Christopher Landau
Rebecca Taibleson
Kirkland & Ellis LLP
655 15th St. NW
Washington, D.C. 20005
202-879-5000

Kevin T. Van Wart
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
312-862-2000

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
mdavidoff@bm.net